STEVEN F. GRUEL (CSBN 213148)
Attorney at Law

100 Pine Street, Suite 600
San Francisco, CA 94122
Telephone Number (415) 989-1253
Fax Number (415) 576-1442
attystevengruel@sbcglobal.net

Attorney for David Nosal

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. CR-08-0237-MHP |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | Date:  November 17, 2008 |
| DAVID NOSAL, et al., | ) | Time:  11:00 a.m. |
| | ) | Courtroom: Honorable Marilyn Hall Patel |
| Defendants. | ) | |
| _____ | ) | |

**NOTICE OF MOTION AND MOTION TO DISMISS
INDICTMENT AND TO RECUSE GOVERNMENT COUNSEL**

**TABLE OF CONTENTS**

INTRODUCTION AND FACTUAL SUMMARY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I.    BACKGROUND PRINCIPLES OF CONFLICT FROM SUCCESSIVE
      REPRESENTATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    A.    General Principles . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    B.    General Principles Of Imputation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    C.    California State and Federal Cases on Imputation in Government Offices . . . . . . 5

        1.    *District Court Cases* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        2.    *State Court Cases* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    D.    Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

II.   THE GOVERNMENT HAS EFFECTIVELY CONCEDED THAT THE
      DECISION TO INDICT THE DEFENDANT WAS MADE BY PROSECUTORS
      BURDENED BY THE APPEARANCE OF A CONFLICT OF INTEREST;
      THE SUPERCEDING INDICTMENT THEREFORE MUST BE DISMISSED . . . . . . . 8

III.  AUSA WALDINGER MUST BE BARRED FROM PARTICIPATION IN
       ANY FUTURE ACTION IN THIS MATTER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

# TABLE OF AUTHORITIES

## CASES

*Andric v. California*,
55 F. Supp. 2d 1056 (C.D. Cal. 1999) ................................................ 4

*Arkansas v. Dean Foods Products*,
605 F.2d 380 (8th Cir. 1979) ............................................................. 3

*Dill v. Superior Court*,
158 Cal. App. 3d 301 (1984) .............................................................. 4

*In re Grand Jury Investigation of Targets*,
918 F. Supp. 1374 (S.D. Cal. 1996) ............................................. 3, 6, 8

*People v. Birks*,
19 Cal. 4th 108 (1998) ....................................................................... 8

*People v. Shinkle*,
415 N.E.2d 909 (N.Y. 1980) .............................................................. 5

*People v. Stevens*,
642 P.2d 39 (Colo. Ct. App. 1981) .................................................... 5

*People v. Superior Court (Greer)*,
19 Cal. 3d 255 (1977) ....................................................................... 6

*San Francisco v. Cobra Solutions, Inc.*,
38 Cal. 4th 839 (2006) ............................................................... 3, 6, 9

*State v. Latigue*,
502 P.2d 1340 (Ariz. 1972) ............................................................... 5

*State v. Pennington*,
851 P.2d 494 (N.M. 1993) ................................................................. 5

*State v. Stenger*,
760 P.2d 357 (Wash. 1988) ............................................................... 4

*State v. Tippecanoe County Court*,
432 N.E.2d 1377 (Ind.1982) .............................................................. 8

*Trone v. Smith*,
621 F.2d 994 (9th Cir. 1980) ............................................................. 4

*United States v. Batchelder*,
442 U.S. 114 (1979) .......................................................................... 8

*United States v. Catalanotto*,
468 F. Supp. 503 (C.D. Ariz. 1978) .................................................. 5

**Table of Authorities continued**

*United States v. Lopez*,
4 F.3d 1455 (9th Cir. 1993)     3

*Younger v. Superior Court*,
77 Cal. App. 3d 892 (1978)     6, 8

## STATUTES

ABA Model Rules of Professional Conduct 1.9 ("Model Rules")     3

Cal. Penal Code 1424     6

## MISCELLANEOUS

Geoffrey Hazard et al., *The Law and Ethics of Lawyering*
513 (4th ed. 2005)     8

**INTRODUCTION AND FACTUAL SUMMARY**

This prosecution arises out of an employment dispute between the defendant David Nosal and his former employer Korn/Ferry, an executive recruiting agency. Mr. Nosal left Korn-Ferry in November of 2004. Civil litigation between Mr. Nosal and Korn/Ferry ensued in San Mateo Superior Court beginning in August of 2005, and search warrants were issued at approximately the same time in a parallel federal criminal investigation.

