STEVEN F. GRUEL (CSBN 213148)
Attorney at Law

100 Pine Street, Suite 600
San Francisco, CA 94122
Telephone Number (415) 989-1253
Fax Number (415) 576-1442
attystevengruel@sbcglobal.net

Attorney for David Nosal

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) No. CR-08-0237-MHP |
| Plaintiff, | ) |
| vs. | ) |
| DAVID NOSAL, et al., | ) Date:  November 17, 2008 <br> ) Time:  11:00 a.m. <br> ) Courtroom:  Honorable Marilyn Hall Patel |
| Defendants. | ) |

**REPLY BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS INDICTMENT AND RECUSE GOVERNMENT COUNSEL**

**PREFATORY NOTE**

Before turning to the government's opposition to defendant Nosal's motion to dismiss the indictment and to recuse AUSA Kyle Waldinger from further participation in Mr. Nosal's prosecution, the defendant must take notice of the extraordinary pleading in support of the government's opposition filed by Becky Christian, who has pled guilty to charges against her and whom the government intends to call as a witness against Mr. Nosal.  Despite the fact that Ms. Christian is not a party to the prosecution of Mr. Nosal by the United States, she has submitted a brief arguing that Mr. Waldinger must be maintained as the defendant's prosecutor.

Ms. Christian has no cognizable legal interest in the question of whether the indictment against Mr. Nosal must be dismissed or whether Mr. Waldinger should continue as a prosecutor against Mr. Nosal.  Any decision on these questions cannot affect Ms. Christian's own case, as the conflict of interest under consideration arises from United States Attorney Russoniello's role as Mr. Nosal's past counsel, an issue that has nothing to do with Ms. Christian's prosecution.  Ms. Christian's suggestion that the Court, in deciding the conflict of interest issue, should be influenced by whether Ms. Christian might have to undergo a "re-interview" (Christian Brief, at 3) is preposterous.

Ms. Christian has no standing to be heard on the questions now before the Court.  As discussed below in Section C, however, the fact that she felt impelled to defend and advocate for Mr. Waldinger's continued presence in the case does raise new doubts at to whether he can serve impartially in this matter.

**A.    Source of Law**

The differing positions taken by the defendat Nosal and the government in this matter are largely a function of the different legal authorities on which they rely.  It is thus necessary to clarify the source of law — which legal authorities are binding, and which are persuasive.

The government is correct that the Northern District has adopted the California Rules of Professional Conduct.  The government is correct that the relevant governing rule — the legal rule which is binding — is California Rule of Professional Conduct 3-310.  The government is also correct that Rule 3-310, by itself, does not answer the question of whether and to what

extent an individual prosecutor's conflict is imputed to the remainder of a prosecutor's office. Thus, this Court must turn to other authorities to determine how to interpret that rule.

The government turns to the ABA Model Rules. The government is correct (as Mr. Nosal fully conceded in his motion) that the ABA Model Rules do not require an individual prosecutor's conflict to be imputed to the remainder of the prosecutor's office. The government is also correct that the ABA Model Rules may be consulted as a source of "persuasive authority." (*See* Govt. Memorandum at 6.)

But the ABA's Model Rules are not the only source of persuasive authority. The ALI's Restatement (Third) of the Law Governing Lawyers, for example, is another source which this Court may consult. Indeed, it has been repeatedly cited as persuasive authority by both the Ninth Circuit, *see, e.g.*, *Brown & Bain, P.A. v. O'Quinn*, 518 F.3d 1037, 1041 (9th Cir. 2008); *United States v. LaPage*, 231 F.3d 488, 492 n.15 (9th Cir. 2000), and California state courts, *see, e.g.*, *Fletcher v. Davis*, 33 Cal. 4th 61, 70 (2004); *Zurich American Ins. Co. v. Superior Court*, 155 Cal. App. 4th 1485, 1499-1500 (2007).

In fact, and most importantly, California state courts have specifically relied on the Restatement when interpreting Rule 3-310. *Faughn v. Perez*, 145 Cal. App. 4th 592, 605 (2006); *Farris v. Fireman's Fund Ins. Co.*, 119 Cal. App. 4th 671, 680-81 (2004). The Restatement thus has just as much claim to the title "persuasive authority" as do the Model Rules.

But just as legal ethics scholars have disagreed on the issue of imputation in the government context, the Restatement and the Model Rules also differ on the issue.[1] While the Model Rules do not recommend imputing conflicts to entire prosecutor's officers, the Restatement does. Illustration 4 to Restatement § 123 describes its recommended application:

> 4. Assistant Prosecutor A, who has recently joined a county prosecutor's office, represented Defendant at a preliminary hearing in a pending criminal case while in private practice. Because A would be prohibited from prosecuting Defendant at trial in the same matter (see § 132), under the rule of imputation described in

---

[1] For a discussion of the differing approaches taken by the Restatement and the Model Rules, see Geoffrey Hazard et al., *The Law and Ethics of Lawyering* 513-14 (4th ed. 2005) ; Charles W. Wolfram, *Modern Legal Ethics* § 7.6.5 (1986).

