STEVEN F. GRUEL (CSBN 213148)
Attorney at Law
315 Montgomery Street, 9th Floor
San Francisco, CA 94104
Telephone Number: (415) 989-1253
Fax Number: (415) 449-3622
attystevengruel@sbcglobal.net

DENNIS P. RIORDAN (SBN 69320)
DONALD M. HORGAN (SBN 121547)
RIORDAN & HORGAN
523 Octavia Street
San Francisco, CA 94102
Telephone Number: (415) 431-3472
Fax Number: (415) 552-2703
dennis@riordan-horgan.com
Attorneys for David Nosal

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) No. CR-08-0237-MHP |
| Plaintiff, | ) |
| vs. | ) |
| DAVID NOSAL, et al., | ) Date: February 10, 2010 |
| | ) Time: 1:30 p.m. |
| Defendants. | ) Courtroom: Hon. Marilyn Hall Patel |

**DEFENDANT NOSAL'S TRIAL
BRIEF AND MOTIONS IN LIMINE**

**INTRODUCTION**

This federal criminal prosecution grew out of a civil dispute between David Nosal and his former employer, Korn Ferry International (hereafter "KF"), a large executive search firm, over the contractual obligations owed one another after Nosal left KF in 2004, but continued to conduct searches for the firm as an independent contractor. KF wanted both that Nosal generate as much money for the firm as possible in the year following his departure and that Nosal, who intended to start his own executive search firm, be constrained from competing with KF during that year. Nosal wanted to be paid all the monies owed him by KF for work he had done as an employee and would do as an independent contractor, while seeking latitude to get his new firm off the ground and running as soon as he could.

The crux of the dispute was a non-compete clause that KF required Nosal to sign as part of his 2004 separation agreement. In March of 2005, KF received an anonymous tip that Nosal was engaging in searches that KF viewed as violative of the non-compete clause. KF saw an opportunity to use the perceived contractual breach as a basis for denying Nosal the million dollars that Nosal was to be paid at the end of July of 2005 under the terms of his separation agreement. From March of 2005 onward, KF monitored the activities of past and present employees of KF who were known to be close to Nosal in an effort to marshal evidence that he was in breach of the non-compete clause.

The non-compete issue became the basis of a still-pending civil arbitration proceeding between KF and Nosal. Nosal would likely have prevailed in that proceeding, particularly since the California Supreme Court recently made crystal clear that non-compete agreements are void under California law. *Edwards v. Arthur Andersen LLP*, 44 Cal. 4th 937, 949 (2008)[1]. KF, however, sought to gain an advantage in the civil proceeding by lobbying the United States Attorney's Office for the Northern District of California in a successful attempt to procure a criminal indictment of Mr. Nosal.[2]

---

[1] By its terms, the Nosal separation agreement is controlled by California law.

[2] The discovery material in this case establishes that KF used lawyers who had formerly

1

The indictment in this case once contained nineteen counts including (1) sprawling mail fraud allegations based on the non-compete clause*;* and (2) computer hacking charges that have been largely (if not entirely) undermined by a recent Ninth Circuit decision, *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127 (9th Cir. 2009).  Thirteen of the original counts, including all of the mail fraud charges, now have been dismissed.

As to the three remaining computer fraud counts, there was no "hacking" of the sort envisioned by the Computer Fraud and Abuse Act (hereafter "CFAA"). The alleged entries into the KF computer were made by means of a valid password held by a KF employee who either made the entries or authorized others to use her password to make them. Furthermore, the entries were made with the full knowledge of KF, who could have revoked the password of its employee but did not do so in its effort to build its civil claim against Nosal. In any case, Mr. Nosal was unaware that the specific charged entries were being made, and thus cannot be guilty as an aider and abettor on the CFAA charges.

The two trade secret counts cannot survive a Rule 29 motion because for, among many other reasons, the material at issue in those charges — the qualifications of candidates for executive positions — was readily available in the public domain. Furthermore, KF did not take the statutorily required "reasonable measures" to protect it as a trade secret. Indeed, rather than striving to keep Mr. Nosal from gaining the information, KF facilitated his receiving it, again for the purpose of building its case that he was in violation of his non-compete clause. Finally, Mr. Nosal did not know, believe, or intend that (a) the information in question was a trade secret; (b) his possession of it could or would cause KF economic harm; or (c) his possession of the material was unlawful.  All these are mental state elements of the trade secret counts that the government will be unable to prove. Now on life support, the remainder of this prosecution should die a well deserved death,  permitting the matter to return to the civil forum where it began and should have stayed.

---

been members of the U.S. Attorney's Office for the Northern District in its lobbying effort.

