1
2
3
4
5
6        **UNITED STATES DISTRICT COURT**
7        **NORTHERN DISTRICT OF CALIFORNIA**
8        **SAN FRANCISCO DIVISION**
9

10   UNITED STATES,                          Case No. 08-cr-00237 EMC (NC)

11                 Plaintiff,                **ORDER GRANTING IN PART AND
                                             DENYING IN PART RULE 17(C)**
12          v.                               **SUBPOENA TO THIRD PARTY
                                             KORN/FERRY**
13   DAVID NOSAL,
                                             Re: Dkt. No. 275
14                 Defendant.

15

16          Defendant David Nosal moves for a subpoena duces tecum under Federal Rule of

17   Criminal Procedure 17(c).  Nosal is charged with conspiracy and theft of trade secrets from

18   his former employer, Korn/Ferry International.  The issues are (1) whether the documents

19   Nosal seeks to subpoena are material to his defense and (2) whether Korn/Ferry would be

20   overly oppressed by producing them.  After considering the parties' briefs and a hearing on

21   the matter, the Court finds that the bulk of the information Nosal seeks is material to his

22   defense and its production would not overly burden Korn/Ferry; however, many requests

23   are duplicative, some are moot, and one is overly broad.  Accordingly, the Court GRANTS

24   IN PART AND DENIES IN PART Nosal's subpoena.

25                              **I. BACKGROUND**

26          Nosal is a former executive at Korn/Ferry, an executive search and placement

27   company with offices in Los Angeles, Silicon Valley, and San Francisco.  Korn/Ferry uses

28   a database called Searcher, which contains information about executive candidates, as well

1  as the results of past searches for client-companies.  In October 2004, Nosal left

2  Korn/Ferry.  Under the terms of his departure, however, Nosal would complete sixteen

3  additional searches for client-companies seeking executives.  In exchange, Korn/Ferry

4  would pay Nosal $25,000 per month and two, lump-sum payouts, worth at least $1 million.

5  A further condition of this arrangement precluded Nosal from starting his own executive

6  placement company.

7       In March of 2005, Korn/Ferry received an anonymous email alleging that Nosal was

8  violating the terms of the noncompete agreement.  Korn/Ferry hired its own investigators

9  and began tracking the logins and use of Searcher by Mark Jacobson, Jacqueline Froehlich-

10  L'Heureaux, and Becky Christian, Nosal's executive assistant and romantic interest.

11  Korn/Ferry then turned to the U.S. Attorneys' office, which charged Nosal with conspiracy

12  and theft of trade secrets.

13      Trial was set for February 9, 2010 in front of Judge Patel.  In January 2010, Nosal

14  filed a motion for a subpoena duces tecum under Federal Rule of Civil Procedure 17(c).

15  He made fourteen requests for documents from Korn/Ferry, which he alleged were

16  essential to his defense.  The government sought interlocutory review of Judge Patel's

17  decision to dismiss several of the charges against Nosal, and the motion for the subpoena

18  was not resolved.

19      The government's appeal was unsuccessful, and the proceedings against Nosal have

20  recommenced.  He therefore renews his motion for the subpoena under Rule 17(c).  He

21  renews nine of the original fourteen requests and makes eleven new requests.  In support of

22  his subpoena, Nosal resubmits his 2010 motion and the accompanying declaration filed by

23  his counsel.  Dkt. No. 275.  Judge Chen referred Nosal's motion, and all discovery in this

24  case, to this Court.  Dkt. No. 277.

25  **A.    Korn/Ferry's Opposition and Sur-reply**

26      Korn/Ferry opposes Nosal's motion and asserts that he fails to make a showing that

27  the evidence he seeks is limited to specific materials, relevant to his defense, and

28  unavailable by other means, as required by *United States v. Nixon*, 418 U.S. 683 (1974).  It

claims that Nosal's requests are not specific because they are too broad, seeking "any and all" materials; that Nosal's requests are not relevant because his theory of the case is inconsistent with trade secret law; and that Nosal's requests seek inadmissible documents, either because they constitute hearsay, or because he intends to use them for impeachment.

