# United States District Court

FOR THE
**NORTHERN DISTRICT OF CALIFORNIA**

VENUE: SAN FRANCISCO

FILED
2013 FEB 28 P 3:34
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

---

UNITED STATES OF AMERICA,

V.

CR 08-237 EMC

DAVID NOSAL

DEFENDANT(S).

---

# SECOND SUPERSEDING INDICTMENT

18 U.S.C. § 371;
18 U.S.C. §§ 1030 (a)(4) & 1030(c)(3)(A);
18 U.S.C. §§ 1832(a)(2) & 1832(a)(4);
18 U.S.C. §§ 1832(a)(3) & 1832(a)(4);
18 U.S.C. § 2

A true bill.

[signature] Foreman

Filed in open court this 28th day of

February, 2013

[signature] ROSE MAHER

Clerk 2-28-13

Maria Elena James
United States Chief Magistrate Judge

NO PROCESS Bail, $ ____________

AO 257 (Rev. 6/78)

# DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: ☐ COMPLAINT ☐ INFORMATION ☒ INDICTMENT ☒ SUPERSEDING

**OFFENSE CHARGED**

See Attachment

☐ Petty ☐ Minor ☐ Misdemeanor ☒ Felony

PENALTY: See Attachment

Name of District Court, and/or Judge/Magistrate Location

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

FILED 2013 FEB 28 P 3:35 RICHARD W. WIEKING CLERK, U.S. DISTRICT COURT NORTHERN DISTRICT OF CALIFORNIA

**DEFENDANT - U.S**

DAVID NOSAL

DISTRICT COURT NUMBER

CR 08-0237 EMC

**PROCEEDING**

Name of Complainant Agency, or Person (& Title, if any)

FBI

☐ person is awaiting trial in another Federal or State Court, give name of court

☐ this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40. Show District

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of: ☐ U.S. ATTORNEY ☐ DEFENSE } SHOW DOCKET NO.

☐ this prosecution relates to a pending case involving this same defendant

☐ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under } MAGISTRATE CASE NO.

Name and Office of Person Furnishing Information on this form: MELINDA HAAG

☒ U.S. Attorney ☐ Other U.S. Agency

Name of Assistant U.S. Attorney (if assigned): Kyle F. Waldinger

**DEFENDANT**

**IS *NOT* IN CUSTODY**

1) ☐ Has not been arrested, pending outcome this proceeding. If not detained give date any prior summons was served on above charges

2) ☐ Is a Fugitive

3) ☐ Is on Bail or Release from (show District)

**IS IN CUSTODY**

4) ☐ On this charge

5) ☐ On another conviction } ☐ Federal ☐ State

6) ☐ Awaiting trial on other charges

If answer to (6) is "Yes", show name of institution

Has detainer been filed? ☐ Yes ☐ No } If "Yes" give date filed

**DATE OF ARREST** Month/Day/Year

Or... if Arresting Agency & Warrant were not

**DATE TRANSFERRED TO U.S. CUSTODY** Month/Day/Year

☐ This report amends AO 257 previously submitted

**ADDITIONAL INFORMATION OR COMMENTS**

PROCESS:

☐ SUMMONS ☒ NO PROCESS* ☐ WARRANT

Bail Amount:

If Summons, complete following:

☐ Arraignment ☐ Initial Appearance

** Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment*

Defendant Address:

Date/Time: Before Judge:

Comments:

**Attachment to Penalty Sheet**
**United States v. David Nosal**
**CR 08-0237 EMC**
**Second Superseding Indictment**

**Offenses Charged**

| | |
|---|---|
| Count One: | 18 U.S.C. § 371 – Conspiracy to Misappropriate, Receive, Possess, and Transmit Trade Secrets, Gain Unauthorized Access to a Protected Computer, and Traffic in a Password Allowing Unauthorized Access to a Protected Computer |
| Counts Two through Four: | 18 U.S.C. §§ 1030(a)(4) & 1030(c)(3)(A) – Unauthorized Access to a Protected Computer with Intent to Defraud and Obtaining Something of Value |
| Count Five: | 18 U.S.C. §§ 1832(a)(2) & 1832(a)(4) – Unauthorized Downloading, Copying, and Duplicating of Trade Secrets and Attempt |
| Count Six: | 18 U.S.C. §§ 1832(a)(3) & 1832(a)(4) – Unauthorized Receipt and Possession of Stolen Trade Secrets and Attempt |

