STEVEN F. GRUEL (CSBN 213148)
Attorney at Law
315 Montgomery Street, 9th Floor
San Francisco, CA 94104
Telephone Number: (415) 989-1253
Fax Number: (415) 449-3622
attystevengruel@sbcglobal.net

DENNIS P. RIORDAN (SBN 69320)
DONALD M. HORGAN (SBN 121547)
RIORDAN & HORGAN
523 Octavia Street
San Francisco, CA 94102
Telephone Number: (415) 431-3472
Fax Number: (415) 552-2703
dennis@riordan-horgan.com
Attorneys for David Nosal

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) No. CR-08-0237-EMC |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) Date: January 8, 2014 |
| DAVID NOSAL, et al., | ) Time: 3:00 p.m. |
| | ) Courtroom: Hon. Edward M. Chen |
| Defendants. | ) |
| _____ | ) |

**DEFENDANT NOSAL'S MEMORANDUM ON
RESTITUTION AND REQUEST FOR EVIDENTIARY HEARING**

# TABLE OF CONTENTS

I.  THE GOVERNMENT HAS NOT CARRIED ITS BURDEN OF
    DEMONSTRATING THAT KORN-FERRY IS ENTITLED TO
    RESTITUTION UNDER THE MVRA..................................................1

    A.   Introduction. ...........................................................................1

    B.   Restitution and Guidelines Loss. ...........................................3

    C.   The MVRA: Text, History, and Case Law. ............................4

         1.   Text and History of § 3663A(b)(4)...............................4

         2.   Case Law. .....................................................................5

    D.   The Government's Failure to Carry its Burden for Claimed Expenses ...........7

         1.   Internal Investigative Expenses...................................7

         2.   Imputed Income of Korn-Ferry Employees.....................8

         3.   Attorneys' Fees Generally. .........................................9

         4.   Attorneys' Fees – Actual Payment vs. "Rack Rates".................11

         5.   Attorneys' Fees – Sitting Through Trial. .........................11

         6.   Attorneys' Fees – Responding to Subpoenas.......................12

         7.   Attorneys' Fees – Assistance vs. Participation. ....................12

         8.   Attorneys' Fees – Vague and Unnecessary Bills....................13

         9.  Attorneys' Fees – Other Particular Examples.........................13

    E.   Difficulty in Calculating Actual Loss. ..................................15

    F.   Evidentiary Hearing...............................................................15

    G.   Conclusion..............................................................................16

# TABLE OF AUTHORITIES

## CASES

*Alyeska Pipeline Service Company v. Wilderness Society,*
421 U.S. 240 (1975). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*United States v. Amato,*
540 F.3d 153 (2d Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. Andrews,*
600 F.3d 1167 (9th Cir.2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*United States v. Arvanitis,*
902 F.2d 489 (7th Cir.1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

*United States v. Barany,*
884 F.2d 1255 (9th Cir. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 12, 13

*United States v. Batista,*
575 F.3d 226 (2d Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. Boccagna,*
450 F.3d 107 (2d Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*United States v. Cliatt,*
338 F.3d 1089 (9th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*United States v. Cummings,*
281 F.3d 1046 (9th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*United States v. De La Fuente,*
353 F.3d 766 (9th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*United States v. Gamma Tech Industries, Inc.,*
265 F.3d 917 (9th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 8

*United States v. Gordon,*
393 F.3d 1044 (9th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 10

*United States v. Havens,*
424 F.3d 535 (7th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 12

*United States v. Hayward,*
359 F.3d 631 (3d Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*United States v. Mitchell,*
876 F.2d 1178 (5th Cir.1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. Mullins,*
971 F.2d 1138 (4th Cir.1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. Papagno,*
639 F.3d 1093 (D.C. Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*United States v. Patty,*
992 F.2d 1045 (10th Cir.1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

*United States v. Peterson,*
538 F.3d 1064 (9th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3, 6

*United States v. Phillips,*
367 F.3d 846 (9th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

*United States v. Rizk,*
660 F.3d 1125 (9th Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

*United States v. Shepard,*
269 F.3d 884 (7th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

*United States v. Stoddard,*
150 F.3d 1140 (9th Cir. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2, 3

*United States v. Tsosie,*
639 F.3d 1213 (9th Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7, 11, 16

*United States v. Waknine,*
543 F.3d 546 (9th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

*United States v. Yeung,*
672 F.3d 594 (9th Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

*Virgin Islands v. Davis,*
43 F.3d 41 (3d Cir.1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

*Wachovia Bank v. Schmidt,*
546 U.S. 303 (2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

## STATUTES

18 U.S.C. § 2259.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

18 U.S.C. § 3663.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1, 2

18 U.S.C. § 3663A. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

18 U.S.C. § 3663A(b)(4). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4, 8

18 U.S.C. § 3663A(c)(3)(B). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1, 15

18 U.S.C. § 3664(e). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

-iii-

1    The MVRA states explicitly that no restitution should be ordered where restitution

2    involves complex questions of fact, and where the need to award restitution is outweighed by the

3    burden on the sentencing process.  18 U.S.C. § 3663A(c)(3)(B).  For reasons detailed below,

4    awarding restitution in this case would require resolving several extraordinarily complicated

5    factual questions after a full evidentiary hearing.  Moreover, because KFI can be compensated for

6    any losses through its pending civil lawsuit, there is no need to award restitution in these criminal

7    proceedings.