The San Francisco office of Cooley Godward Kronish LLP represented Mr. Nosal in the civil litigation, and Joseph Russoniello, a partner in the Business Crimes & Regulatory Defense group of the Cooley firm, represented him in relation to the pending criminal investigation.

Mr. Russoniello was the United States Attorney for the Northern District from 1982 to 1990. In his capacity as Mr. Nosal's defense counsel, Mr. Russoniello discussed the investigation and possible indictment of Mr. Nosal with Kyle Waldinger, the Assistant United States Attorney then and now assigned as line prosecutor in the case. Mr. Russoniello also referred at least four potential witnesses in the case — Michael Louie, Mark Jacobson, Jacqueline Froelich-L'Heureaux, and Paula Elmore — to attorneys he had selected, all of whom previously had served as Assistant United States Attorneys under Mr. Russoniello in his earlier stint as United States Attorney for this district.

Jacobson and Froelich-L'Heureaux were indicted in late 2006, and have since pled guilty and agreed to testify for the government against Mr. Nosal. Scott N. Schools, an Associate Deputy Attorney General, was named as Acting United States Attorney on their indictments.

Early in 2007, Steven Gruel assumed Mr. Nosal's representation in the Korn/Ferry civil matter and the pending criminal investigation. In November of 2007, Mr. Russoniello was nominated for a second term as United States Attorney for the Northern District. The Senate affirmed the confirmation, and Mr. Russoniello was sworn in on January 4, 2008.

Mr. Nosal, along with Becky Christian, another former Korn/Ferry employee, was indicted on April 10, 2008. The indictment charged Mr. Nosal with theft of Korn/Ferry trade secrets, unauthorized access to a computer for the purpose of committing fraud, mail fraud, and conspiracy to commit mail fraud. The indictment named Brian J. Stretch, a supervising attorney

in the Northern District office, as Acting United States Attorney, and he and AUSA Waldinger signed the indictment.

Mr. Stretch and AUSA Waldinger submitted a pleading filed on June 9, 2008, opposing Ms. Christian's motion to sever her trial from that of Mr. Nosal, a motion that Mr. Nosal supported. On June 26, 2008, a superceding indictment was returned against Mr. Nosal and Ms. Christian. Again the indictment named Mr. Stretch as Acting United States Attorney. Mr. Waldinger and Matthew A. Parella, identified as the "Chief, Chip Unit" of the Northern District, signed the charging document.

On September 25, 2008, Mr. Waldinger filed a notice in this Court stating that:

> effective August 5, 2008, and as announced at the parties' last appearance, Associate Deputy Attorney General David Margolis has approved the recusal of the United States Attorney's Office (USAO) for the Northern District of California (NDCA) in the above-captioned case (and any related cases). Assistant Deputy Attorney General (ADAG) Scott S. Schools has assumed responsibility as Acting United States Attorney. Additionally, Assistant United States Attorney Kyle Waldinger, the lead prosecutor, is authorized to remain on this case and continue his responsibilities under the supervision of ADAG Schools.

## ARGUMENT

There is no question that Mr. Russoniello, based on his former representation of Mr. Nosal, is barred from any participation in this prosecution due to a conflict of interest. The legal question is the extent to which that conflict may be imputed to other members of the Northern District United States Attorney's Office now that Mr. Russoniello runs it.

In disqualifying the remainder of the office, the government has effectively conceded that the conflict may be imputed to other members. And yet, without any explanation or justification, the government excluded Mr. Waldinger from the scope of the imputed conflict. As the relevant law makes clear, Mr. Waldinger must also be disqualified. In addition, because the indictment was submitted and approved by a prosecutor operating under an actual or apparent conflict, the indictment should be quashed. The government may still prosecute Mr. Nosal, but it must do so with a prosecutor free from any conflict — a prosecutor from outside the United States Attorney's Office for the Northern District.