> this Section, ordinarily no other member of the same county prosecutor's office could conduct the prosecution. A special prosecutor or a prosecutor from an adjoining but jurisdictionally distinct county ordinarily could act. If state law does not permit appointment of such other prosecutors, however, screening measures such as those described in § 124(2) can suffice to permit the prosecution to proceed.

In Mr. Nosal's case, there is no reason why a special prosecutor or prosecutor from an adjoining district could not be appointed (nor is there any relevant law forbidding such an appointment). Indeed, a prosecutor from Washington has already been appointed to head the Nosal prosecution. Thus, if this Court follows the Restatement approach, it would be required to disqualify AUSA Waldinger.

The government also argues that the non-California cases cited by Mr. Nosal in his motion should not be considered because they are "inapplicable." (Govt. Memorandum at 16-17.) If by "inapplicable" the government means "not binding," then of course Mr. Nosal concedes the point. But, as always, authority from other jurisdictions, though not precedential, may constitute persuasive authority. When deciding difficult ethical questions like this one, federal courts look not only to the California Rules but also to other "state and federal cases." *In re Grand Jury Investigation of Targets*, 918 F. Supp. 1374, 1377 (S.D. Cal. 1996). California courts themselves look to non-California cases to help interpret Rule 3-310. *See, e.g.*, *Dept. of Corporations v. SpeeDee Oil Change Systems*, 20 Cal. 4th 1135, 1150-52 (discussing non-California cases). There is no reason why this court may not do the same; indeed, Nosal submits that such judicial decisions are more persuasive than the ABA Model Rules.

In sum, Rule 3-310 does not by itself answer the question faced by this Court, so this Court must look elsewhere for guidance. The government cites the persuasive authorities that support its position and ignores the contrary authorities — it cites and discusses the ABA Model Rules, for example, but entirely ignores the Restatement. Mr. Nosal more candidly admits that there is persuasive authority pointing in both directions. The task for this Court is to consult the various competing arguments and determine what the most appropriate course is in this circumstance. Mr. Nosal's argument is that on balance, and taking into account all of the relevant persuasive authority, AUSA Waldinger should be disqualified because Mr. Russoniello

has supervisory authority over him.

### B. The Effect of Cal. Penal Code § 1424

The government argues that Cal. Penal Code § 1424 requires that this Court deny Mr. Nosal's motion to recuse. It is unclear what role § 1424 should play in this Court's determination. That statute is not part of the California Rules of Professional Conduct, and it has not been incorporated into the Northern District's Local Rule governing attorneys, so it is not binding here. But in any event, § 1424 does not say what the government claims it says.

The government argues that under § 1424, courts may disqualify prosecutors only when there is an *actual* conflict of interest — it argues that the *appearance* of conflict does not suffice. To support that argument, the government quotes several statements from California court cases. When read out of context, those statements appear to support the government's contention. When the relevant passages are presented in full, however, it is clear that the California Supreme Court has explicitly rejected the government's interpretation of § 1424.

The truth of the matter is that under California law, following the enactment of § 1424, there is simply no distinction between actual and apparent conflict. Shortly after the California Legislature enacted that provision, the California Supreme Court explained its significance:

> In 1980 the Legislature enacted section 1424, which provides, in relevant part, "The motion [to recuse] shall not be granted unless it is shown by the evidence that a conflict of interest exists such as would render it unlikely that the defendant would receive a fair trial." This standard differs from that enunciated by us in *Greer*. While section 1424 does not specify whether the disqualifying conflict must be "actual" or need only generate the "appearance of conflict," in either event, the conflict must be of such gravity as to render it unlikely that defendant will receive a fair trial unless recusal is ordered.
>
> *Several factors in combination persuade us that the section contemplates both "actual" and "apparent" conflict when the presence of either renders it unlikely that defendant will receive a fair trial.* Traditionally, conflicts raised in varied contexts have involved both actuality and appearance. Further, the legislative history of section 1424 reflects concern about the effects of the elimination of the "appearance of conflict" standard. While it is conceivable that an "appearance" of conflict could signal the existence of an "actual" conflict which, although prejudicial to the defendant, might be extremely difficult to prove, we think that the additional statutory requirement (that a conflict exist such as would render it unlikely that the defendant would receive a fair

>trial) renders the distinction between "actual" and "appearance" of conflict less crucial.
>
>. . . In our view a "conflict," within the meaning of section 1424, exists whenever the circumstances of a case evidence a reasonable possibility that the DA's office may not exercise its discretionary function in an evenhanded manner. *Thus, there is no need to determine whether a conflict is "actual," or only gives an "appearance" of conflict.*

*People v. Conner*, 34 Cal. 3d 141, 147 (1983) (emphasis added); *see also People v. Eubanks*, 14 Cal. 4th 580, 591 (1996) (stating that § 1424 "does not explicitly require an 'actual' conflict, nor does it explicitly exclude 'apparent' conflicts."); *People v. Lopez*, 155 Cal. App. 3d 813, 824 (1984) ("Because the statutory language is ambiguous, the 'appearance' factor may still be a relevant consideration.").