1  Defendant Nosal will now discuss the charges against him and the issues they will raise.
2  He will then address two major evidentiary matters that will arise at trial–the evidentiary
3  significance of the non-compete agreement in his 2004 separation agreement and the
4  admissibility of the guilty pleas of the three principal government witnesses. He will submit
5  proposed jury instructions in a separate document.

**A.  The Charges**

Counts Three, Eight, and Nine charge violations of the Computer Fraud and Abuse Act (CFAA), 18 U.S.C. § 1030(a)(4). That provision makes its illegal to access a computer without authorization, or to exceed authorized access, with intent to defraud.

The CFAA charges arise from downloads of "Searcher" data from a Korn-Ferry computer on three specific occasions: April 12, 2005 (Count Three); June 25, 2005 (Count Eight); and July 29, 2005 (Count Nine).

Counts Ten and Eleven both allege violations of the Economic Espionage Act (EEA), 18 U.S.C. § 1832. The EEA proscribes several different kinds of conduct. Subdivision (a)(1) prohibits, among other things, theft and misappropriation of trade secrets. Subdivision (a)(2) prohibits, among other things, downloading trade secrets. Subdivision (a)(3) prohibits knowing receipt of stolen trade secrets. Both Counts 10 and 11 are based on the same instance of conduct — the April 12, 2005, download of lists of chief financial officers (CFOs) from the "Searcher" data.

The conspiracy charge in Count One rests on the trade secret and/or computer charges in the five substantive counts. Thus defendant Nosal either committed a charged offense on one of three dates in 2005, or he is guilty of no crime at all.

**B.  The Legal and Factual Issues Raised by CFAA and EEA Charges**

**1. The CFAA Counts**

The conduct underlying the three CFAA counts will be largely undisputed. The defense anticipates the government will offer testimony that the password of Jacqueline Froelich-L'Heureaux (hereafter "JF") was used to access the KF computer on the April, June, and July dates, all at times when JF was a KF employee in possession of a valid password. JF herself

3

accessed the KF Computer and then gave access to it to Becky Christian (hereafter "BC") in June, and did the same with Mark Jacobson (hereafter "MJ") in July. JF apparently allowed BC to use JF's password to access the KF computer in April. The government will also offer evidence that the CFO material from the April download, alleged to be trade secrets in Count Ten and Eleven, was passed onto, and possessed by, defendant Nosal. The crucial legal and factual issues which will be in dispute in this case revolve around those three key dates in 2005.

As to the CFAA counts, the issues of law and fact in dispute at trial are:

(a) the legal issue of whether a crime under the CSAA can be committed if access to a computer is gained not by "hacking," but by the use of a valid password by a person other than the holder of that password, if that use is authorized by the password's holder;

(b) the mixed question of fact and law of whether KF was aware of the entries made on JF's password at the time they were made, and whether such awareness constitutes authorization, particularly where the entries are permitted in contemplation of financial gain;

(c) the involvement of BC and MF in the use of JF's password would constitute a crime under the CSSA, the factual issue of whether defendant Nosal possessed the knowledge and intent required to render him criminally liable for that offense as an aider and abettor;

(d) the legal issues of what constitutes such knowledge and intent. Defendant Nosal submits that to convict him on an aiding and abetting theory, the government would have to prove beyond a reasonable doubt that he was aware that JF had authorized BC to use JF's password in accessing the KF computer on April 12th, and that JF, after accessing the KF computer on the June and July dates, then allowed BS and MJ to download data from the computer on those occasions. In addition to that knowledge, the state will have to prove that defendant Nosal acted with the specific intent not merely to act dishonestly, but to defraud, i.e., to deprive KF of a property right. An intent to deprive of an intangible right or interest is insufficient to constitute the required mental state; and

(e) if the government fails to prove that defendant Nosal aided and abetted the CSAA offenses, the legal and factual issues of whether Nosal can nonetheless be convicted under the *Pinkerton* doctrine of vicarious conspiratorial liability, rendering him guilty of Counts Three,

1  Eight, and Nine even though he neither knew, nor intended, that JF, BC, or MJ would commit
2  those charged offenses.   Defendant Nosal also will oppose any attempt by the government (1)
3  to rely on *Pinkerton* to oppose defendant's Rule 29 motion, or (2) to instruct the jury on a
4  *Pinkerton* theory. Defendant Nosal will further oppose any attempt by the government to rely
5  in argument or through jury instruction on a theory of deliberate ignorance in the absence of
6  adequate proof of actual knowledge.