Korn/Ferry also argues that the information is available by other means because it already responded to a trial subpoena served upon it by the government in 2010 and its responsive discovery was in turn given to Nosal by the government.  It claims that it produced much of what Nosal seeks in response to discovery requests propounded during civil arbitration in 2007.  Several other requests should be quashed, according to Korn/Ferry, simply because they ask for information that forms the basis of charges in the superseding indictment and thus should be directed to the government.

**B.    The Government's Opposition and Sur-reply**

The government also opposes Nosal's motion arguing that it provided to Nosal nearly all of the information he requests in 2010.  It points out that many of the materials Nosal seeks are not in Korn/Ferry's possession, or are based on the superseding indictment, and thus Nosal's requests should be directed at the government.  In addition, the government asserts that Nosal has failed to make a showing that the evidence he seeks is limited to specific materials, relevant to his defense, and unavailable by other means, as required by *Nixon*.

**C.    Nosal's Consolidated Response**

Nosal addresses his eleven new requests in his consolidated response to the government's and Korn/Ferry's oppositions and asserts that the information is relevant to the preparation of his defense.  He acknowledges that "[i]t is possible that certain of the documents that [he] seeks have been previously provided in criminal or civil discovery," but states that the parties planned to meet and confer in order to sort out if any of the materials sought by Nosal's subpoena were in fact already produced, either by the government in 2010 or by Korn/Ferry in connection with the civil arbitration in 2007.  Dkt. No. 292 at 2.

## II. STANDARD OF REVIEW

Under Federal Rule of Criminal Procedure 17(c), a party may subpoena a witness to compel the production of books, paper, documents, data, or other objects.  Such a subpoena may be quashed if the production of the requested materials would be "unreasonable or oppressive, but not otherwise."  *United States v. Nixon*, 418 U.S. 683, 689 (1974).  Rule 17 does not "provide an additional means of discovery"; rather "its chief innovation was to expedite the trial by providing a time and place before trial for the inspection of the subpoenaed materials."  *Bowman Dairy Co. v. United States*, 341 U.S. 214, 220 (1951).

In *Nixon*, the Supreme Court held that any request under Rule 17 must identify specific materials, which are relevant and admissible.  418 U.S. at 700.  In addition, the moving party must show that the materials sought are "not otherwise procurable reasonably in advance of trial by exercise of due diligence," "that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial," "and that the application is made in good faith and is not intended as a general fishing expedition."  *Id.* at 699-700 (citing *United States v. Iozia*, 13 F.R.D. 335, 338 (S.D.N.Y. 1952)).  The Court declined to decide, however, whether its holding applied "in its full vigor" when a subpoena duces tecum is directed to a third party rather than the government.  *Id.* at 699 n.12.

The Ninth Circuit has not addressed this issue, although it has applied the *Nixon* factors to a defendant's Rule 17(c) subpoena of a third party.  *United States v. Eden*, 659 F.2d 1376, 1381 (9th Cir. 1981) (affirming quashing of defendant's Rule 17(c) subpoena of the Secretary of Education because material sought was otherwise procurable and not relevant); *United States v. Reed*, 726 F.3d 570, 577 (affirming quashing of defendant's Rule 17(c) subpoena of the City of Anchorage because material sought was neither relevant nor admissible); *United States v. Villa*, No. 10-30080, 2012 WL 5352101, *1 (9th Cir. Oct. 31, 2012) (affirming trial court's quashing of an "insufficiently specific" subpoena to the City of Merced.).  "But it is vitally important never to let the frequent repetition of a familiar principle obscure its origins and thus lead to mindless application in circumstances to which

1   the principle never was intended to apply." *United States v. Stein*, 488 F. Supp. 2d 350,

2   365, 367 (S.D.N.Y. 2007) (noting that "*Nixon* should not so readily be divorced from the

3   concerns that produced it" and ordering third party subpoenaed to produce documents

4   "material to the preparation of the defense.").

5       Several courts have noted that when a Rule 17(c) subpoena is served on a third party,

6   as opposed to the government, the same rationale for limiting the scope of discoverable

7   materials does not apply.  *United States v. Tomison*, 969 F. Supp. 587, 593 n.14 (E.D. Cal.