**Penalties**

| | |
|---|---|
| Count One: | 5 years' imprisonment, $250,000 fine or twice the gross gain or gross loss, 3 years of supervised release, $100 special assessment |
| Counts Two through Four: | 5 years' imprisonment, $250,000 fine or twice the gross gain or gross loss, 3 years of supervised release, $100 special assessment |
| Counts Five and Six: | 10 years' imprisonment, $250,000 fine or twice the gross gain or gross loss, 3 years of supervised release, $100 special assessment |

MELINDA HAAG (CABN 132612)
United States Attorney

FILED
2013 FEB 28 P 3:34

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

v.

DAVID NOSAL,

Defendant.

No. CR 08-0237 EMC

VIOLATIONS: 18 U.S.C. § 371 – Conspiracy to Misappropriate, Receive, Possess, and Transmit Trade Secrets, Gain Unauthorized Access to a Protected Computer, and Traffic in a Password Allowing Unauthorized Access to a Protected Computer; 18 U.S.C. §§ 1030(a)(4) & 1030(c)(3)(A) – Unauthorized Access to a Protected Computer with Intent to Defraud and Obtaining Something of Value; 18 U.S.C. §§ 1832(a)(2) & 1832(a)(4) – Unauthorized Downloading, Copying, and Duplicating of Trade Secrets and Attempt; 18 U.S.C. §§ 1832(a)(3) & 1832(a)(4) – Unauthorized Receipt and Possession of Stolen Trade Secrets and Attempt; 18 U.S.C. § 2 – Aiding and Abetting

SAN FRANCISCO VENUE

# SECOND SUPERSEDING INDICTMENT

The Grand Jury charges:

## BACKGROUND

At all times relevant to this Second Superseding Indictment:

### Korn/Ferry International

1. Korn/Ferry International ("Korn/Ferry") was an executive search firm headquartered in Los Angeles, California. Korn/Ferry also maintained a Silicon Valley office in

Redwood City, California, as well as a San Francisco office and other offices throughout the United States and the world. Korn/Ferry was one of the leading providers of executive recruitment services to businesses in the United States. As used herein, the terms "executive search" and "executive recruitment" refer to searches to fill executive, board-of-director, and similar high-level positions, as well as related and similar activities.

The Defendant

2. The defendant David Nosal was employed by Korn/Ferry in its Silicon Valley office and elsewhere from approximately April 1996 until approximately October 2004. During his tenure at Korn/Ferry, Nosal held a number of high-level positions, including Regional Managing Director and Office Managing Director. Nosal planned to start a competing executive search firm after terminating his employment with Korn/Ferry. However, under the terms of a Separation and General Release Agreement and an Independent Contractor Agreement (referred to collectively hereafter as the "Nosal-Korn/Ferry Agreements") into which Nosal voluntarily entered with Korn/Ferry, Nosal agreed to serve as an independent contractor to Korn/Ferry from November 1, 2004, through October 15, 2005. Among other promises, Nosal agreed to cooperate with Korn/Ferry on certain ongoing executive search assignments and agreed not to perform executive search, executive placement, management assessment, or management audit services on behalf of any other entity but Korn/Ferry during the period that the Nosal-Korn/Ferry Agreements were in effect. With respect to Korn/Ferry confidential materials and information, Nosal also agreed that he would not use or disclose any customer lists, business secrets, or any other information not generally known in the industry concerning the business or policies of Korn/Ferry. In exchange, Korn/Ferry was to pay Nosal $25,000 per month and was to pay Nosal lump-sum payments on or before July 31, 2005, and on or before October 15, 2005. Nosal was also eligible to receive referral payments for referring work to Korn/Ferry during the period that the Nosal-Korn/Ferry Agreements were in effect.

Other Individuals

3. Becky Christian was employed by Korn/Ferry in its Silicon Valley office and elsewhere from approximately September 1999 until approximately January 2005. After she left

Korn/Ferry, Christian set up an executive search firm known as Christian & Associates LLC. In truth, however, Christian worked with the defendant Nosal in setting up Nosal's executive search firm and either assisted, or was assisted by, Nosal in conducting executive searches. In general, Christian and Nosal agreed that she would retain 20% of the revenues from searches that she conducted with Nosal and that she would provide Nosal with the remaining 80%.