8    But even if determining an amount of restitution at an evidentiary hearing would not

9    overly burden the sentencing process here, the restitution sought for KFI cannot be ordered

10   because, as discussed below the government has failed to carry its burden under the MVRA.

11   **I.    THE GOVERNMENT HAS NOT CARRIED ITS BURDEN OF
       DEMONSTRATING THAT KORN-FERRY IS ENTITLED TO RESTITUTION**

12   **UNDER THE MVRA**

13        **A.    Introduction**

14   The government argues that Korn-Ferry is entitled to nearly $1.4 million of restitution

15   under the MVRA, 18 U.S.C. § 3663A.  The government's argument fails for a variety of reasons.

16   As an initial matter, the Ninth Circuit has held under the parallel restitution statute, the VWPA,

17   18 U.S.C. § 3663, that restitution cannot exceed the Guidelines loss calculation.  The Ninth

18   Circuit has also held that the VWPA and the MVRA should be interpreted consistently.

19   Therefore, the government cannot obtain restitution greater than the Guidelines loss calculation.

20   But even setting the Guidelines limitation to one side, the government's proposed

21   restitution is not allowed under the MVRA.  Most of the government's $1.4 million figure comes

22   from attorneys' fees charged by O'Melveny & Myers.  The provision under which the

23   government seeks restitution was intended to apply primarily to individual victims, and it does

24   not mention attorneys' fees.  Even if attorneys' fees are sometimes recoverable under the MVRA,

25   that is only true in narrow circumstances not present here.  The government appears, by contrast,

26   to take the extraordinary position that any attorneys' fees—even those that are only tangentially

27   related to offense conduct—are mandatorily recoverable.  That position is flatly contradicted by

28   both the text of the statute and the case law interpreting that text.

1    There are several limiting principles that apply to the MVRA.  First, the MVRA does not

2    cover all expenses that "assist" the government in its prosecution; rather, it only covers

3    "participation."  Second, the MVRA only covers expenses that are "necessary."  Third, the

4    MVRA only covers expenses that are directly caused by the offense and that are a foreseeable

5    result of the offense.  Fourth, the MVRA only covers expenses that are "reasonable."  It does not

6    cover expenses that are remote, factually or temporally, from the offense itself.

7    Application of these principles mandates rejecting nearly all of the government's

8    requested award.  To take but one simple example: The government requests thousands of dollars

9    that the law firm billed during the *government's* Ninth Circuit interlocutory appeal in this case.

10   O'Melveny billed Korn-Ferry thousands of dollars for reviewing the government's and Nosal's

11   briefs on appeal, reviewing and analyzing the appellate docket during the appeal (whatever that

12   means), discussing oral argument with prosecutors, and reviewing and analyzing the Ninth

13   Circuit's initial opinion.  (*See* Robertson Dec., Exhs. 51-57.)  Then, when the Ninth Circuit took

14   the case en banc, more bills—reviewing amicus briefs, discussing oral argument, reviewing the

15   decision, reading newspaper articles about the decision, discussing the decision with prosecutors.

16   (*See id*., Exhs. 58-65.)  For example, on 12/5/11, one Jl Kohn of O'Melveny billed $198.00 for

17   spending .2 of an hour reviewing the Ninth Circuit amicus briefs—an hourly rate of

18   $990.00—while on 12/16/11, Kohn billed $99.00 to take .1 hour to review a report of the Ninth

19   Circuit oral argument, in which Nosal prevailed.

20   Thus O'Melveny and the government propose that Mr. Nosal pay KFI for the many hours

21   O'Melveny spent following legal proceedings during which, after Mr. Nosal obtained a district

22   court order that he was wrongly charged with five CFAA violations, the government brought a

23   losing interlocutory appeal challenging that order.   These attorneys' fees are plainly not covered

24   by the MVRA.  They were not a *direct* result of the offense.  They were not a *foreseeable* result

25   of the offense—Nosal could not have foreseen that his conduct in 2005 would have resulted in a

26   9th Circuit interlocutory appeal, which would go en banc, and that O'Melveny would have

27   conference calls discussing the oral argument.  They were not *necessary*—there has been no

28   showing that Korn-Ferry "needed" O'Melveny to "analyze the appellate docket" during the

2

appeal.  They did not constitute *participation* in the prosecution.  And finally, those costs were not *reasonable*.  In fact, it borders on the absurd to demand Nosal to pay KFI $315 for O'Melveny's "reviewing articles" discussing the Ninth Circuit's opinion sustaining Nosal's position.  (*See* Robertson Dec., Exhs. 64.)

Congress passed the MVRA to make victims whole, and it passed the particular provision at issue here to protect women who were victims of violent sex offenses.  It did not intend to give corporations a blank check to hire wealthy law firms to churn billable hours.