## I. BACKGROUND PRINCIPLES OF CONFLICT FROM SUCCESSIVE REPRESENTATION

### A. General Principles

The ethical duties governing United States Attorney's offices in California are derived from the California Rules of Professional Conduct, the ABA Model Rules of Professional Conduct, as well as state and federal cases. *In re Grand Jury Investigation of Targets*, 918 F. Supp. 1374, 1377 (S.D. Cal. 1996); *see United States v. Lopez*, 4 F.3d 1455, 1459 (9th Cir. 1993).

In general, a lawyer who has represented a client may not represent another party whose interests are adverse to the former client. *See* ABA Model Rules of Professional Conduct § 1.9 ("Model Rules"); Restatement (Third) of the Law Governing Lawyers § 132 ("Restatement"). A government lawyer may not participate in any matter if he had prior participation in that matter while in private practice. Model Rules § 1.11(d).

Those general norms of professional responsibility apply to attorneys admitted to practice in California. The California Supreme Court recently explained the importance of these principles.

> Two ethical duties are entwined in any attorney-client relationship. First is the attorney's duty of confidentiality, which fosters full and open communication between client and counsel, based on the client's understanding that the attorney is statutorily obligated to maintain the client's confidences. The second is the attorney's duty of undivided loyalty to the client. These ethical duties are mandated by the California Rules of Professional Conduct. (Rules Prof. Conduct, rule 3-310(C) & (E).)
>
> The interplay of the duties of confidentiality and loyalty affects the conflict of interest rules that govern attorneys. An attorney who seeks to simultaneously represent clients with directly adverse interests in the same litigation will be automatically disqualified. Moreover, an attorney may not switch sides during pending litigation representing first one side and then the other. That is true because the duty to preserve client confidences survives the termination of the attorney's representation.

*San Francisco v. Cobra Solutions, Inc.*, 38 Cal. 4th 839, 846 (2006) (other citations omitted). These principles also apply when a private attorney moves into government practice. *See, e.g.*, *Arkansas v. Dean Foods Prods.*, 605 F.2d 380 (8th Cir. 1979).

3

Under these principles of conflict, there is of course no question that Mr. Russoniello is barred from prosecuting Mr. Nosal, his former client. The crucial issue in this case is one of "vicarious disqualification": whether Mr. Russoniello's conflict must be applied to all other members of the United States Attorney's Office for the Northern District, including Mr. Waldinger.

### B. General Principles Of Imputation

Under the rules of imputation that apply to private firms, if any lawyer of a firm is disqualified due to a conflict, then every lawyer in that firm is likewise disqualified. Model Rules § 1.10(a); Restatement § 123; *see Trone v. Smith*, 621 F.2d 994 (9th Cir. 1980); *Dill v. Superior Court*, 158 Cal. App. 3d 301 (1984).

Applying the rules of imputation to the government, however, presents a more difficult and more complex problem. Some authorities have suggested that the normal rules must be relaxed due to the "special problems raised by imputation within a government agency." *See* Model Rules § 1.11, Comment 2. Others have suggested that ordinary rules of imputation must apply. *See* Restatement, §123(2) and (3), and Comments d(ii)-(iv).

Courts have reached varying results in these situations. Some courts have adopted a *per se* rule that when a lawyer in private practice moves into a government agency, the entire agency must be disqualified from any matter on which the lawyer previously participated. *Andric v. California*, 55 F. Supp. 2d 1056 (C.D. Cal. 1999) (discussing cases). Applying that rule in the criminal context, several courts have automatically disqualified entire prosecutor's offices when an accused's lawyer joins the office. For example, the Washington Supreme Court has held that:

> Where the prosecuting attorney (as distinguished from a deputy prosecuting attorney) has previously personally represented the accused in the same case or in a matter so closely interwoven therewith as to be in effect a part thereof, the entire office of which the prosecuting attorney is administrative head should ordinarily also be disqualified from prosecuting the case and a special deputy prosecuting attorney appointed.

*State v. Stenger*, 760 P.2d 357, 360 (Wash. 1988). New York has likewise established a *per se* rule of imputation and disqualification.