In short, the government's claim that § 1424 only allows disqualification for "actual" conflicts is simply false. Even after the enactment of § 1424, the California Supreme Court has continued to support a rule of full imputation where the circumstances require it. In fact, in both *Connor* and *Eubanks* — the two post-§ 1424 cases on which the government most heavily relies — the California Supreme Court actually *upheld* the disqualification of prosecutors despite the defendants' inability to prove any actual prejudice.

In *Conner*, the Court affirmed the recusal of the entire Santa Clara District Attorney's office in a case where one line prosecutor was conflicted due to his status as a witness:

>It is reasonable to conclude that an apparent threat to one deputy coupled with his witnessing the serious injury actually inflicted on the deputy sheriff during the same course of events may well prejudice the coworkers of [the prosecutor] and the deputy sheriff. While it may be difficult, if not impossible, to prove that a bias of the DA's office will *definitely* affect the fairness of a trial, the trial court is in a better position than are we to assess the likely effect of the shooting incident. We will not disturb the court's conclusion that the DA's discretionary powers exercised either before or after trial (e.g., plea bargaining or sentencing recommendations), consciously or unconsciously could be adversely affected to a degree rendering it unlikely that defendant would receive a fair trial.

*Id*. at 148-49 (emphasis in original).

In *Eubanks*, the Court similarly affirmed a disqualification order. It held that while the mere "perception of improper influence" was not *sufficient* to mandate disqualification under §

5

1424, such a perception was nonetheless *relevant*: "That our analysis focuses on actual likelihood of prejudice, however, should not be taken as suggesting the potential for loss of public confidence in the criminal justice system is either unimportant or unimaginable." 14 Cal. 4th at 593. It clarified, moreover, that the focus of the inquiry is not on "actual prejudice" but rather "actual *likelihood* of prejudice," and it held that such likelihood exists "whenever there is a *reasonable possibility* that the DA's office may not exercise its discretionary function in an evenhanded manner." *Id*. at 594 (emphasis added).

In this case, as in *Connor*, while there is admittedly no way to "definitely prove" Waldinger's bias, it is reasonable to conclude that Russoniello's supervisory authority might cause bias. It is reasonable to conclude that Waldinger's impartial discretionary authority "consciously or unconsciously could be adversely affected" by the relationship with his boss. *Connor*, 34 Cal. 3d. at 149. And in this case, as in *Eubanks*, there is a "reasonable possibility" that AUSA Waldinger's ability to exercise his discretionary functions in a fully impartial manner have been compromised. 14 Cal. 4th at 594.

In short, even under § 1424, disqualification is warranted.

### C. Proving Actual and Apparent Conflict

The government argues that there is a sharp and legally salient distinction between actual and apparent conflicts, and that Mr. Nosal has made no specific allegations of an actual conflict. (Govt. Memorandum at 19 & n.6.) As noted above, under California law, there is no sharp distinction between actual and apparent conflicts. The question is simply whether, under the circumstances of a particular case, there is a "reasonable possibility" that the prosecutor's ability to exercise his authority in a fully independent manner has been compromised.

In his opening brief, defendant Nosal called the Court's attention to a truly extraordinary factual matter that distinguishes this case from all others cited by the government. This is not simply a matter in which the line attorney assigned to this matter, Kyle Waldinger, is now serving under a supervising official, United States Attorney Joseph Russoniello, who once represented the defendant in this same matter. Rather, as Mr. Nosal asserted and the government does not dispute, AUSA Waldinger met and discussed with Mr. Russoniello this very matter

while Mr. Russoniello was representing Mr. Nosal. This is thus a case in which Mr. Waldinger has indeed communicated with the disqualified counsel, Mr. Russoniello, about the matter at hand, albeit before the conflict arose, a factor apparently absent from all of the precedents on which the government relies. Whether those communications give rise to an appearance of conflict or an actual conflict is largely an academic debate; the fact is that those contacts have compromised the ability of Mr. Waldinger to function independently and impartially in this matter.