### 2. The EEA Counts

As to the trade secret counts, the pivotal factual and legal issues are:

(a) the legal issue of what is the correct definition of a trade secret;

(b) the mixed question of fact and law of whether the "Searcher" material on CFOs downloaded on April 12th constituted a trade secret, given that the material in question was readily available in the public domain;

(c)  the mixed question of fact and law of whether KF took reasonable measures to protect the Searcher  information, especially in the light of its efforts to build its civil cause of action based on the non-compete clause;

(d) the factual issue of whether defendant Nosal knew the downloaded material was a trade secret;

(e) the factual issue of whether Nosal knew or intended that the downloading, receipt, or possession of the CFO material would injure KF;

(f) the legal issue of whether a trade secret prosecution requires the mental state element of a defendant's knowledge that the downloading or possession of the alleged trade secret was unlawful, and the factual issue of whether the defendant possessed those required mental states.

### C. The Non-Compete Issue

As it was originally indicted, this case encompassed allegations that defendant Nosal had committed mail fraud by accepting monthly payments from KF in 2004 and 2005 for work as an independent contractor, given that he had signed but failed to honor a contractual promise to KF to refrain from engaging in competing professional activity during that same period. Those mail fraud allegations rested on a non-compete clause of Nosal's separation agreement,

governed by California law, of the precise kind that the California Supreme Court subsequently declared to be legally void.[3] This Court has dismissed the mail fraud charges on grounds other than those stated in *Edwards*.

That being so, this case, while raising some thorny legal questions, could be tried on fairly narrow grounds. The government could offer evidence of the conduct of JF, BC, MJ, and the defendant concerning the events of the three days on which the five substantive offenses are alleged to have occurred, as well as evidence of the mental state of the players in regard to those events. It could also offer evidence on other relevant matters such as the measures KF took to protect the material alleged to have constituted trade secrets. Were this approach taken, there would be no need to place in evidence matters such as the defendant's separation agreement and the (legally invalid) non-compete clause it included.

Instead, the government will apparently endeavor to try this case in precisely the same manner as it would have had the Court not dismissed the majority of the CFAA counts and the mail fraud charges in their entirety. The government's trial brief indicates it intends to introduce the separation agreement, including the non-compete clause, and, Nosal assumes, conversations among the defendant and the three principal witnesses concerning it.

Whether the defendant did or did not honor his non-compete agreement has no direct tendency in reason to prove or disprove that he, or anyone else, committed the CFAA or EEA violations. The government indicates in its trial brief , however, that evidence of the non-compete agreement will be needed to explain why and how the investigation of this matter was undertaken, first by KF and then by the government itself. The government may also argue that the evidence concerning the non-compete clause, and the actions taken by the defendant and others to circumvent it, bear on the mental state elements of the charged CFAA and EEA offenses.

Defendant Nosal anticipates that he will raise hearsay and relevancy objections to the evidence that the government seeks to introduce dealing with events other than those

---

[3]*Edwards v. Arthur Andersen LLP*, 44 Cal. 4th 937, 949 (2008).

specifically alleged in the CFAA and EEA charges.  It is difficult to anticipate what those specific objections will be in advance of knowing the precise testimony the government seeks to offer.  Defendant can give fair warning, however, that addressing the non-compete clause is a two-way street.  If the government places the clause into evidence, the defendant will be entitled to rebut the government's allegations concerning it.

Defendant contends, and will offer evidence, that the non-compete agreement was the cornerstone of an effort by KF to defraud him.  In order to receive the monies owed him at the time he was leaving KF and those he would earn thereafter as a KF contractor, defendant Nosal was required to sign a separation agreement containing the illegal provision compelling him to sacrifice his legal right to engage in professional activities on his own.  He later came to the (correct) conclusion that the non-compete agreement was legally unjust, but knew that KF would use any professional activity on his part as an excuse to deny him the million dollar payment they were obliged to pay him in July of 2005.  Because he had no desire to face off with KF over his right to practice his profession, he initially engaged in his own search activities surreptitiously and through his surrogates in an unsuccessful effort to avoid KF wrongly denying him the money owed him in July of 2005.  The non-compete agreement explains why any subterfuge engaged in by Nosal was not indicative of consciousness of wrongdoing on his part or his intent to defraud KF.

Defendant Nosal thus is entitled to, and will submit, an instruction based on *Edwards* to the effect that he had no obligation to honor the void non-compete agreement. Absent such an instruction, there is a grave danger that a jury could convict of the charged crimes not because they have been proven beyond a reasonable doubt, but (at least in part) based on a conclusion that the defendant had wronged K-Y by breaching his contractual obligations to them.

**D.    In Limine Objection to Admission of The Guilty Pleas of BC, MF, and JF**

The government and the defense are in agreement as to one rule of law applicable to this case: the guilty pleas of BC, MF, and JF are "not evidence against the defendant." See Government's Proposed Instruction No. 33. For that reason, defendant moves under Federal

7

Rule of Evidence 403 to exclude evidence of those pleas from admission at trial.