8   1997) ("The notion that because Rule 16 provides for discovery, Rule 17(c) has no role in

9   the discovery of documents can, of course, only apply to documents in the government's

10  hands; accordingly, Rule 17(c) may well be a proper device for discovering documents in

11  the hands of third parties.").  "Because the Rule states only that a court may quash a

12  subpoena 'if compliance would be unreasonable or oppressive,' the judicial gloss that the

13  material sought must be evidentiary—defined as relevant, admissible and specific—may be

14  inappropriate in the context of a defense subpoena of documents from third parties." *United

15  States v. Nachamie*, 91 F. Supp. 2d 552, 563 (S.D.N.Y. 2000).  For example, applying the

16  evidentiary requirement from *Nixon* to a third party subpoena could deny a defendant "the

17  reasonable opportunity to obtain material evidence that could be crucial to that cross-

18  examination" and render his right to confrontation "meaningless." *United States v. Tucker*,

19  249 F.R.D. 58, 67 (S.D.N.Y. 2008).  Furthermore, applying a more relaxed standard to third

20  party subpoenas will address the disparity between criminal and civil cases in access to

21  discovery.  It is "ironic that a defendant in a breach of contract case can call on the power of

22  the courts to compel third-parties to produce any documents 'reasonably calculated to lead

23  to the discovery of admissible evidence,' while a defendant on trial for his life or liberty

24  does not even have the right to obtain documents 'material to his defense' from those same

25  third-parties." *United States v. Rajaratnam*, 753 F. Supp. 2d 317, 320 (S.D.N.Y. 2011)

26  (internal citation omitted).

27      If the *Nixon* test is inappropriate for third party subpoenas, "then the only test for

28  obtaining the documents would be whether the subpoena was: (1) reasonable, construed

using the general discovery notion of material to the defense; and (2) not unduly oppressive

for the producing party to respond." *Id.*; *see also Tucker*, 249 F.R.D. at 66 (holding the

*Nixon* standard "inappropriate where production is requested by (A) a criminal defendant;

(B) on the eve of trial; (C) from a non-party; (D) where the defendant has an articulable

suspicion that the documents may be material to his defense. A defendant in such a

situation need only show that the request is (1) reasonable, construed as 'material to the

defense,' and (2) not unduly oppressive for the producing party to respond.").

Nor is applying a less stringent standard to Rule 17(c) subpoenas from criminal

defendants to third parties inconsistent with Supreme Court precedent. In *Bowman*, the

Court stated that "the plain words of the Rule . . . must be given their ordinary meaning to

carry out the purpose of establishing a more liberal policy for the production, inspection and

use of materials at the trial." 341 U.S. at 220. The *Bowman* Court noted that Rule 17 was

intended to allow courts to enable a defendant to inspect evidence in advance "for the

purpose of course of enabling the party to see whether he can use it or whether he wants to

use it." *Id.* As such, a defendant could use Rule 17(c) to reach materials "not subject to

Rule 16." *Id.* at 219-20. This suggests that Rule 17 provides "a way for a defendant to

examine documents he believes to exist that would be relevant to, and therefore

presumptively admissible in, his defense," as opposed to having to identify specific

documents which are relevant and admissible. *Rajaratnam*, 753 F. Supp. 2d at 320.

Furthermore, the Court in *Nixon* referred to the "potential evidentiary uses" of the

material sought when describing the "admissibility" requirement, and listed several ways in

which defendant might make use of it. 418 U.S. at 700-01; *see also United States v.*

*Zhiqiang Zhang*, 10-cr-00827 LHK (HRL), 2012 WL 195509, *2 (N.D. Cal. Jan. 23, 2012)

("Because it is often difficult at the pretrial stage 'to determine with precision the

admissibility of certain documents . . . if a document is arguably relevant and admissible

under the Rules of Evidence, the *Nixon* 'evidentiary' requirement is likely satisfied.")

(internal citation and quotation marks omitted). The Court's discussion of "admissibility" is

an analysis of relevance, *see* Fed. R. Evid. 402 ("Relevant evidence is admissible . . ."),

Case No. 08-cr-00237 EMC (NC)
ORDER GRANTING IN PART RULE
17(C) SUBPOENA

6

rather than a more stringent analysis of whether the material may be entered into evidence for the truth of the matter asserted.  It is not a far leap, then, to suggest that the "material to the defense" standard should apply to third party subpoenas.  In determining whether evidence is material, the Ninth Circuit looks to the "fundamental standards of relevancy," "which require the admission of [evidence] which tends to prove" a particular fact of consequence.  *United States v. Stever*, 603 F.3d 747, 756 (9th Cir. 2010) (internal citation and quotation omitted).