4. The individual identified herein as "J.F." was employed by Korn/Ferry from approximately December 1997 to approximately August 2005. J.F. served as the defendant Nosal's executive assistant prior to Nosal's departure from Korn/Ferry. After Nosal left Korn/Ferry, J.F. continued to be employed by Korn/Ferry but assisted Nosal in setting up Nosal's new executive search firm.

5. The individual identified herein as "M.J." was employed by Korn/Ferry from approximately January 2001 to approximately March 2005. After leaving Korn/Ferry, M.J. worked with the defendant Nosal in setting up Nosal's executive search firm and either assisted, or was assisted by, Nosal in conducting executive searches during approximately the spring and summer of 2005. Nosal asked M.J. to establish a company in M.J.'s name, so that this company — like Christian & Associates LLC — could be used as a vehicle for Nosal to continue to conduct executive search activities until the expiration of the Nosal-Korn/Ferry Agreements. Nosal proposed the same 80/20 split in revenues with M.J. that Nosal had adopted with Christian.

<u>The Searcher Database</u>

6. In performing their work, Korn/Ferry employees relied heavily on the "Searcher" database, a highly confidential and proprietary database of executives and companies. This database also contained information regarding search engagements that Korn/Ferry had conducted for clients in the past. Using the "Custom Report" feature of the Searcher database, Korn/Ferry employees quickly could sort through information in the database to create targeted reports on executives, companies, and prior search engagements for use in candidate development for clients and in client presentations.

7. The information contained in the Searcher database regarding executives,

companies, and Korn/Ferry's prior search engagements was the product of the efforts of hundreds of Korn/Ferry employees over many years. Korn/Ferry considered the Searcher database to be one of the most comprehensive databases of executive candidates in the world.

8. The information in the Searcher database regarding Korn/Ferry's prior search engagements included "source lists" (which were also referred to as "candidate lists"), generally described as lists of candidates that Korn/Ferry presented to client companies with respect to particular positions that those clients were trying to fill. Korn/Ferry considered these source lists to be extremely valuable when initiating subsequent searches for executives for similar positions.

The Confidentiality of Information in the Searcher Database and the Scope of Korn/Ferry's Authorization to its Employees to Use Its Computer System

9. Korn/Ferry undertook considerable measures to maintain the confidentiality of the information contained in the Searcher database. These measures included controlling electronic access to the Searcher database and controlling physical access to the computer servers that contained the database. Korn/Ferry employees received unique usernames and created passwords for use on the company's computer systems, including for use in accessing the Searcher database. These usernames and passwords were intended to be used by the Korn/Ferry employee only.

10. Korn/Ferry required all of its employees — including the defendant David Nosal — to enter into agreements that both explained the proprietary nature of the information disclosed or made available to Korn/Ferry employees (including the information contained in the Searcher database) and restricted the use and disclosure of all such information, except for legitimate Korn/Ferry business. Nosal executed such an agreement on or about April 26, 1996.

11. Among other additional measures, Korn/Ferry also declared the confidentiality of information in the Searcher database by placing the phrase "Korn/Ferry Proprietary and Confidential" on every Custom Report generated from the Searcher database. Whenever an individual used Searcher's Custom Report feature, the computer system displayed a notification stating that "This product is intended to be used by Korn/Ferry employees for work on Korn/Ferry business only." Further, when an individual logged into the Korn/Ferry computer

///

system, that computer system displayed the following notification, in sum and substance:

> This computer system and information it stores and processes are the property of Korn/Ferry. You need specific authority to access any Korn/Ferry system or information and to do so without the relevant authority can lead to disciplinary action or criminal prosecution. . . .