### B.    Restitution and Guidelines Loss

A restitution award may not exceed a Guidelines loss calculation.  The government concedes that in *United States v. Stoddard*, 150 F.3d 1140 (9th Cir. 1988), the Ninth Circuit held "that restitution awarded under VWPA may not exceed Guidelines loss amount."  (*See* Govt. Supp. Sentencing Memo. at 20.)  The government oddly suggests, however, that this Court should ignore *Stoddard* because that case "interpret[ed] the VWPA, rather than the restitution statute at issue here, the MVRA."  (*Id*.)

But the Ninth Circuit has explicitly held that "the VWPA and the MVRA 'are identical in all important respects, and courts interpreting the MVRA may look to and rely on cases interpreting the VWPA as precedent.'"  *United States v. Peterson*, 538 F.3d 1064, 1075 n.6 (9th Cir. 2008) (internal quotation marks omitted).  The government has not offered any argument why the rule of *Stoddard* should not also be applied to the MVRA.  The two statutes are identical in relevant respects, and because they are closely related statutes, they must be read *in pari materia*.  *See Wachovia Bank v. Schmidt*, 546 U.S. 303, 316 (2006) ("[U]nder the *in pari materia* canon of statutory construction, statutes addressing the same subject matter generally should be read as if they were one law.").[1]

---

[1]    Moreover, under either the MVRA or the VWPA, it is plain error to award victims an amount of restitution that exceeds their actual losses. *United States v. Yeung*, 672 F.3d 594, 602 (9th Cir. 2012) (citing *United States v. Rizk*, 660 F.3d 1125, 1137 (9th Cir. 2011)).  A victim may not receive a "windfall, *i.e.*, more in restitution than he actually lost" as a result of the offense. *United States v. Boccagna*, 450 F.3d 107, 117 (2d Cir. 2006)).

1    Thus, the rule of *Stoddard* applies to the MVRA as well as to the VWPA.  Restitution

2    cannot be ordered in excess of the Guidelines loss amount.

3    **C.      The MVRA: Text, History, and Case Law**

4    Even aside from the *Stoddard* cap, the government's proposed restitution amount is not

5    recoverable under the MVRA.  The text and history of the MVRA make clear that the provision

6    under which the government is seeking recovery was not intended to cover attorneys' fees for

7    corporate victims.  Moreover, case law has further defined and limited what amounts are

8    recoverable.

9    ***1.      Text and History of § 3663A(b)(4).***

10    The government maintains that Korn-Ferry is entitled to restitution under 18 U.S.C. §

11    3663A(b)(4).  (*See* Govt. Supp. Sentencing Memo. at 18.)  That provision requires a defendant

12    to:

13    > reimburse the victim for lost income and necessary child care,
> transportation, and other expenses incurred during participation in
14    > the investigation or prosecution of the offense or attendance at
> proceedings related to the offense.

15    The references to child care and transportation, for example, suggest that Congress intended this

16    provision to apply primarily to individual victims, not corporate victims.

17    The legislative history sheds additional light on the meaning of (b)(4).  This language was

18    initially drafted and enacted as Section 40504 of the Violence Against Women Act (VAWA).

19    *See* Pub. Law 103-322 § 40504.[2]  Other related sections included provisions for pretrial detention

20    of sex offenders (40501), increased penalties for sex offenses (40502), reimbursement for testing

21    and treatment of STDs (40503), and increased funding for studies of sexual violence (40506-06).

22    *See* H.R. Conf Report 103-711 at 387.  As part of the overall law aimed at combating violence

23    against women, Congress also enacted the restitution provision of § 40504, which created

24    subdivision (b)(4) in the restitution statute.  The provision originated in the Senate, and the

25    Senate Report explained the reason for its addition:

26

27    [2]      In 1994, the language of (b)(4) was added to the parallel restitution statute, the VWPA.  The
28    same language was then copied verbatim into the MVRA when Congress enacted that statute two years
later.

Extension and strengthening of restitution: This section amends Orders of Restitution, title 18, section 3663. It adds sexual abuse as well as sexual exploitation and other abuse of children to cases in which judges may order restitution. In addition, this section permits judges to reimburse the victim for lost income, necessary child care, transportation, and other expenses related to *her* participation in the investigation or prosecution of the offense.

S. Rep. 103-138 at 65 (emphasis added).

The provision did not include restitution for attorneys' fees. That is true even though Congress explicitly allowed for attorneys' fees in other provisions enacted in the very same bill. VAWA created a new law allowing women to seek attorneys' fees in certain civil actions. *See* S. Rep. 103-138 at 65. And VAWA also created an entirely new restitution statute, 18 U.S.C. § 2259, which explicitly mandated including attorneys' fees in restitution awards for certain sexual and molestation offenses.

The legislative history thus supports two inferences about the meaning of (b)(4). First, it was intended to apply primarily to individual victims, not corporate victims. Second, it was not intended to cover attorneys' fees. When Congress wants to include attorneys' fees, it does so explicitly, as it did when it enacted 18 U.S.C. § 2259.

### *2.* *Case Law*

Cases interpreting the MVRA generally and subdivision (b)(4) in particular have also held that several other salient limitations govern restitution awards.