> The fact that the attorney who had initially represented defendant

4

>and participated actively in the preparation of his defense was chief assistant in the office of the prosecutor in the months preceding and during defendant's trial inescapably gave both defendant and the public the unmistakable appearance of impropriety and created the continuing opportunity for abuse of confidences entrusted to the attorney during the months of his active representation of defendant. It is no answer that defendant offers no evidentiary proof of actual prejudice. In the circumstances such proof would most likely be out of defendant's reach. Nor does it serve to protect the interests of defendant that procedures were devised and scrupulously followed to insulate [the transferring attorney] from the prosecution of this case.

*People v. Shinkle*, 415 N.E.2d 909, 910 (N.Y. 1980)

Other state courts have reached similar results. *See, e.g.*, *State v. Latigue*, 502 P.2d 1340, 1342 (Ariz. 1972) ("What must a defendant and his family and friends think when his attorney leaves his case and goes to work in the very office that is prosecuting him?"); *People v. Stevens*, 642 P.2d 39, 41 (Colo. Ct. App. 1981) ("Any inconvenience to the People resulting from appointment of a special prosecutor, usually a deputy district attorney from another judicial district . . . is but a small price to pay to avoid this appearance of impropriety.").

Several other jurisdictions, by contrast, have refused to adopt a *per se* rule of disqualification, and have instead adopted a case-by-case approach. *See State v. Pennington*, 851 P.2d 494, 498-99 (N.M. 1993) (collecting cases). Under that approach, the district court must examine the circumstances of the case to determine whether "the appearance of impropriety would justify disqualification of the entire district attorney's staff." *Id*. at 498.

**C.     California State and Federal Cases on Imputation in Government Offices**

The Ninth Circuit has never explicitly set forth a standard for imputation in the situation in which a private defense attorney joins a prosecution office. Several state cases and district court cases, however, have shed substantial light on the topic.

*1.     District Court Cases*

In *United States v. Catalanotto*, 468 F. Supp. 503 (C.D. Ariz. 1978), the defendant's attorney left private practice and took employment as an AUSA. Although the transferring attorney had no involvement with the prosecution of the defendant and no communication with the prosecuting team, the court ruled that the entire United States Attorney's Office had to be

5

disqualified.

> Looking at the totality of the circumstances surrounding the representation of [the defendant] by [the attorney], it appears that there is a strong possibility that the representation and the subsequent prosecution were substantially related. Even if there is a question as to what, if anything, concerning this case was actually revealed, there is certainly the appearance that the opportunity to reveal matters related to this case existed. Canon 9 admonishes attorneys that even the appearance of professional impropriety should be avoided. In this case the appearance of impropriety can certainly be drawn from the surrounding circumstances.

*Id*. at 507. The court also held that because an attorney within the scope of the imputed conflict had presented the indictment to the grand jury, the indictment had to be quashed. *Id*.

Two decades later, a district court in the Southern District of California reached a somewhat different result. In *In re Grand Jury Investigation of Targets*, 918 F. Supp. 1374 (S.D. Cal. 1996), the court refused to disqualify an entire United States Attorney's office in a situation in which an AUSA had previously represented a defendant in a state court proceeding. Even more recently, in *Andric v. California*, the district court disqualified an entire government agency based on one attorney's successive representation. 55 F. Supp. 2d 1056 (C.D. Cal. 1999).

### 2. State Court Cases

Three decades ago, when Johnnie Cochran moved from private practice to the district attorney's office, the California Court of Appeals disqualified the entire office from prosecuting his former client. *Younger v. Superior Court*, 77 Cal. App. 3d 892 (1978). Although the office had erected ethical screens to isolate Cochran, the court held that his presence near the top of the office hierarchy mandated full imputation and recusal. *Id*. at 895-97. In the same year, in *People v. Superior Court (Greer)* 19 Cal.3d 255, 266-67 (1977), the California Supreme Court upheld an order requiring the Attorney General to take over a prosecution when a district attorney was conflicted.

The California Legislature subsequently passed a law that enacted a more relaxed standard of disqualification, see Cal. Penal Code § 1424, but as the California Supreme Court explained recently, the principles set forth in *Younger* "have not lost their relevance." *San*

1 *Francisco v. Cobra Solutions, Inc.*, 38 Cal. 4th 839, 850 (2006).

In the *Cobra Solutions* case, the court disqualified the entire San Francisco City Attorney's office because City Attorney Dennis Herrera had formerly worked in the firm representing the defendant. The court recognized that full disqualification is not mandated every time an attorney for a client moves into a government office pursuing a case against the client. But the court noted the special difficulties posed when the transferring attorney takes a role *as the head* of that government office.