Furthermore, as noted above, we now have the remarkable claim by counsel for Ms. Christian of her entitlement to have Mr. Waldinger present her anticipated testimony against Mr. Nosal at trial. A defendant has a right to an unbiased prosecutor who will fairly appraise the strength of his case. As a consequence, a prosecutor must maintain an appropriate distance from his witnesses, constantly evaluating the credibility of their testimony dispassionately, as he must be willing to dismiss a matter if he concludes that he cannot prove guilt beyond a reasonable doubt. *People v. Superior Court (Greer)* (1977) 19 Cal.3d 255, 267 (Because the prosecutor enjoys "broad discretion" to charge, try and dismiss cases, "the public he [or she] serves and those he [or she] accuses may justifiably demand that he [or she] perform his [or her] functions with the highest degree of integrity and impartiality, and with the appearance thereof.") Ms. Christian's insistence on a right as a witness against Mr. Nosal to have Mr. Waldinger in particular prosecute the defendant undermines any presumption that Mr. Waldinger has maintained the objectivity required to assess the credibility of this witness.

To the extent that this Court rules, contrary to *Connor* and *Eubanks*, that Mr. Nosal must make some specific factual showing of "actual conflict," Mr. Nosal should be given an opportunity to do so. At this point, Mr. Nosal has no way to know (1) the precise content of the communications between Mr. Russoniello and Mr. Waldinger during their pre-indictment negotiations; (2) what (if any) screening steps the prosecutor's office has taken;[2] or (3) the

---

[2] *See also* Christian Opposition at 3 ("Ms. Christian, of course, is not in a position to know or describe the internal screening steps taken by the Department of Justice to ensure that Mr. Russoniello has been appropriately 'walled off' from this matter.").

7

dealings between Mr. Waldinger and counsel for Ms. Christian that have led the latter to insist that defendant Nosal be prosecuted by the former. If the resolution of Mr. Nosal's motion depends on a finding of "actual conflict" or lack thereof, then this Court would be required to undertake some inquiry to determine what screening procedures the prosecution has implemented.

Relatedly, the government argues that should Mr. Nosal raise any new argument regarding actual prejudice, it must be given a chance to respond in a sur-reply filing. (Govt. Memorandum at 20.) If the government has additional legal authority or factual evidence that would illuminate the question at hand, Mr. Nosal certainly welcomes its submission.

### D. Separation of Powers

Finally, the government suggests that disqualifying AUSA Waldinger would be unconstitutional because it would violate the separation of powers doctrine. That argument is makeweight. If the government's argument were true, courts have no authority to manage their own affairs, including regulating litigants who appear before them. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991). But they surely do possess that power, including the power to enforce ethics rules. *See, e.g.*, *Whitehouse v. United States Dist. Court*, 53 F.3d 1349, 1366 (1st Cir. 1995); *United States v. Lopez*, 4 F.3d 1455, 1461 (9th Cir. 1993); *United States v. Klubock*, 832 F.2d 664, 667 (1st Cir. 1987) (en banc); *see also Paul E. Iacono Structural Engineer, Inc. v. Humphrey*, 722 F.2d 435, 438 (9th Cir. 1983) ("[T]he regulation of lawyer conduct is the province of the courts . . . .").

It is true that for a time in the late 1980s and early 1990s, the Department of Justice took the dubious and controversial position that courts lacked the power to require federal prosecutors to comply with local rules,[3] but that position was explicitly repudiated with the Citizens

---

[3] The argument was made most infamously in the "Reno Rule," a regulation promulgated by the Attorney General in 1994. *See Communications With Represented Persons*, AG Order No. 1903-94, 59 Fed. Reg. 39,910 (1994). It argued, among other things, that separation of powers doctrine allowed federal prosecutors to exempt themselves from state ethics rules and local court rules. *Id*. at 39,917.

Protection Act of 1998, *codified at* 28 U.S.C. § 530B.  *See* Fred C. Zacharias & Bruce A. Green, *The Uniqueness of Federal Prosecutors*, 88 Geo. L.J. 207, 211-15 (2000) (discussing the legislative history of the CPA).  The CPA states forcefully that federal prosecutors "shall be subject to State laws and rules, and local Federal court rules, governing attorneys in each State where such attorney engages in that attorney's duties, to the same extent and in the same manner as other attorneys in that State."  28 U.S.C. § 530B(a).

If the governing ethical rules prescribe disqualification, then this Court has the power to order disqualification.  If the rules do not prescribe disqualification, then this Court does not have the power to order disqualification.  Invoking separation of powers doctrine does nothing to illuminate the analysis.  This case is no place to debate the theory of the "unitary executive."

## CONCLUSION

For the reasons stated, the superceding indictment must be dismissed and the entire United States Attorney's Office for the Northern District of California, including AUSA Waldinger, must be recused from further participation in the matter.

Dated: November 10, 2008                           Respectfully submitted,

                                                          /s/ Steven F. Gruel
                                                         STEVEN F. GRUEL

                                                         Attorney for Defendant
                                                         DAVID NOSAL