Such evidence is, of course, often introduced for the purpose of impeaching a government witness's credibility. The defendant has a constitutional right to admit the terms of a plea bargain as evidence that the witness has an incentive to point the finger at the defendant in order to curry favor with the government, thereby obtaining for the witness a recommendation for leniency in sentencing. The government then puts in evidence the clause in the plea bargain that the witness must tell the truth in order to obtain leniency, and the jury considers all of this evidence as bearing on the witness's believability.

In support of his motion in limine, however, defendant Nosal will stipulate that he will not seek to attack the credibility of these three government witnesses on the ground that their plea bargain give them a bias or interest in their testimony incriminatory of Nosal. For that reason, the government will have no basis on which to rehabilitate the witnesses by placing in evidence the "truth-telling" clause of their plea bargains. The evidence of the plea bargains thus has little or no probative value.

On the other hand, the same evidence has a tremendous potential for creating undue prejudice and unnecessarily consuming the court's time. Consider the enormous differences between the facts of this case and others in which government witnesses are commonly impeached with their plea bargains. For example, a government witness who was in jail with a defendant charged with murder testifies the defendant confessed to him the defendant's guilt of the charged crime. The jailhouse informant is given a lenient sentence on his pending forgery charges in return for his testimony. No jury could believe that the informant's plea to the forgery charges somehow constituted proof of the murder defendant's guilt. Likewise, a witness caught robbing a bank is given a favorable plea bargain in return for testimony that the defendant was the mastermind of the crime. Clearly, the robbery was committed and the witness was guilty of its commission, and the introduction of his admission of guilt in his plea bargain in itself would not tend to implicate the defendant in the crime.

Here, however, it is a cornerstone of Mr. Nosal's defense that there simply was no crime committed by either himself or anyone else. As to the trade secret counts, the CFO list

did not constitute a trade secret both because it contained information in the public domain and because no reasonable measures were taken by KF to protect its confidentiality. The government will have to prove each element of the crime beyond a reasonable doubt. Indisputably, as a matter of law, the fact that BC, MF, and JF pled guilty to conspiring to commit trade secret violations cannot constitute any proof whatsoever that the downloading of the CFO list was an EEA violation.  Yet a reasonable juror would naturally conclude that there must have been a trade secret crime intended or committed; otherwise, why would these three parties admit being guilty of conspiring to violate the EEA?  Furthermore, the same juror would assume that neither the government nor a federal judge would accept their guilty pleas to a crime that was not, and could not have been, committed.

      Likewise, Nosal contends that, as a matter of law, the entry into the KF computer by means of the consensual use of a valid password held by a KF employee could not constitute the "hacking" offense envisioned by the statute. Furthermore, as a factual matter, KF was monitoring the entries made on JF's password in order to gain a financial benefit vis-a-vis Nosal, a fact that vitiates the "unauthorized entry" element of the statute. The government's theory on the computer counts will apparently be that Nosal is guilty of those offenses on a conspiratorial liability theory even if he did not know that BC, MF, and JF were committing the crimes. Under that theory, the government's principal evidentiary burden would be proving beyond a reasonable doubt that BC, MF, and JF indeed were guilty of the crimes charged in Counts Three, Eight, and Nine. But how can jurors hear testimony from the three that they admitted their guilt to conspiring to violate the CFAA yet also be told that those guilty pleas cannot be considered as evidence that the computer crimes alleged in the indictment were in fact committed?

      The confusion and consumption of time entailed in the admission of the guilty pleas becomes exponentially greater when one considers the right of the defendant to challenge the significance of that evidence through cross-examination.  The facts are these: BC, MF, and JF were told by the government and their lawyers that unless they pled guilty to charges relating to the trade secret and computer offenses, they, like Nosal would face far more serious charges of

9

mail fraud. Yet there was no mail fraud committed in this case, and those charges have been dismissed. Furthermore, the three were unaware that their exposure to conviction on the computer charges was far greater than, in the wake of *Brekka*, we now know that it was. In sum, the three had a very strong incentive to plead guilty to crimes that neither they nor the defendant ever committed, and they did so.

If the government claims that the guilty pleas are admissible as evidence in support of the credibility of the three witnesses, the defense will be entitled to prove that the pleas were entered because of profound errors of law on the part of the government, the witnesses, and their lawyers. The confusion and consumption of time that the admission of the guilty pleas would involve requires their exclusion under Rule 403.

Dated: January 29, 2010

Respectfully submitted,

STEVEN F. GRUEL

DENNIS P. RIORDAN
RIORDAN & HORGAN

By /s/ Steven F. Gruel
    STEVEN F. GRUEL

By /s/ Dennis P Riordan
    DENNIS P. RIORDAN

Counsel for Defendant
DAVID NOSAL