*Nixon*'s specificity requirement is more difficult to square with this interpretation of Rule 17.  But, "in the context of a subpoena to a third party to whom Rule 16 does not apply, requiring the defendant to specify precisely the documents he wants without knowing what they are borders on rendering Rule 17 a nullity."  *Rajaratnam*, 753 F. Supp. 2d at 320.  Concerns about the Confrontation Clause and the unequal access to discovery in criminal cases also weigh in favor of relaxing the specificity factor.

For all these reasons, the Court applies the standard from *Nachamie* to Nosal's subpoena of third party Korn/Ferry under Rule 17(c) and assesses whether his requests are (1) material to his defense, and (2) not overly oppressive.

### III. DISCUSSION

In total, Nosal submits twenty-five requests for materials from Korn/Ferry in his Rule 17(c) subpoena.  Nosal made requests 1-14 in 2010; requests 15-25 are additional requests, not originally included in his Rule 17(c) subpoena.  In response to the government's 2010 trial subpoena, Korn/Ferry agreed to produce materials responsive to requests number 5, 9, 10, and 11.  Korn/Ferry has also agreed to produce its personnel file on Nosal, responding to request 23.  Request number 3 seeks grand jury testimony, which Korn/Ferry cannot produce, and the production of which the government is discussing with defense counsel.  Dkt. No. 281 at 15.  The Court reviews the remaining requests to determine whether Nosal has met his burden under Rule 17(c).

Korn/Ferry asserts that it produced "more than 15,000 pages of hard-copy documents," "CDs containing tens of thousands of pages," and "detailed interrogatory

responses" during civil arbitration.  Dkt. No. 283 at 5.  It argues that Nosal's subpoena seeks information that Korn/Ferry already produced, and which Nosal has been in possession of for nearly seven years.  Nosal, in turn, refers to this production as a "document dump," in which material information is hidden amongst thousands of pages. Despite stating in their briefs that they intended to resolve this issue, as of the hearing, the parties had made no progress in determining whether subpoenaed materials have or have not been produced.

The Court is not in a position to assess whether the information Nosal subpoenas is within this prior discovery, and it is consequently limited in its assessment of whether production of the subpoenaed material would be "overly oppressive" because reproducing materials may be burdensome and duplicative.  The Court's evaluation of Nosal's requests accounts for this limitation.  The parties, after all, are in the best position to determine if the requested materials have been produced.

**A.     Request 1**

Nosal seeks "[c]opies of all Korn/Ferry agreements, understandings, arrangements, including but not limited to the settlement agreements in the related San Mateo civil case, between it or its agents with any anticipated government witness in this case."  Dkt. No. 275-1 at 12.  Korn/Ferry opposes this request because it has already produced these materials to the government.  Dkt. No. 283 at 10.  The government asserts that it provided "Korn/Ferry's agreements with various witnesses" "to the defense on January 22, 2010." Dkt. No. 281 at 15.

Documentation of settlement agreements between Korn/Ferry and other actors in this alleged conspiracy is material to Nosal's defense, even though it may not become admissible until after the testimony of a particular witness.  *Compare Nixon*, 418 U.S. at 701("Generally, the need for evidence to impeach witnesses is insufficient to require its production in advance of trial.") *with Libby*, 432 F. Supp. 2d at 38 ("[W]hen a person is almost certain to testify as a witness at trial and there is an indication of what that testimony will be, then pre-trial production is appropriate.") *and Tucker*, 249 F.R.D. at 66

("Impeachment of the cooperators is clearly material to [the defendant's] defense.").  To the extent that Korn/Ferry has not produced these materials, it must do so.

**B.   Request 2**

Nosal seeks "[c]opies of all previous statements or interviews of any anticipated government witness in this case . . . given to Korn/Ferry staff, Korn/Ferry's attorneys or Korn/Ferry's private investigators in this matter."  Dkt. No. 275-1 at 12.  Korn/Ferry asserts that the responsive information is privileged attorney-work product and hearsay.  Dkt. No. 283 at 11.  The government states that it has produced this information.  Dkt. No. 281 at 15.