<u>COUNT ONE</u>: 18 U.S.C. § 371 — Conspiracy to Misappropriate, Receive, Possess, and Transmit Trade Secrets, Gain Unauthorized Access to a Protected Computer, and Traffic in a Password Allowing Unauthorized Access to a Protected Computer

12. The factual allegations in paragraphs 1 through 11 are re-alleged and incorporated herein as if set forth in full.

13. Beginning on a date unknown, and continuing to no later than August 2, 2005, in the Northern District of California, and elsewhere, the defendant,

DAVID NOSAL,

did knowingly and intentionally conspire and agree with other persons to commit the following offenses: misappropriation, receipt, possession, and transmission of trade secrets, in violation of 18 U.S.C. §§ 1832(a)(1), 1832(a)(2) and 1832(a)(3); unauthorized access to a protected computer, in violation of 18 U.S.C. § 1030(a)(4); and trafficking in a password allowing unauthorized access to a protected computer, in violation of 18 U.S.C. § 1030(a)(6)(A).

## MANNER AND MEANS OF THE CONSPIRACY

14. The defendant and co-conspirators knowingly, and with intent to defraud, obtained things of value from Korn/Ferry's computer system, including source lists and other information.

15. The defendant and co-conspirators stole, and without authorization knowingly took by fraud, artifice, and deception, trade secrets from Korn/Ferry's computer system, including source lists.

16. Individual co-conspirators and others obtained these trade secrets and other things of value from Korn/Ferry's computer system prior to termination of their employment with Korn/Ferry by using their own Korn/Ferry usernames and passwords, and did so without authorization and without permission.

17. After their separation from Korn/Ferry, the defendant and co-conspirators obtained these trade secrets and other things of value from Korn/Ferry's computer system by using, either directly or through J.F., J.F.'s Korn/Ferry username and password, and did so without authorization and without permission.

18. The defendant and co-conspirators obtained things of value from Korn/Ferry's computer system; misappropriated Korn/Ferry trade secrets; downloaded, copied, and duplicated Korn/Ferry trade secrets; received and possessed stolen Korn/Ferry trade secrets; and transmitted Korn/Ferry trade secrets to each other, all for the purpose of retaining clients and placing candidates as part of their non-Korn/Ferry executive search activities.

OVERT ACTS COMMITTED IN FURTHERANCE OF THE CONSPIRACY

19. In furtherance of the conspiracy and to effect the objects thereof, the following overt acts, among others, were committed in the Northern District of California, and elsewhere:

Chief Financial Officer Information from Korn/Ferry's Computer System

a. On or about April 11, 2005, Christian sent an e-mail to J.F. stating "It is to [sic] difficult to explain the searcher run I would need to log in as you." In response, J.F. provided Christian with her Korn/Ferry username and password. Thereafter, on or about April 12, 2005, Christian used J.F.'s Korn/Ferry username and password to gain access to Korn/Ferry's computer system. She then downloaded three Korn/Ferry source lists of chief financial officers ("CFOs") from that computer system. These source lists originated from prior search engagements in which Korn/Ferry had been retained to conduct searches for CFOs. Each source list was marked "Korn/Ferry Proprietary & Confidential." At the time, Christian did not have authorization from Korn/Ferry to access its computer system.

b. On or about April 12, 2005, Christian provided the defendant Nosal with the three Korn/Ferry source lists of CFOs that she had downloaded earlier that day by sending them to him in an e-mail. Nosal and Christian thereafter used some of the information in these source lists as part of an executive search for a CFO they were conducting.

c. On or about April 21, 2005, M.J. sent the defendant Nosal and Christian an e-mail with the subject line "CFO Names/Ideas," which e-mail contained a list of six CFOs with

associated contact information. In the e-mail, M.J. stated that the individuals listed were from "the [Company A] CFO search." This was a search engagement on which Nosal and M.J. had worked while at Korn/Ferry. Nosal later responded to M.J.'s e-mail, saying "thank you."

d. On or about April 25, 2005, Company B formally retained Christian & Associates LLC to conduct a search for a CFO. Both the defendant Nosal and Christian worked on and participated in this search.

e. On or about June 1, 2005, Christian sent an e-mail to two executives of Company B with the subject line "CFO Update." The defendant Nosal was copied on this e-mail. This e-mail stated, in part, "We wanted to give you an update as it relates to the CFO search," and then discussed several possible candidates for the CFO position at Company B, among them, three individuals who were listed on the source lists that Christian had sent to Nosal on or about April 12, 2005.

f. On or about July 12, 2005, using a computer at Nosal's new offices in San Francisco, an individual remotely logged into Korn/Ferry's computer network using J.F.'s Korn/Ferry username and password. Thereafter, among other activities, Christian downloaded a Korn/Ferry list containing information regarding approximately 65 executives and a source list from a prior Korn/Ferry search. During this log-in session, a query for information on at least one of the candidates for the Company B CFO position was also run. At the time, Christian did not have authorization from Korn/Ferry to access its computer system. In August 2005, Company B announced that it had hired this candidate as its CFO.

g. Christian also sent two other e-mails to the defendant Nosal on April 12, 2005, containing lists of CFOs in the medical industry in relation to a search that Nosal and Christian were performing for another company. Information in each of these e-mails was "cut and pasted" from a source list in Korn/Ferry's Searcher database.