*First*, as the D.C. Circuit has recently held, that provision does not cover all expenses that a corporate victim incurs while assisting the government's prosecution efforts. Rather, by its plain meaning, the statute only covers required *participation* expenses.

The central question here concerns the statutory term "participation." The Government argues that "participation in the investigation or prosecution of the offense" means anything that significantly *assists* the criminal investigation or prosecution. . . . We disagree with the Government's effort to equate the terms "assistance" and "participation." In common parlance, the two terms are not equivalent.

*United States v. Papagno*, 639 F.3d 1093, 1098 (D.C. Cir. 2011). As a result, the D.C. Circuit held that internal investigations, particularly "an internal investigation that *preceded* the criminal investigation," are not covered by the MVRA. *Id*. at 1099. The court noted that Congress had

5

1   explicitly acted to cover internal investigations for identity theft crimes, but not for crimes of

2   fraud.  *Id*.  It thus concluded that subdivision (b)(4) only covers costs when a victim is actively

3   "taking part" in a prosecution.  *Id*. at 1098.

4          Second, by its plain terms, subdivision (b)(4) only covers "necessary" expenses.  *See*

5   *Papagno*, 639 F.3d at 1100 ("The statute here authorizes restitution only for 'necessary' costs.");

6   *see also United States v. De La Fuente*, 353 F.3d 766, 773 (9th Cir. 2003) (allowing restitution

7   where costs were a necessary and foreseeable result of [the defendant's] offense conduct");

8   *United States v. Cliatt*, 338 F.3d 1089, 1091 (9th Cir. 2003) (stating that the statute covers

9   "necessary" costs resulting from the offense).

10         Third, the MVRA only covers expenses that are directly and foreseeably caused by the

11  offense conduct.  The costs must be "incurred as a 'direct and foreseeable result' of the

12  defendant's wrongful conduct."  *United States v. Phillips*, 367 F.3d 846, 863 (9th Cir. 2004)

13  (quoting *United States v. Cummings*, 281 F.3d 1046, 1052 (9th Cir. 2002)); *see also United*

14  *States v. Gordon*, 393 F.3d 1044, 1057 (9th Cir. 2004) (stating that attorneys' fees "may be

15  recoverable" if they are "a 'direct and foreseeable result' of the defendant's wrongful conduct").

16  The causal chain cannot be attenuated.  "It is clear from our cases that the phrase "directly

17  resulting" means that the conduct underlying the offense of conviction must have caused a loss

18  for which a court may order restitution, but the loss cannot be too far removed from that

19  conduct."  *United States v. Gamma Tech Industries, Inc*., 265 F.3d 917, 928 (9th Cir. 2001).  As

20  the D.C. Circuit succinctly put it, the MVRA "is not a consequential damages statute."  *Papagno*,

21  639 F.3d at 1100.

22         Fourth and finally, expenses must be reasonable.  "The causal chain may not extend so

23  far, in terms of the facts or the time span, as to become unreasonable."  *United States v. Peterson*,

24  538 F.3d 1064, 1075 (quoting *Gamma Tech Indus*., 265 F.3d at 928); *see also Gordon*, 393 F.3d

25  at 1057 (stating that the MVRA covers "reasonable costs") (quoting *United States v. Hayward*,

26  359 F.3d 631, 642 (3d Cir. 2004)).

27                                      //

28                                      //

                                        6

**D.     The Government's Failure to Carry its Burden for Claimed Expenses**

It is unquestionably the government's burden to prove the amount of restitution.  18

U.S.C. § 3664(e); *United States v. Waknine*, 543 F.3d 546, 556 (9th Cir. 2008).  It is the

government's burden to prove the amount of actual loss suffered by the victim, and the court

cannot use the same "estimation" that can be used when calculating loss under the Sentencing

Guidelines.  *United States v. Tsosie*, 639 F.3d 1213, 1221 (9th Cir. 2011); *Yeung*, 672 F.3d at

604.  When an amount of restitution is challenged, "a restitution order must be supported by

evidence in the record showing that it is more likely than not that the defendant's offense

proximately caused the losses for which restitution was awarded and that it did so in the amounts

awarded."  *Tsosie*, 639 F.3d at 1222.

The government in this case has made no real effort to carry its burden.  It has made no

argument to show that the particular expenses claimed actually fit within subdivision (b)(4) or

comport with the case law.  That the government proffered as reimbursable expenses some of the

items discussed below can only be explained by the government's failure to actually review the

massive O'Melveny bills to determine which are properly reimbursed.  In essence, all the

government has done is claimed that Korn-Ferry is entitled to restitution, and then forwarded on

the legal bills submitted by O'Melveny.  That is insufficient under the statute and the case law.

*See United States v. Andrews*, 600 F.3d 1167, 1172 (9th Cir.2010) (holding that a district court

erred by relying solely on evidence submitted by the victim).

It is not the defendant's burden to disprove restitution amounts.  Nonetheless, by way of

example, Mr. Nosal will show that many of the claimed expenses are not allowable.