> Individuals who head a government law office occupy a unique position because they are ultimately responsible for making policy decisions that determine how the agency's resources and efforts will be used. Moreover, the attorneys who serve directly under them cannot be entirely insulated from those policy decisions, nor can they be freed from real or perceived concerns as to what their boss wants. The power to review, hire, and fire is a potent one. Thus, a former client may legitimately question whether a government law office, now headed by the client's former counsel, has the unfair advantage of knowing the former client's confidential information when it litigates against the client in a matter substantially related to the attorney's prior representation of that client.
>
> There is another reason to require the disqualification of the conflicted head of a government law office. That reason arises from a compelling societal interest in preserving the integrity of the office of a city attorney. It is beyond dispute that the citizens of a city are entitled to a city attorney's office that unreservedly represents the city's best interests when it undertakes litigation. Public perception that a city attorney and his deputies might be influenced by the city attorney's previous representation of the client, at the expense of the best interests of the city, would insidiously undermine public confidence in the integrity of municipal government and its city attorney's office.

*Id.* at 853-54 (emphasis added).

**D.    Analysis**

Taken together, the cases above may be taken to establish a sensible framework for imputation and disqualification. It is not the case that an attorney transferring to a prosecutor's office will always require disqualification of the entire office from the cases of the attorney's former clients. But in some circumstances, where there is an appearance of impropriety, disqualification of the entire office may be required.

One critical circumstance is the position that the transferring attorney takes in the

prosecutor's office.  Where the transferring attorney is hired as a line prosecutor, disqualification is generally not required.  *See  Targets*, 918 F. Supp. 1374. By contrast, when the transferring attorney takes a supervisory role, there is a much stronger case for disqualification.  *See Younger*, 77 Cal. App. 3d at 895-97; *see also State v. Tippecanoe County Court*, 432 N.E.2d 1377 (Ind.1982) ("[I]n this case, the prosecutor who had the administrative control over the entire staff was the one who had formerly represented the particular defendant involved and, therefore, the trial court properly disqualified the entire staff of deputies."); Geoffrey Hazard et al., *The Law and Ethics of Lawyering* 513 (4th ed. 2005) (stating that courts are especially likely to adopt a rule of per se imputation "where the [transferring] lawyer takes on a supervisory role in the government").

## II. THE GOVERNMENT HAS EFFECTIVELY CONCEDED THAT THE DECISION TO INDICT THE DEFENDANT WAS MADE BY PROSECUTORS BURDENED BY THE APPEARANCE OF A CONFLICT OF INTEREST; THE SUPERCEDING INDICTMENT THEREFORE MUST BE DISMISSED

There is no stage of a criminal proceeding at which a citizen has a greater interest in, and entitlement to, an impartial prosecutor than the initial charging decision.  Virtually all prosecutorial action following the filing of a charge is subject to some degree of review and/or control by judge or jury, but the decision whether to seek an indictment, with its momentous consequences in terms of finances, reputation, and emotional distress, is committed to the broad discretion of the charging official.  See, e.g., *United States v. Batchelder*, 442 U.S. 114, 123-25 (1979) (prosecutor has sole discretion in deciding whether to file criminal charges and what charges to file); *People v. Birks*, 19 Cal.4th 108, 134 (1998) ("It is well settled that the prosecuting authorities, exercising executive functions, ordinarily have the sole discretion to determine whom to charge with public offenses and what charges to bring.") The only meaningful limitation on a prosecutor's sweeping power as to this crucial matter is the requirement that he or she not be burdened by a conflict of interest or its appearance.

In this case, the critical fact that mandates disqualification is that Mr. Russoniello entered the office not merely as a line prosecutor but rather as the United States Attorney. As the California Supreme Court put it, "the attorneys who serve directly under [him] cannot be entirely

8

insulated from those policy decisions, nor can they be freed from real or perceived concerns as to what their boss wants. The power to review, hire, and fire is a potent one." *Cobra Solutions, Inc.*, 38 Cal. 4th at 853.