It is unclear from the parties' current briefing if Korn/Ferry's asserted privilege still applies, given that the government asserts that it received these materials from Korn/Ferry and then produced them to Nosal.  Generally, a party waives the attorney-client or work-product privilege when it discloses material "in a federal proceeding or to a federal office or agency." Fed. R. Evid. 502.  Such a waiver may even extend to undisclosed communications regarding the same subject matter. *Id.*

As with the information sought in request 1, prior statements by government witnesses are material to Nosal's defense, and Korn/Ferry must produce them.  If some statements are privileged as work product or by the attorney-client relationship, Korn/Ferry may oppose their production by including a privilege log that specifies the bases for its withholding of certain documents.

**C.   Requests 4, 6, and 14**

Nosal seeks "[c]opies of any and all Korn/Ferry documents . . . etc., which support the government's contention as alleged in paragraph 9 of the June 26, 2008 Superseding Indictment that Korn/Ferry 'undertook considerable measures to maintain the confidentiality of the information contained in the Searcher database,'" "[c]opies of any and all Korn/Ferry documents . . . etc., which support the government's contention as alleged in paragraph 8 of the June 26, 2008 Superseding Indictment that Korn/Ferry considered source lists 'to be extremely valuable when initiating subsequent searches for executive[s] for similar positions,'" and "[i]dentification of and copies of all 'other information' belonging

1   to Korn/Ferry which was allegedly illegally obtained as described in paragraph 21 of the

2   June 26, 2008 Superseding Indictment."  Dkt. No. 275-1 at 12, 13.  Korn/Ferry opposes

3   these requests on the grounds that (1) the government is the proper entity to whom Nosal

4   should direct his subpoena because Korn/Ferry cannot know which documents support the

5   indictment, and (2) it already produced this information during the civil arbitration, in

6   response to both a request to compel and an interrogatory.  The government states that it has

7   provided Nosal with emails from "two particular Korn/Ferry executives regarding the

8   Searcher database" but admits this production is narrower than Nosal's request.  Dkt. No.

9   281 at 12.  It also asserts that is has produced all FBI FD-302 reports, along with thousands

10  of pages of documents and ESI, and a lengthy exhibit list.  Dkt. No. 282 at 2.

11      Whether Korn/Ferry took measures to maintain the confidentiality of its database is

12  material to Nosal's defense to the charges of trade secret theft.  Because the government's

13  production was narrower than Nosal's request 4, Korn/Ferry must produce the responsive

14  information, if it has not already done so.

15       As to request 6, the value of Searcher is material to Nosal's defense.  A trade secret

16  "is sufficiently valuable and secret to afford an actual or potential economic advantage over

17  others."  Restatement (Third) of Unfair Competition § 39 (1995).  Because the government

18  contends that its "proof at trial will relate to the question of whether *particular documents*

19  found within Korn/Ferry's computer system constitute trade secrets," dkt. no. 281 at 10, and

20  because Korn/Ferry describes its allegedly misappropriated trade secret as "specific

21  compilations of information," dkt. no. 294 at 4, whether the so-called source lists generated

22  by Korn/Ferry are valuable is material to Nosal's defense.  Accordingly, to the extent this

23  information has not yet been provided, Korn/Ferry must produce it.

24      Request 14 seeks information that is specific to the government's indictment.

25  Although the material may originate with Korn/Ferry, it is ultimately the government that

26  decided which "information" supported paragraph 21 of the superseding indictment.

27  Because this information is not within the control of Korn/Ferry, the Court quashes Nosal's

28  subpoena as to request 14.

1    **D.    Request 7**

2        Nosal seeks "[c]opies of any and all Korn/Ferry documents . . . etc., which support

3    [the fact that] Korn/Ferry derives independent economic value, actual or potential, from

4    Searcher, and the contents therein, from not being generally known to and not being readily

5    ascertainable through proper means by the public." Dkt. No. 275-1 at 11.  Korn/Ferry

6    asserts that it has already produced this information in response to Nosal's discovery

7    requests during the civil arbitration.  Dkt. No. 283 at 15.  As discussed above regarding

8    request 6, whether Searcher and its contents are valuable to Korn/Ferry goes directly to the

9    issue of whether it or its contents are a trade secret.  Discovery responsive to this request is

10   thus material to Nosal's defense and must be produced to the extent it has not been already.