Use of Position Specifications from Korn/Ferry's Computer System

h. On or about April 25, 2005, the defendant Nosal was retained by Company C to conduct a search for a person to fill a senior vice president of human resources position. In an e-mail dated April 25, 2005, the CEO of Company C informed Nosal that the CEO did not have a

job description for the subject position and asked Nosal to draft one. The e-mail stated:

> David, you are on for the HR search. I don't have a job description. You guys need to craft one and get me to approve........please make sure that the payment terms are the aggressive ones you quoted. thx.

i. On or about April 27, 2005, Christian requested that J.F. obtain examples of position specifications from Korn/Ferry's computer system. In response, J.F. e-mailed two such examples to Christian. Christian forwarded the e-mail from J.F. to Nosal and M.J., with the new subject line "[Company C] HR spec samples." Christian used one of those documents to draft a position specification related to a search Nosal and she were doing for Company C. On April 28, 2005, Christian sent the CEO of Company C a position specification that was in large part identical in sum and substance to a position specification that J.F. had earlier obtained from Korn/Ferry's computer system. This e-mail was signed "David & Becky," and Nosal was copied on this e-mail.

<u>Other Instances of Obtaining Information from Korn/Ferry's Computer System</u>

j. During approximately December 2004, immediately prior to her separation from Korn/Ferry in approximately January 2005, Christian created and downloaded Searcher Custom Reports containing over 3,000 records. Christian took copies of these reports with her when she terminated her employment with Korn/Ferry. The defendant Nosal asked Christian to take these items to populate his database for future executive searches.

k. On or about May 3, 2005, Christian sent an e-mail to the defendant Nosal and to M.J. with an attachment, indicating that the attachment related to a search that was being conducted for Company C. The attachment was a Searcher Custom Report spreadsheet containing approximately 19 executive names with contact information. The header of the spreadsheet contained the heading "Korn/Ferry International San Francisco." The defendant Nosal responded in an e-mail the same day, saying "thanks."

l. On or about May 26, 2005, M.J. sent two e-mails to J.F. containing the names of a total of approximately 17 individuals regarding whom J.F. was to obtain information from the Searcher database. M.J. obtained some of these names from Nosal. In the second e-mail, M.J.

also requested information regarding a prior Korn/Ferry search engagement. In response to M.J.'s e-mails, J.F. obtained each individual's information from the Searcher database and obtained the information in that database regarding the prior Korn/Ferry search engagement identified by M.J. J.F. then copied all of the files containing the requested information onto a CD. J.F. later provided this CD to M.J. The defendant Nosal used some or all of the information obtained from the Searcher database in a "pitch" meeting with representatives from Company D in which Nosal was attempting to be retained by that company to conduct an executive search and related activities.

m. On or about June 3, 2005, J.F. performed a Searcher query for human resource managers working for various companies. In response to J.F.'s query, the Searcher database generated a Custom Report yielding approximately 366 executives with their pertinent information. J.F. then exported the Custom Report to a Microsoft Excel spreadsheet titled "Choc Chip Cookie Recipes," and saved the file to her computer Desktop folder. J.F. then copied the "Choc Chip Cookie Recipes" file onto a CD titled "ChocChip Cookies." J.F. later provided this CD to M.J. for use in the Company C search.

n. On or about July 29, 2005, using M.J.'s computer located in Nosal's new offices in San Francisco, J.F. remotely logged into Korn/Ferry's computer network with her Korn/Ferry username and password. Once logged in, J.F. returned control of the computer to M.J. M.J. then proceeded to query Korn/Ferry's Searcher database and download information, including 25 Korn/Ferry source lists, from that database onto the computer. At the time, M.J. did not have authorization from Korn/Ferry to access its computer system.