*1.     Internal Investigation Expenses*

The government claims that Korn-Ferry is entitled to over $157,000 for expenses incurred

as part of its own internal investigation during the spring and summer of 2005, prior to the

initiation of the government's investigation and prosecution.  (*See* Govt. Supp. Sentencing

Memo. at 18.)  But subdivision (b)(4) covers costs related to a victim's participation in the

*government's* investigation and prosecution.  It does not cover a victim's own investigation (in

part because the provision was not enacted to protect corporate victims at all).  As the D.C.

1    Circuit held in *Papagno*, costs of "an internal investigation that *preceded* the criminal

2    investigation" are not covered by the MVRA.  639 F.3d at 1099.

3                    **2.    *Imputed Income of Korn-Ferry Employees***

4          The government seeks over $286,000 based on work conducted by Korn-Ferry

5    employees.  Once again, the government has failed to establish that these costs can be included

6    under the MVRA.

7          First, some of the costs are based on hours spent pursuant to Korn-Ferry's own internal

8    investigation.  (*See, e.g.*, Briski Declaration at ¶¶ 4-9; Dunn Declaration at ¶¶ 3-4.)  For reasons

9    given above, such costs cannot be included.  Second, neither the Korn-Ferry declarations nor the

10   government's submission makes any effort to separate out what work done by Korn-Ferry

11   employees was aimed primarily at pursuing civil liability as opposed to "participating" in the

12   criminal prosecution. Furthermore, to the extent that KFI was participating in the criminal

13   prosecution, some of that time was necessarily directed at the nine mail fraud counts and five

14   CFAA counts which were dismissed prior to trial.  Because "the phrase 'directly resulting' [in

15   MVRA] means that the conduct underlying the offense of conviction must have caused a loss,"

16   restitution cannot be ordered for any expenditures by KFI related to the dismissed counts.

17   *Gamma Tech Industries,* 265 F.3d 917 at 928.  Third, the declarations vaguely assert that many

18   hours were spent "assisting the government."  (*See, e.g.*, Dunn Declaration at ¶ 22.)  But case law

19   interpreting the MVRA has clearly held that not every act of "assistance" is covered by

20   subdivision (b)(4).  *See Papagno*, 639 F.3d at 1098.  Moreover, the submitted declarations are

21   too vague to make any determination whether the hours spent were necessary, foreseeable, or

22   reasonable.

23         Fourth, the government has cited no authority for the proposition that a corporate victim

24   is entitled to recovery of *imputed lost corporate income* based on the (stated) hourly rates of

25   employees who worked on the Nosal matter.  The MVRA allows reimbursement for "lost

26   income."  § 3663A(b)(4).  As described above, the primary purpose of this provision was to

27   provide *individuals* reimbursement for lost income during necessary participation in trial

28   proceedings.  Applying that provision here, in the way suggested by the government, makes no

sense.  All the government has provided is an estimate of hours worked on this general matter by Korn-Ferry employees and an estimate of the usual hourly rate for each employee.  But the government has not shown that Korn-Ferry suffered any *actual* "lost income" because of the work of these employees. There is no evidence in the record, for example, that Korn-Ferry lost any business because its employees were too busy dealing with this case.  Nor is there any evidence that these high level salaried employees—general counsel Peter Dunn, Caroline Nahas, and Marlene Briski--would have been paid less if the conduct underlying the counts of conviction had never occurred.

Finally, as with its loss calculations, the government and KFI grossly overstate the hourly costs of the three employees in question by including therein their bonuses, equity grants, and benefits. (Declaration of Marat Fookson, at p.2, ls. 14-23). It is absurd to claim that the offenses at issue here directly caused KFI to pay these employee grants bonuses, equity grants, and benefits.

Nothing in the MVRA suggests that a corporation is entitled to reimbursement for hypothetical imputed income in the absence of proof of actual lost income.  For that reason and others, reimbursement cannot be granted for the imputed value of employees' time.

### 3.  *Attorneys' Fees Generally*

Subdivision (b)(4) does not mention attorneys' fees, and as described above, the legislative history suggests it was not meant to cover attorneys' fees.  Moreover, as courts have held, restitution under the MVRA "is limited to the property subject to the offense and therefore excludes consequential losses such as attorneys' fees." *United States v. Shepard*, 269 F.3d 884, 887 (7th Cir. 2001) (citing *United States v. Arvanitis*, 902 F.2d 489, 497 (7th Cir.1990)).  Put differently, absent explicit language to the contrary, restitution statutes should not be interpreted to abrogate the "American rule" that each party pays its own attorneys fees. *United States v. Havens*, 424 F.3d 535, 538 (7th Cir. 2005); *see Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 247 (1975) ("In the United States, the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser.").

9

1    Mr. Nosal himself, after all, has likewise spent a large amount of money already on his

2    own attorneys' fees.  For example, Mr. Nosal was required to spend tens of thousands of dollars

3    on attorneys' fees as a result of the government's decision to charge mail fraud and CFAA

4    offenses that were eventually ruled illegal and impermissible by the district court in two separate

5    rulings.  Mr. Nosal was required to spend over a hundred thousand dollars as appellee as the

6    result of the government's decision to pursue a discretionary interlocutory appeal, which required

7    briefing and argument both before a three judge and en banc panel. Mr. Nosal prevailed, and yet

8    he is of course not entitled to recovery of his attorneys' fees from the government, because that is

9    the American rule.  The MVRA does not alter that rule.