Thus, even if there is no *per se* rule of full imputation based on a transferring attorney, in this case, the circumstances justify full imputation because the transferring attorney has a supervisory role over the prosecuting line attorney. Consequently, the entire office of the Northern District must be disqualified, and the case must be handed to another United States Attorney's Office that may operate free of any appearance of impropriety.

On this point, the parties are in agreement. The Department of Justice has concluded that the "United States Attorney's Office (USAO) for the Northern District of California (NDCA)" must be recused from participating in the Nosal prosecution and "any related cases" because of the appearance of impropriety that would thereby be created. The government thus concedes that the office headed by United States Attorney Russoniello cannot be involved in prosecuting Mr. Nosal on the very allegations against which Mr. Russoniello previously defended Nosal. Under the DOJ's own judgment, Mr. Stretch and Mr. Parella are among those barred from further participation in this prosecution.

But just as Mr. Stretch and Mr. Parella are ethically prohibited from further prosecuting Mr. Nosal because they now serve under Mr. Russoniello, the same was true at the time they sought the original and superceding indictments in this case in April and June of this year. The superceding indictment is tainted by the fact that it was obtained by an office and individual prosecutors who suffered from a disqualifying conflict of interest. The superceding indictment therefore must be dismissed.

**III. AUSA WALDINGER MUST BE BARRED FROM PARTICIPATION IN ANY FUTURE ACTION IN THIS MATTER**

As noted above, dismissal of the superceding indictment will not prevent a federal prosecutor outside the office of the United States Attorney for the Northern District of California from pursuing an indictment of Mr. Nosal, if, in that prosecutor's impartial judgment, the facts and the law justify such action. AUSA Waldinger, however, is barred from any further role in

9

the case. Why the Department of Justice has not yet conceded as much is a puzzle.

As noted above, the Department of Justice agrees that the Northern District Office is recused from the Nosal prosecution due to Mr. Russoniello's past representation of Mr. Nosal in this very matter, but apparently claims that AUSA Waldinger is not subject to the same constraint. AUSA Waldinger, however, was working under Mr. Russoniello at the times Mr. Nosal was indicted, and remains a member of the disqualified office today. His superiors in the office, to whom he reports on a regular basis, include Mr. Stretch and Mr. Parella, whom the government has conceded are ethically barred from participating in Mr. Nosal's prosecution. If an office is recused from a given case, all of its members are recused as well; otherwise, the disqualification is meaningless. It is a mystery how the government could claim that the recusal of the Northern District Office would not apply with the same effect to AUSA Waldinger as it does to Mr. Stretch, Mr. Parella, and Mr. Russoniello.

Indeed, the argument for disqualifying Mr. Waldinger in this matter is, if anything, stronger than that applicable to his immediate superiors. Mr. Waldinger met and discussed with Mr. Russoniello the issue of whether Mr. Nosal would and should be indicted when the present United States Attorney was representing Mr. Nosal. Mr. Russoniello is now Mr. Waldinger's ultimate supervisor in the Northern California office. The present arrangement gives rise to a strong appearance of a conflict of interest, in that a reasonable observer of the present situation could conclude either that (1) AUSA Waldinger would favor the interests of the former client of his present boss, a client whose claims for non-indictment or leniency were personally presented to AUSA Waldinger by Mr. Russoniello while he was at Cooley Godward; or (2) Waldinger would deny Mr. Nosal the consideration and benefits granted to similarly situated defendants precisely to avoid the appearance that favoritism had been granted Nosal because of his prior relationship with Mr. Russoniello. "Canon 9 admonishes attorneys that even the appearance of professional impropriety should be avoided. In this case the appearance of impropriety can certainly be drawn from the surrounding circumstances." *Catalanotto*, 468 F. Supp. At 507. As with Mr. Russoniello, Mr. Stretch, Mr. Parella, and the entirety of the Northern District office, AUSA Waldinger must be recused from further participation in this matter.

10

## CONCLUSION

For the reasons stated, the superceding indictment must be dismissed and the entire United States Attorney's Office for the Northern District of California, including AUSA Waldinger, must be recused from further participation in the matter.

Dated: October 14, 2008                    Respectfully submitted,


   /s/ Steven F. Gruel
STEVEN F. GRUEL

Attorney for Defendant
DAVID NOSAL