11   **E.    Request 8**

12       Nosal seeks "[c]opies of all Korn/Ferry letters, e-mails, instructions, phone log [sic]

13   showing that Korn/Ferry contacted its former employees and required that they return to

14   Korn/Ferry any and all material (including source or custom reports) from Searcher." Dkt.

15   No. 275-1 at 13.  Korn/Ferry opposes this request because it "would effectively require

16   Korn/Ferry to examine all of its communications with anyone who ever worked for it," an

17   "extraordinary burden." Dkt. No. 283 at 15-16.  At the hearing, Korn/Ferry explained that

18   it could not craft search terms for this request because Korn/Ferry employees refer to

19   Searcher in nearly every correspondence with one another.  Korn/Ferry also argues that, in

20   the civil arbitration, it produced discovery related to its policies and practices regarding

21   maintaining the secrecy of Korn/Ferry information at the end of an employment

22   relationship.  *Id.* at 16.

23       Whether Korn/Ferry maintained the secrecy of the information Nosal is charged with

24   stealing is material to his defense.  Nevertheless, the Court finds this request so broad that it

25   would be overly oppressive to compel Korn/Ferry to respond.  Furthermore, to the extent

26   Korn/Ferry responded to Nosal's discovery request during arbitration, he may have already

27   information which will aid in the preparation of his defense.  It would be burdensome to

28

1  require Korn/Ferry to duplicate that effort on a broader scale.  Therefore, the Court quashes

2  request 8.

3  **F.    Request 12**

4        Nosal seeks "[c]opies of any and all Korn/Ferry correspondence, memoranda, or e-

5  mails from defendant David Nosal to Peter Dunn, Paul Reilly and Bob Damon during the

6  period he was an independent contractor to Korn/Ferry."  Dkt. No. 275-1 at 13.  Korn/Ferry

7  objects to this request stating it has already produced such materials to the government.

8  Dkt. No. 283 at 19.  The government asserts that it produced "over 400 pages of

9  correspondence," which "satisfy (at least in large part)" a number of Nosal's requests,

10  including request 12.  Dkt. No. 282 at 2-3; Dkt. No. 281 at 15.

11        To the extent that the correspondence has already been produced, the Court quashes

12  request 12 as moot.  To the extent that it has not, the Court quashes request 12 because

13  Nosal does not demonstrate why this correspondence is material to his defense.

14  **G.    Request 13**

15        Nosal seeks "[c]opies of any and all Korn/Ferry memoranda, correspondence, e-

16  mails, calculations, reports, data, audits either calculated by Korn/Ferry or anyone on behalf

17  of Korn/Ferry establishing the alleged loss sustained by Korn/Ferry, or the value of the as

18  [sic] a result of the allegations listed in Counts 1-11 of the June 26, 2008 Superseding

19  Indictment."  Dkt. No. 275-1 at 13.  Korn/Ferry argues this request should be directed to the

20  government, and that in any case, it already produced such documentation in the civil

21  arbitration.  Dkt. No. 283 19-20.  The government also asserts that these material shave

22  been produced.  Dkt. No. 281 at 16.  It asserts that counsel for "Korn/Ferry provided loss

23  estimates to Special Agent Sung-Ki Lim of the FBI in two separate emails.  These e-mails

24  were produced to defense counsel on or about May 8, 2008."  Dkt. No. 282 at 3.

25        The government's declaration in response to request 13 provides the most detailed

26  evidence in support of the materials having been produced already.  This is compelling.

27  And in the absence of any indication from Nosal otherwise—after all, he merely

28

resubmitted his 2010 subpoena and did not make any new arguments in support of requests 1-14—the Court determines that request 13 is moot.

**H.    Requests 15-25**

Because Nosal resubmitted his 2010 subpoena, he does not make any showing that requests 15-25 are material to his defense until his consolidated reply.  Dkt. No. 292.  Korn/Ferry and the government argue in their oppositions that this is sufficient grounds to quash these requests.  But, a Rule 17(c) subpoena may only be quashed if it is "unreasonable or oppressive."  *Nixon*, 418 U.S. at 689.  Therefore, the Court assesses the sufficiency of Nosal's response to see if the requests are material to his defense and whether it would be overly oppressive for Korn/Ferry to respond.