All in violation of Title 18, United States Code, Section 371.

///

///

///

///

///

///

COUNTS TWO THROUGH FOUR: 18 U.S.C. §§ 1030(a)(4), 1030(c)(3)(A) & 2 — Unauthorized Access to a Protected Computer with Intent to Defraud and Obtaining Something of Value and Aiding and Abetting

20. The factual allegations in paragraphs 1 through 11 and 13 through 19 are re-alleged and incorporated herein as if set forth in full.

21. On or about the dates set forth in the separate counts below, in the Northern District of California, and elsewhere, the defendant,

DAVID NOSAL,

did knowingly and with intent to defraud access a protected computer belonging to Korn/Ferry, without authorization, and by means of such conduct did further the intended fraud and obtain something of value, to wit, source lists and other information belonging to Korn/Ferry:

| COUNT | DATE | ITEMS OBTAINED | ACCOUNT USED TO GAIN ACCESS |
|---|---|---|---|
| Two | April 12, 2005 | Three Korn/Ferry source lists relating to prior searches for CFOs | Korn/Ferry computer user account of J.F. |
| Three | July 12, 2005 | Information regarding at least one individual who was a candidate for Company B CFO position, a list containing the names and known contact information of approximately 65 executives, and a Korn/Ferry source list relating to a prior search | Korn/Ferry computer user account of J.F. |
| Four | July 29, 2005 | 25 Korn/Ferry source lists relating to prior searches | Korn/Ferry computer user account of J.F. |

All in violation of Title 18, United States Code, Sections 1030(a)(4), 1030(c)(3)(A) and 2.

///

///

///

///

///

///

COUNT FIVE: 18 U.S.C. §§ 1832(a)(2), 1832(a)(4) & 2 — Unauthorized Downloading, Copying, and Duplicating of Trade Secrets and Aiding and Abetting and Attempt

22. The factual allegations in paragraphs 1 through 11, paragraphs 13 through 19, and paragraph 21 are re-alleged and incorporated herein as if set forth in full.

23. On or about April 12, 2005, in the Northern District of California, and elsewhere, the defendant,

DAVID NOSAL,

with the intent to convert trade secrets belonging to Korn/Ferry, specifically, three Korn/Ferry source lists relating to prior searches for CFOs, as referred to in paragraphs 19.a and 19.b, to the economic benefit of someone other than Korn/Ferry, which trade secrets were related to and included in products that were produced for and placed in interstate and foreign commerce, did knowingly and without authorization download, copy, and duplicate such information from Korn/Ferry's computer system, and did attempt to do so, intending and knowing that such acts would injure Korn/Ferry.

All in violation of Title 18, United States Code, Sections 1832(a)(2), 1832(a)(4), and 2.

///

///

///

///

///

///

///

///

///

///

///

///

///

COUNT SIX: 18 U.S.C. §§ 1832(a)(3), 1832(a)(4) & 2 — Unauthorized Receipt and Possession of Stolen Trade Secrets and Aiding and Abetting and Attempt

24. The factual allegations in paragraphs 1 through 11, paragraphs 13 through 19, and paragraph 21 are re-alleged and incorporated herein as if set forth in full.

25. On or about April 12, 2005, in the Northern District of California, and elsewhere, the defendant,

DAVID NOSAL,

with the intent to convert trade secrets belonging to Korn/Ferry, specifically, three Korn/Ferry source lists relating to prior searches for CFOs and information regarding CFOs that was "cut and pasted" from a source list in Searcher, as referred to in paragraphs 19.a, 19.b, and 19.g, to the economic benefit of someone other than Korn/Ferry, which trade secrets were related to and included in products that were produced for and placed in interstate and foreign commerce, did knowingly receive and possess such information, and did attempt to do so, knowing the same to have been stolen and appropriated, obtained, and converted without authorization, intending and knowing that such acts would injure Korn/Ferry.

All in violation of Title 18, United States Code, Sections 1832(a)(3), 1832(a)(4), and 2.

DATED: February 28, 2013

A TRUE BILL.

FOREPERSON

MELINDA HAAG
United States Attorney

J. Douglas Wilson for
MIRANDA KANE
Chief, Criminal Division

(Approved as to form: Waldinger )
AUSA WALDINGER