10    The Ninth Circuit therefore has held that attorneys' fees are generally too remote to be

11    included in a restitution order.  *See United States v. Barany*, 884 F.2d 1255, 1261 (9th Cir. 1989)

12    ("[T]he amount of resources Hartford chose to expend in defending the civil suit is only

13    tangentially related to the defendant's original offenses. We conclude that Hartford's attorney's

14    fees . . . are 'too remote' from Barany's criminal conduct to serve as a basis for restitution under

15    either statute.").[3]  The Ninth Circuit has allowed attorneys' fees as part of restitution awards in

16    certain limited situations.  *See Gordon*, 393 F.3d at 1056-57.  But even in those cases, the Ninth

17    Circuit has always clarified that attorneys' fees are only recoverable "if they are "a 'direct and

18    foreseeable result' of the defendant's wrongful conduct."  *Id*. at 1057.

19    The government has sought over a million dollars of attorneys' fees, but it has made

20

---

21    [3]    Other circuits have held that restitution under the VWPA does not include consequential
22    damages, such as attorney fees and expenses. *See Virgin Islands v. Davis,* 43 F.3d 41, 46-47 (3d
       Cir.1994); *United States v. Patty,* 992 F.2d 1045, 1049 (10th Cir.1993); *United States v. Mullins,*
23    971 F.2d 1138, 1147 (4th Cir.1992); *United States v. Arvanitis,* 902 F.2d 489, 497 (7th
       Cir.1990); *United States v. Mitchell,* 876 F.2d 1178, 1184 (5th Cir.1989)

24
25    In support of its request for massive amounts of attorneys' fees, the government relies
       heavily on Second Circuit cases such as *United States v. Amato*, 540 F.3d 153, 159-62 (2d Cir.
26    2008).  But those cases are inapplicable because the Second Circuit has parted from other
       circuits, and it has explicitly rejected Ninth Circuit case law that all expenses must be directly
27    and foreseeably caused by the offense.  *See Amato*, 540 F.3d at 162; *see also United States v.
       Batista*, 575 F.3d 226, 233 n.6 (2d Cir. 2009) ("We declined to follow several decisions from our
28    sister circuits holding that attorneys' fees could not be included in restitution orders.").

absolutely no effort to prove that those fees were a direct and foreseeable result of the offense conduct.

### 4.  Attorneys' Fees – Actual Payment vs. "Rack Rates"

Among other things, the government has not submitted any evidence demonstrating the amount of attorneys' fees *actually paid* by Korn-Ferry.  It has only submitted the "rack rate" billing statements provided by O'Melveny.  But it is well known that large corporate clients generally do not pay the exorbitant "rack rates" charged by big law firms, notwithstanding the fact that those rates are commonly listed on the bills.  In fact, a recent study by Thomson Reuters found that corporate clients on average pay less than 85% of what they are initially billed on law firm billing statements.  *See* Jennifer Smith, "On Sale: The $1,150-Per-Hour Lawyer Lawyer—Fees Keep Growing, But Don't Believe Them. Clients Are Demanding, and Getting, Discounts," *Wall Street Journal* (April 9, 2013).

While it is not uncommon for big law firms to bill $1000 for tasks such as "reviewing the appellate docket," it defies logic to suggest that Korn-Ferry actually paid that amount for such a meaningless task.  *See Tsosie*, 639 F.3d at 1221 (stating the evidence underlying a restitution order must have indicia of reliability to support its probable accuracy).  The government has not established the amounts actually paid.

### 5.    Attorneys' Fees – Sitting Through Trial

The government has included tens of thousands of dollars of attorneys' fees related to O'Melveny attorneys traveling to, and sitting through, Mr. Nosal's criminal trial.  (*See, e.g.*, Exh. 71.)  Subdivision (b)(4) of the MVRA states that an individual victim may be reimbursed for her own costs in attending trial.  Nothing in the MVRA states that a victim may hire an attorney to attend trial on her behalf.  Such costs are neither necessary nor directly and foreseeably caused by the offense.  The government has cited no federal case allowing for such expenses to be included in a restitution order, even if the hourly rates billed were reasonable.[4]

---

[4]    In fact, O'Melveny lawyers have billed their time at over twice the hourly rate that KFI pays its top in-house counsel, Peter Dunn. (see Declaration of Marat Fookson, at page 1.)

1

### 6.    *Attorneys' Fees – Responding to Subpoenas*

2      The governments also requests tens of thousands of dollars for O'Melveny's fees incurred

3 responding to—and fighting—Mr. Nosal's requests for documents necessary for his defense.

4 These expenses are not allowed by subdivision (b)(4), which was intended to cover an individual

5 victims' expenses incurred while taking part *in the prosecution*.  *See Papagno*, 639 F.3d at 1098-

6 99.  Moreover, allowing such expenses would impermissibly burden a defendant's constitutional

7 right to present a defense.