**1.    Requests 15, 16, 17, 18, 19, 21, and 22**

Nosal asserts that requests 15, 16, and 17, which ask for lists of employees who had access to Searcher between 2003 and 2005, employees who were asked to return Korn/Ferry materials upon termination, as well as communications to this effect, are "relevant to [his] defense to the trade secrete charges," because if Korn/Ferry "liberally allowed" access to the Searcher database and its contents, "it is unlikely that those materials can legally be trade secrets."  Dkt. No. 292 at 8.  Similarly, requests 18 and 19 seek documents about Korn/Ferry's internal investigation of Nosal's alleged co-conspirators.  Dkt. No. 275-3 at 5.  Nosal asserts that this information is material to his defense because it will show—he hopes—that the alleged trade secrets were not actually kept secret.  Dkt. No. 292 at 8.  Requests 21 and 22 seek information regarding the creation and distribution of the source lists in Searcher as well as Korn/Ferry's measures for safeguarding such content.  Dkt. No. 275-3 at 5.  Nosal asserts that these requests are material to his defense because they address the secrecy element of the charge.

Korn/Ferry argues that allowing employees to access trade secrets does not destroy trade secret status, and thus Nosal's request is unfounded.  Dkt. No. 294 at 5.  It further argues that allowing internal investigators to access trade secrets also does not waive their

1 protection under the law. *Id.* Regarding requests 21 and 22, Korn/Ferry asserts that it has

2 provided responsive discovery already to Nosal. *Id.* at 6.

3      Whether Nosal's defense has merit is not the standard he must meet. Rather, he must

4 show that the documents he seeks is material to his defense. Materiality hinges on whether

5 the evidence "has any tendency to make a fact more or less probable." Fed. R. Evid. 401.

6 The extent of the "secret" is material to determining whether it "afford[s] an actual or

7 potential economic advantage over others," which is integral to the government's charges.

8 Restatement (Third) of Unfair Competition § 39. Accordingly, Korn/Ferry must produce

9 the materials described in requests 15, 16, 17, 18, and 19. To the extent it has already

10 produced the materials responsive to requests 21 and 22, it need not reproduce them.

11      **2.**    **Requests 20 and 25**

12      Nosal seeks documentation of the value of the "'Custom Report' feature of Searcher"

13 and Searcher as a whole between 2003 and 2005. Dkt. No. 275-3 at 5. He seeks this

14 information to defend against the government's assertions that he stole trade secrets, which

15 by definition must have economic value. Dkt. No. 292 at 8.

16      Depending on how the government defines the trade secret it alleges Nosal stole—

17 either as the entirety of Searcher or as specific content within Searcher—both of Nosal's

18 requests may be material to his defense. Because the government contends that its "proof at

19 trial will relate to the question of whether *particular documents* found within Korn/Ferry's

20 computer system constitute trade secrets," dkt. no. 281 at 10, and because Korn/Ferry

21 describes its allegedly misappropriated trade secret as "specific compilations of

22 information," dkt. no. 294 at 4, discovery responsive to request 20 is material to Nosal's

23 defense and Korn/Ferry must produce the requested information. Based on the

24 government's definition of the alleged trade secret at issue, request 25 is not material.

25      **3.**    **Request 24**

26      Nosal states that request 24 is "conditionally relevant." Dkt. No. 292 at 8. The

27 government intends to make his relationship with co-conspirator Christian "a cornerstone of

28 its case," but Nosal has moved in limine to suppress evidence of the affair. *Id.* at 8-9. Until

1  Judge Chen has ruled that the government may introduce evidence of Nosal's and

2  Christian's romantic relationship, rebuttal evidence is not material to Nosal's defense. *See*

3  Fed. R. Evid. 401 ("Relevant evidence must be "of consequence in determining the

4  action."). This is particularly so here, where, by moving in limine to suppress evidence of

5  the affair, Nosal indicates that he does not intend to introduce affirmatively any evidence in

6  this genre. Accordingly, the Court quashes request 24.

7  **IV. CONCLUSION**

8       Because Nosal has shown that some of the information he requests is material to his

9  defense and would not be overly oppressive for Korn/Ferry to produce, the Court GRANTS

10 IN PART AND DENIES IN PART his motion for a Rule 17(c) subpoena.

11      IT IS SO ORDERED.

12     Date: March 1, 2013

13                              Nathanael M. Cousins
                                 United States Magistrate Judge

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28