8

### 7.    *Attorneys' Fees – Assistance vs. Participation*

9      Korn-Ferry decided to further its own interests in the parallel civil litigation by

10 expending a massive amount of resources assisting the U.S. Attorney's Office in this

11 prosecution.  But that decision does not create a right to reimbursement, much less a blank check.

12 Most of the expenses incurred were not in any sense "required" or "necessary."  What the MVRA

13 covers is required participation in the prosecution—it does not cover all expenses related to a

14 victim's own voluntary efforts to investigate and prosecute.  *Papagno*, 639 F.3d at 1098.

15      The government seeks restitution for numerous hours of O'Melveny lawyers' time and

16 thousands of dollars for O'Melveny to do what the government lawyers themselves could, should

17 and presumably were doing, and even for time spent doing what Nosal's defense counsel were

18 doing.  For instance, the government seeks restitution for time O'Melveny lawyers spent

19 "reviewing and analyzing" Mr. Nosal's Rule 29 and Rule 33 motions, s*ee, e.g.*, Ex. 71, 4/17/13;

20 and for time O'Melveny lawyers spent preparing government witnesses and *drafting prep cross-*

21 *examinations* of those witnesses, *see* Ex. 70, 3/22/13.  The government and KFI have failed to

22 show that any of these expenditures were necessary or reasonable.

23      Nor were Korn-Ferry's massive legal fees in 2012 and 2013 directly and foreseeably

24 causes by the offense conduct in 2005.  Indeed, they are the classic sorts of attorneys' fees that

25 courts have characterized as "consequential" damages, which are not allowed under the MVRA.

26 *See Havens*, 424 F.3d at 538; *Barany*, 884 F.2d at 1261.

27                                              //

28                                              //

1

### 8. Attorneys' Fees – Vague and Unnecessary Bills

2      The government seeks huge amounts of money that was unnecessarily spent by

3 O'Melveny lawyers reviewing unspecified documents.  In February 2013, for example, the

4 government seeks restitution for O'Melveny lawyers to review unspecified "notices" and orders

5 (Ex. 69, 2/11/13); to "review and analyze all prior orders issued by arbitrator Holtzman in

6 preparation for hearing" (*id*., 2/12/13); to "review and analyze San Mateo Superior Court filings"

7 (*id*., 2/20/13); to "review and analyze letter from AAA and draft response" (*id.*, 2/21/13; *see also*

8 2/26/13).  The government seeks restitution for O'Melveny lawyers who "review[ed] court

9 papers" and "witness list" and a "government filing."  Ex. 70, 3/26/13.  Nowhere does the

10 government explain how these costs can be justified under the restitution statutes.

11      Often the attorney time is duplicative, that is, both a partner and an associate, and/or two

12 partners, are essentially doing the same thing.  *See, e.g.* Ex. 70, 3/4/13; 3/5/13; 3/6/13 (multiple

13 partners and associates "review[ing] and analyz[ing] Magistrate Cousins' order granting Rule

14 17(c) subpoena).  Many hours and thousands of dollars were expended in "conference" between

15 O'Melveny lawyers "regarding the criminal trial," "trial issues," or other unspecified matters.

16 *See, e.g.,* Ex. 71, 4/7/13; 4/8/13; 4/9/13; 4/10/13, 4/12/13.  Other time and money is spent in

17 "conference" with people whose relationship to the case, if any, as well as the topic of the

18 "conference," are unspecified.  *See, e.g.*, Ex. 71, 4/15/13 (conference with David Lowe, Spencer

19 Fleisher and Neil Townsend).  These expenditures seem like classic examples of a law firm

20 churning billable hours.  Such expenditures of time and money (one partner billing at $950 per

21 hour or more) can hardly be considered either foreseeable, reasonable or necessary.

22

### 9. Attorneys' Fees – Other Particular Examples

23      Rather than attempt to meet its burden, the government has simply dumped on the Court

24 and the defense 371 pages of invoices from O'Melveny & Meyers for attorneys' fees totaling

25 close to a million dollars with no explanation as to how any of those thousands of hours of

26 attorney time meets the legal standards required.  Mr. Nosal cannot and will not attempt to

27 dispute every single line item, in part because most of the line items are insufficiently specified

28 so it is impossible to determine why the time was expended.  But even a cursory review of the

invoices demonstrates that the government is seeking to recover for KFI costs that are inappropriate under the MVRA.

For instance, in addition to the entries discussed above, the government seeks restitution for the cost for O'Melveny lawyers to:

- discuss with another O'Melveny lawyer "the implications of the new US Attorney" for the case and research on her potential conflict (Ex. 19 (1/26/07, $567.00);

- draft a declaration of Jaqueline Froehlich-L'Heureaux (Ex. 23, 5/1/07, some unspecified portion of $3,097.50; 5/2/07, some unspecified portion of $1,522.50);

- review information filed against Ms. Froehlich-L'Heureaux, discuss with others, review articles about and attend plea; confer with AUSA about declaration drafted by OMM (Ex. 23, 5/31/07, $275.00; Ex. 24, 6/1/07, $495.00; 6/15/07, $55.00);

- draft letters to an arbitrator periodically (*e.g.*, Ex. 25, 7/11/07, $220.00; Ex. 28 (11/13, 14, 16/07, $340.00));

- communicate with the government about "upcoming indictments" and KFI response, review press reports about the indictment of Mr. Nosal and prepare press releases and internal announcements (Ex. 33, 4/10-11/08, $4,420.00);[5]

- research disqualification of the District Attorney [apparently a benighted reference to Nosal's motion to disqualify the Assistant United States Attorney] (Ex. 35, 6/11/08, $170.00);

- paralegal work to "file and index" unspecified documents (Ex. 36, 7/31/08, $884.00);

- review unspecified filings and briefs (Ex. 38, 10/2/08, $190.00; 10/29/08, $475.00;

- review "update of court proceeding" (Ex. 39, 11/18/08, $190.00)

- review docket (Ex. 40, 1/12/09, $95.00; review filing, 1/14/09, $950.00);

- review unspecified pleadings (Ex. 41, various dates in February, 2009, $1,114.00);

---

[5]    Attorneys' fees associated with counseling a client on its response to press coverage are not recoverable as restitution, even in the Second Circuit. *United States v. Batista*, 575 F.3d 226, 234 (2d Cir. 2009).

1    The government provides no evidence or even argument that these expenditures were reasonable,

2    necessary or related to KFI's participation in the criminal trial.

3            **E.    Difficulty in Calculating Actual Loss**

4            The MVRA states that no restitution should be ordered where it would require

5    "determining complex issues of fact related to the cause or amount of the victim's losses would

6    complicate or prolong the sentencing process to a degree that the need to provide restitution to

7    any victim is outweighed by the burden on the sentencing process." § 3663A(c)(3)(B).  That

8    provision applies in this case.  The government has submitted hundreds of pages of legal bills

9    without explaining which were actually paid, much less which were truly reasonable, necessary,

10   and directly caused by the defense.  It is nearly impossible to determine which fees were truly

11   incurred as part of the criminal offense as opposed to the civil litigation.  It is also nearly

12   impossible to separate which fees resulted from the government's decision to pursue the

13   impermissible dismissed counts as opposed to the ultimate counts of conviction.

14           Moreover, related to the underlying contract dispute, Korn-Ferry has already withheld

15   over a million dollars in consulting fees owed to Mr. Nosal. (Dec. of Dennis P. Riordan, at p. 2.)

16   The purpose of restitution is to make a victim whole, but if Korn-Ferry has already been made

17   whole by retaining those fees, there is no additional purpose for a restitution order.  Moreover,

18   there is no practicable way for this Court to determine how much of that reimbursement should

19   count as an offset to any restitution order without wading into the thicket of the civil contract

20   dispute.  Suffice it to say, calculating a proper restitution order in this case will be difficult,

21   complex, time consuming, and will require an evidentiary hearing.

22           Perhaps most importantly, that civil dispute is the proper venue for compensating

23   Korn-Ferry for any losses.  There is no need for criminal restitution in a case like this, where

24   Korn-Ferry has ample opportunity for financial recourse in civil proceedings.  Given the pending

25   civil proceedings, the burden in calculating restitution far outweighs "the need to provide

26   restitution." § 3663A(c)(3)(B).  If there were ever a case for applying § 3663A(c)(3)(B), this is

27   that case.

28

### F. Evidentiary Hearing

Mr. Nosal believes that the government has failed to meet its burden of proving that KFI is entitled to restitution, and that the issue thus can be resolved without an evidentiary hearing. If the Court finds that there are facts relevant to restitution are still in dispute, Mr. Nosal alternatively requests an evidentiary hearing

### G. Conclusion

"[A] restitution order must be supported by evidence in the record showing that it is more likely than not that the defendant's offense proximately caused the losses for which restitution was awarded and that it did so in the amounts awarded." *Tsosie*, 639 F.3d at 1222. The government has failed to carry its burden. It has requested reimbursement for a variety of expenses not allowed by the MVRA. Indeed, the government's argument that Mr. Nosal should be required to pay over a million dollars in unnecessary legal fees charged by O'Melveny represents a perversion of subdivision (b)(4). That statute was enacted as part of the Violence Against Women Act to provide compensation to victims of sexual violence. It was not intended to repeal the American rule that each party pays its own legal fees, nor was it intended to require a defendant to pay hundreds of thousands of dollars so that a white-shoe law firm can assist the U.S. Attorneys in his own prosecution.

//

//

//

//

//

16

Consequently, as a result of the government's failure to carry its burden, and the complexity of an accurate calculation, no restitution should be ordered.  And at a minimum, no restitution may be ordered in excess of the Guidelines loss amount.

Dated: December 16, 2013                    Respectfully submitted,

                                            DENNIS P. RIORDAN
                                            DONALD M. HORGAN
                                            RIORDAN & HORGAN


                                             /s/ Dennis P. Riordan
                                            DENNIS P. RIORDAN

                                            Attorney for Defendant
                                            DAVID NOSAL