United States District Court

For the Northern District of California

1

2

3

4

5                          UNITED STATES DISTRICT COURT

6                          NORTHERN DISTRICT OF CALIFORNIA

7

8    UNITED STATES OF AMERICA,                    No. CR-08-0237 EMC

9              Plaintiff,

                                                  **ORDER SETTING AMOUNT OF**
10       v.                                        **RESTITUTION AWARD**

11   DAVID NOSAL,

12             Defendant.

13   _____/

14

15                          I.    **INTRODUCTION**

16          On April 24, 2013, a jury convicted Defendant David Nosal of three counts of computer

17   fraud in violation of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030(a)(4), two

18   counts of unauthorized downloading, copying, and duplicating of trade secrets without

19   authorization, in violation of the Economic Espionage Act ("EEA"), 18 U.S.C. § 1832(a)(2), and one

20   count of conspiring to violate the EEA.  During sentencing, the Court ordered Defendant to pay

21   restitution to his victim and indicated that the amount of restitution would be determined at a

22   subsequent hearing.  Having considered the parties arguments, the Court orders that Defendant pay

23   $827,983.25 in restitution to Korn/Ferry.

24                          II.   **FACTUAL AND PROCEDURAL HISTORY**

25          On January 8, 2014, the Court sentenced Defendant to 12 months and 1 day in prison, and

26   assessed a $60,000 fine.  Judgment at 6 (Docket No. 509).  The Court also ordered Defendant to pay

27   restitution to his former employer, Korn/Ferry ("KFI").  *Id.*  The Court deferred determination of the

28

amount of restitution until February 12, 2014.  *Id.*  During this subsequent hearing, the Court made

several determinations:

- The Court determined that it is possible for the restitution amount to exceed the amount of loss used for Guidelines purposes.  February 12, 2014 Transcript of Proceedings ("Transcript") at 2:11-20 (Docket No. 534).

- The Court held that under the Mandatory Victim's Restitution Act, attorneys' fees incurred by a corporation in aid of the investigation or prosecution of the offense could be included in the restitution award.  *Id.* at 3:4-13.

- The Court noted that to be included in a restitution award, the incurred costs had to be both proximately caused by the offense and reasonable.  *Id.* at 3:14-16; *see also id.* at 5:16-18.

After the Court made these initial legal rulings based on the arguments raised in the parties' papers,

Defense counsel suggested the Court take the following approach:

> Well, my suggestion would be one of two things.  Either based on the Court's comments today, the Court directs the two parties to see if they – what they can agree on.  The amount of – I mean, the Court has laid out broad areas that are no longer in dispute and it really – based on the Court's comments, I think – I think it will be clear that there are some battles which are no longer to be fought and that we might then be able to come back with – you know, it might be a fairly significant number of items, but the Court would have the items, have the objections and just go yes, no, yes, no.

*Id.* at 7:11-21  The Court agreed, stating "if you could do that and let me know the areas that you

agree upon and then whether it's by items or areas or amounts that you disagree, something that you

can isolate with some degree of specificity so I can look at it, I will make the shots, call it."  *Id.* at

9:19-25.

Unfortunately, the parties' suggestion at the January hearing that agreement would be

possible has proven to be overly optimistic.  Despite the guidance provided by the Court during the

February hearing and the opportunity to meet and confer over the past four months, the parties have

been unable to reach any significant agreement.  Instead, the parties have filed separate briefs

detailing the outstanding disputes as to whether, and to what extent, various costs incurred by

Korn/Ferry are properly included in a restitution award.  These issues are now ripe for resolution.

United States District Court

For the Northern District of California

**United States District Court**
For the Northern District of California

## III. DISCUSSION

A.   Legal Standard

The Mandatory Victims Restitution Act ("MVRA") provides:

> Notwithstanding any other provision of law, when sentencing a defendant convicted of an offense described in subsection (c), the court shall order, in addition to, or in the case of a misdemeanor, in addition to or in lieu of, any other penalty authorized by law, that the defendant make restitution to the victim of the offense, or if the victim is deceased, to the victim's estate.

18 U.S.C. § 3663A(a)(1).  Further, the MVRA provides that in all cases, a restitution award must reimburse the victim for expenses "incurred during participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense."  *Id.* § 3663A(b)(4).

Accordingly, for certain crimes – including crimes involving fraud or deceit – restitution is mandatory.  *See United States v. Gordon*, 393 F.3d 1044, 1048 (9th Cir. 2004).  However, the Ninth Circuit has recognized that restitution under the MVRA "'may be awarded only for losses for which the defendant's conduct was an actual *and* proximate cause.'  'But for' cause is insufficient." *United States v. Swor*, 728 F.3d 971, 974 (9th Cir. 2013); *cf. Paroline v. United States*, 134 S. Ct. 1710, 1719 (2014) (holding, under a separate restitution statute, that "[r]estitution is therefore proper . . . only to the extent the defendant's offense proximately caused a victim's losses").  Accordingly, the government must "'show not only that a particular loss would not have occurred but for the conduct underlying the offense of conviction, but also that the causal nexus between the conduct and the loss is not too attenuated (either factually or temporally).'"  *Swor*, 728 F.3d at 974 (quoting *United States v. Gamma Tech Indus., Inc.*, 265 F.3d 917, 928 (9th Cir. 2001)).  Stated another way, the Court will only award restitution for those losses that were incurred as a "direct and foreseeable result" of the defendant's wrongful conduct.  *United States v. Phillips*, 367 F.3d 846, 863 (9th Cir. 2003).

B.   Korn/Ferry Is Entitled to Restitution for Its Response Costs in the Amount of $27,400

The government seeks restitution for the costs KFI incurred in responding to Defendant's actions.  Docket No. 544, at 5.  As discussed in detail in the Court's prior order calculating the amount of loss caused by Defendant for purposes of the Sentencing Guidelines, this category

1    corresponds to KFI's internal investigation costs incurred in attempting to ascertain the nature and

2    scope of Defendant's breach.  The Court found that such investigation costs were properly included

3    in the loss calculation amount under U.S.S.G. § 2B1.1.  *See* Docket No. 503, at 6.  Additionally, the

4    Court found that the government had demonstrated that $27,400 – the costs incurred by Ms. Briski

5    in May and June 2005 in investigating Defendant's intrusion into KFI's system and employing

6    remedial actions – were reasonable, foreseeable, and "reasonably necessary."  *Id.* at 9-10, 12.

7         The Defendant argues that this $27,400 amount is not properly included in the restitution

8    award, relying on the D.C. Circuit case of *United States v. Papagno*, 639 F.3d 1093 (D.C. Cir.

9    2011).  In that case, the court held that a victim's internal investigation costs, "at least [those] that

10   [have] not been required or requested by criminal investigators or prosecutors," were not

11   recoverable under 18 U.S.C. § 3663A.  *Id.* at 1099.  The Court disagrees.  As the *Papagno* court

12   itself recognized, its holding was in conflict with the holdings of a number of other circuits.  *See*

13   *also id.* at 1101.  For example, in *United v. Amato*, 540 F.3d 153 (2d Cir. 2008), the Second Circuit

14   reviewed a restitution award in a large corporate fraud case which included substantial amounts

15   incurred by the victim corporation in internal investigation costs.  The court affirmed the restitution

16   award, noting:

> We need not formulate a precise test in the present case because –
> even assuming attorney fees and auditing costs must be a direct and
> foreseeable result of the offense – such a requirement was clearly met
> here.  Defendants perpetrated a complicated fraud against a large
> corporation and a number of its clients . . . .  That this fraud would
> force the corporation to expend large sums of money on its own
> internal investigation as well as its participation in the government's
> investigation and prosecution of defendants' offenses is not surprising.

22   *Id.* at 162; *see also United States v. Janosko*, 642 F.3d 40 (1st Cir. 2011) (affirming restitution award

23   which included internal investigation costs because "quite aside from decency to its workers, any

24   employer would reasonably wish to know the full extent of criminality when reporting the facts to

25   law enforcement authorities").

26        The Ninth Circuit has repeatedly stated that it has "'adopted a *broad* view of the restitution

27   authorization [for investigation costs].'"  *Gordon*, 393 F.3d at 1056-57 (quoting *Phillips*, 367 F.3d at

28   863) (alteration in original).  In light of this, the Court declines to find *Papagno* controlling and

4

1    instead finds those Circuits that have held internal investigation and response costs may be included

2    in a restitution award persuasive.  Accordingly, for the reasons stated in its earlier loss calculation

3    order, the Court finds that KFI's response costs of $27,400 were a direct and foreseeable result of

4    Defendant's conduct and are therefore properly included in the restitution award.  *See Janosko*, 642

5    F.3d at 42 ("[A]ny employer would reasonably wish to know the full extent of criminality when

6    reporting the facts to law enforcement authorities.")

7    C.    The Court Will Include $204,825 in the Restitution Award Reflecting the Value of KFI's

8          Employee's Time

9          The government seeks to include $247,695 in the restitution order, representing the value of

10   KFI's employee's time spent participating in and assisting the government's investigation and

11   prosecution (separate and apart form the time spent internally investigating the offenses).  Defendant

12   argues that this amount is not recoverable because it amounts to paying employees for the time spent

13   preparing to testify and testifying as a government witness.  Specifically, Defendant contends:

14            Obviously, as a general rule, other than the minimal daily witness fees
              provided by statute, lay witnesses called by either party are not paid
15            for their time preparing and testifying; they are not compensated for
              lost wages; and they are not entitled to any form of restitution.
16            Victims can get lost wages for time testifying and assisting; other
              witnesses cannot.

17

18   Docket No. 539, at 5.  Defendant goes so far as to allege that restitution to KFI of its employees

19   "wages" will "raise a major question about the constitutional regularity of the government's case."

20   *Id.* at 6.

21         The Court disagrees. The Ninth Circuit has recognized that "[l]ost employee time entitles an

22   employer to restitution."  *United States v. Christy*, 449 F. App'x 740, 741 (9th Cir. 2012).  Thus, in

23   *United States v. De La Fuente*, 353 F.3d 768 (9th Cir. 2003), the Ninth Circuit affirmed a restitution

24   award which included an amount representing the United States Postal Service's lost employee time

25   caused an evacuation occasioned by the defendant's anthrax threat.  *Id.* at 768; *see also United*

26   *States v. Wilfong*, 551 F.3d 1182, 1184 (10th Cir. 2008) ("An employee's work time is the property

27   of the employer.").  More on point to the instant case, in *United States v. Hosking*, 567 F.3d 329 (7th

28   Cir. 2009), the Seventh Circuit affirmed a restitution award which included the value of "[t]he time

5

**United States District Court**
For the Northern District of California

and effort spent by the bank's employees and outside professionals in unraveling the twelve-year embezzlement scheme" because such time and effort was an important part of the investigation of the offense. *Id.* at 332. Ultimately where the time spent by employees (and valuation thereof) is a direct and foreseeable result of a defendant's wrongful conduct and reasonably necessary to the government's investigation or prosecution, such amounts are properly included in a restitution award. *See Phillips*, 367 F.3d at 863; *see also Amato*, 540 F.3d at 159 (noting that the reimbursed "expenses" under the MVRA must have been "necessary"); *Hosking*, 567 F.3d at 332.

As Defendant recognizes, a victim is entitled to compensation for the time spent assisting and testifying  In the case of an individual, this will usually be the wages the victim has lost as a result of that activity. As a corporate entity, KFI can only testify or otherwise participate in the government's investigation through its employees. As a result of Defendant's scheme, key KFI personnel had their attention and activities diverted away from the company's business purposes and towards assisting and participating in Defendant's prosecution. In this way, KFI suffered a loss. Further, this loss was a direct and foreseeable result of Defendant's conduct. Further, the government's papers demonstrate the importance KFI's employee's time and effort was to the investigation into the underlying offense. Accordingly, as corporate victim, KFI is entitled to restitution for the value of its employees' time spent assisting the government in its investigation and prosecution – time which, but for Defendant's scheme, could have been spent in furthering KFI's business pursuits.

The government has previously provided the Court with declarations of Marlene Briski, Caroline Nahas, and Peter Dunn. These individuals have sought to estimate the amount of time they have spent assisting the government's investigation and prosecution by reviewing their Outlook calendars, e-mail correspondence, and "other documents related to this matter." Ms. Briski estimates that she has spent 325 hours assisting the government from July 2005 through 2013. Docket No. 479, at 4. Ms. Nahas has estimated she has spent 100 hours during the same time frame. Docket No. 478, at 2. Mr. Dunn has estimated that he has spent 355 hours during this time frame. Docket No. 477. Finally, Ms. Briski also has provided an estimate of Dan Demeter's time as Mr. Demeter suffered a severe stroke in 2010. Ms. Briski estimates that Mr. Demeter spent 140 hours

**United States District Court**
For the Northern District of California

1    assisting the government in its investigation and prosecution. Docket No. 479, at 6. These

2    individuals have expressly provided that these estimates exclude time spent on the civil litigation

3    between KFI and Defendant. Moreover, this time does not include amounts KFI incurred in its own

4    internal investigation conduct.

5            Further the declarants have described the nature of their cooperation with the government.

6    For example, Ms. Briski has stated that she has had numerous telephone and in-person conferences

7    with the U.S. Attorney's Office and the FBI to, among other things, explain the nature of KFI's

8    Searcher database, the steps KFI takes to safeguard it, and the precise lists stolen by Defendant.

9    Docket No. 479, at 3-4. Further, she stated she has responded to numerous requests from the

10   government for information, data, and documents. *Id.* at 3. Finally, she testified before the grand

11   jury, during the criminal trial, attended the sentencing hearing, and assisted the government in

12   valuing the data taken by Defendant. *Id.* at 4. Mr. Dunn's declaration includes a similar description.

13   Docket No. 477, at 3. The Court finds it reasonably foreseeable that KFI's Vice President

14   Information Services (Ms. Briski) and General Counsel (Mr. Dunn) would assist the government's

15   investigation and prosecution of Defendant in light of Defendant's scheme. The Court further finds

16   the estimated times to be reasonable given the eight-year duration of the criminal investigation and

17   prosecution. In light of the valuation of Ms. Briski and Mr. Dunn's time provided in the Declaration

18   of Marat Fookson (filed under seal on November 14, 2013), Ms. Briski's 325 hours is worth $47,015

19   and Mr. Dunn's 355 hours is worth $157,810. The Court concludes these amounts are properly

20   included in the restitution award. They were reasonably necessary to the government's investigation

21   and prosecution and were a direct and foreseeable result of Defendant's wrongful conduct.

22           The Court, however, declines to include time for Mr. Demeter or Ms. Nahal. The

23   government has not provided any meaningful level of description as to the nature of their assistance

24   to the government, making it impossible to determine whether their time spent assisting the

25   government was reasonable or necessary – particularly in light of Ms. Briski and Mr. Dunn's

26   involvement.

27

28

United States District Court

For the Northern District of California

1    Accordingly, the Court will include $204,825 in the restitution award, representing the value

2    of employee time KFI lost as a result of the employee's assistance and participation in the

3    government's prosecution of Defendant.

4    D.    Korn/Ferry Is Entitled to $595,758.25 in Attorneys' Fees

5    At the February restitution hearing, the Court determined that attorneys' fees incurred by a

6    corporation in aid of the investigation or prosecution of an offense are recoverable under the

7    MVRA.  *See* Transcript at 3.  Specifically, in the *Gordon* case, the Ninth Circuit held that

8    "[g]enerally, investigation costs – including attorneys' fees – incurred by private parties as a 'direct

9    and foreseeable result' of the defendant's wrongful conduct 'may be recoverable.'"  *Gordon*, 393

10   F.3d at 1057.  The court accordingly affirmed a restitution award that included an amount covering

11   Cisco's attorneys' fees incurred in aid of the criminal proceedings.  *Id.*  Specifically, the Cisco

12   incurred costs (including attorneys fees) in responding to a number of grand jury subpoenas,

13   government requests for documentation and electronic information, and attempting to identify and

14   reconstruct the sales from which the defendant had embezzled.

15   The government seeks to include $964,929.65 in attorneys fees KFI paid its law firm,

16   O'Melveny & Myers LLP ("OMM"), between the months of July 2005 through January 2014.  This

17   amount represents the amount OMM billed KFI for services rendered during the instant criminal

18   matter. Defendant asserts that this amount is unreasonable.  Defendant relies primarily on the

19   declaration of John O'Connor – an attorney who has been retained as an "attorneys' fee expert."

20   Defendant and Mr. O'Connor generally attack the requested attorneys' fee award on a number of

21   grounds.

22   First, Mr. O'Connor describes OMM as an "excellent" or "premium-level" law firm whose

23   billing rates are generally "35% to 100% higher than the market for reputable business litigation

24   firms not in the premium category."  Docket No. 539, at 9.  He contends that there "appears to be no

25   necessity to retain a premium-priced litigation team merely to participate in this criminal

26   proceeding" given the nature of the tasks involved.  *Id.* at 9-10.  Rather, Mr. O'Connor contends that

27   this work could have been done by an attorney in KFI's general counsel's office.  Ultimately, he

28   believes that a more "reasonable" hourly rate for an attorney conducting these tasks would be $250

United States District Court
For the Northern District of California

1   an hour for a "CJA-level lawyer." *Id.* at 11.  The Court disagrees.  Defendant cites no legal

2   authority for the proposition that the Court should reduce the restitution award based on the victim's

3   choice of legal representation.  Further, the Court finds it reasonably foreseeable that a corporate

4   victim would seek to retain an (as Defendant concedes) an "excellent" or "premium" law firm to

5   assist the government in investigating and prosecuting a security breach and conspiracy of the kind

6   organized and perpetrated by the Defendant.  The Court will not fault KFI for its choice of

7   representation simply because the Defendant asserts, with the benefit of hindsight, that a lower-cost

8   firm could have adequately represented it during the criminal proceedings. *See United States v.*

9   *Gupta*, 925 F. Supp. 2d 581 (S.D.N.Y. 2013) (awarding Goldman Sachs $6.2 million in restitution

10  for the attorneys' fees incurred by the law firm Sullivan & Cromwell – a comparable firm to OMM).

11  Defendant and its expert do not contend that OMM's rates exceeded the local market rate for

12  attorneys of similar experience, reputation and qualifications. *Cf. Blum v. Stenson*, 465 U.S. 886

13  (1984) (noting "prevailing market rate" considers counsel's "experience, skill, and reputation").

14          Defendant and Mr. O'Connor next contend that the requested attorneys' fees should be

15  reduced by 70% insofar as 14 of the original 20 criminal counts were dismissed.  Docket No. 539, at

16  9. ("Indeed, since much of KFI's billings related to the pre-indictment time period, when KFI may

17  have been advocating for criminal charges even in addition to the 20 counts charged, clearly a

18  portion of its activities related to Nosal's conduct adjudged by the government or by the Court not to

19  be criminal.").  However, Defendant was convicted of conspiracy. *See* Docket No. 408.  Courts

20  have routinely held that a court has "authority to order a participant in a conspiracy to pay restitution

21  even on uncharged or acquitted counts." *United States v. Boyd*, 222 F.3d 47, 50 (2d Cir. 2000); *see*

22  *also United States v. Gregoire*, 638 F.3d 962, 972-73 (8th Cir. 2011) ("[R]estitution may be ordered

23  for criminal conduct that is part of a broad scheme to defraud, without regard to whether the

24  defendant is convicted for each fraudulent act in the scheme.").  More fundamentally, even if OMM

25  assisted the government with respect to certain counts or actions which were subsequently

26  determined to be not criminal, it cannot be reasonably disputed that such assistance was rendered as

27  part of the government's investigation into an overarching scheme – a scheme for which Defendant

28  was ultimately convicted.  Accordingly, the Court rejects Defendant's attempt to cut the requested

United States District Court

For the Northern District of California

1    attorneys' fees by 70%.[1]  *Cf. Hensley v. Eckerhart*, 461 U.S. 424, 436 n.11 (1983) (rejecting, in the

2    context of a fee-shifting provision, a mathematical approach to fees that simply compares the total

3    number of issues in those case with those actually prevailed upon).  Here, KFI was a victim and had

4    to incur investigation costs and expenses whether the government won part or all of its case.

5            Defendant asserts that the billing records provided by OMM lack sufficient detail for the

6    Court to make a determination as to whether the fees in question were reasonable or necessary under

7    the MVRA.  The hundreds of pages of billing records provided by OMM consist of approximately

8    2,000 entries comply with standard billing practices employed by large (and other) law firms.  The

9    Court notes that other courts have affirmed restitution awards based on law firm billing records.

10   *See, e.g.*, *United States v. Donaghy*, 570 F. Supp. 2d 411 (E.D.N.Y. 2008); *United States v. Gupta*,

11   925 F. Supp. 2d at 588.  In addition, the government has provided a declaration by Mr. Mark

12   Robertson, an OMM partner, which generally describes that OMM's fees arose from the following

13   general categories of activities: (1) in-person meetings and telephone calls between OMM attorneys

14   and FBI and U.S. Attorney personnel; (2) collecting, reviewing and analyzing data and documents to

15   respond to government requests and inquiries; (3) responding to grand jury and trial subpoenas; (4)

16   drafting briefs to quash subpoenas; (5) attending trial and other proceedings in the criminal matter;

17   and (6) other informal requests for information from the government.  Docket No. 463-2, at 4.  The

18   Court has carefully reviewed all OMM records which form the basis of KFI's request for restitution

19   of its attorneys fees and finds that most but not all of the billing records are sufficiently detailed to

---

21   [1] Related to this argument, Defendant also argues that under the Supreme Court's recent

22   decision in *Paroline*, the restitution award must be limited to his "own individual causal relation to the victim's losses" and cannot include the costs related to the investigation or prosecution of his co-conspirators.  *Paroline*, 134 S. Ct. at 1729.  However, *Paroline* did not involve defendants convicted

23   of conspiracy.  Rather, in that case, the Supreme Court held that a defendant convicted of possession of child pornography images depicting a specific victim could not be ordered to pay restitution for

24   *all* of the victim's losses because those losses were, in fact, caused by the tens of thousands of defendants who likewise had independently viewed the images.

25           Unlike in *Paroline*, Defendant was convicted of conspiracy.  As discussed above, there is a

26   long line of authority recognizing that a defendant convicted of conspiracy can be called to account through restitution for all losses occasioned by that conspiracy.  There is nothing in the *Paroline*

27   decision to suggest that the Supreme Court intended to overrule or otherwise undermine the long line of circuit court authority providing that a defendant could be required to pay restitution for the

28   entire cost incurred by the victim in assisting with the investigation or prosecution of a conspiracy of which the defendant was convicted.

United States District Court

For the Northern District of California

1  permit the Court to confirm that the attorney fees were reasonable and necessary to the

2  government's investigation and prosecution.  Thus, for instance, while there are entries that clearly

3  establish necessary participation (*e.g.*, those which involve meeting with government investigators

4  and attorneys, responding to subpoenas, attending grand jury proceedings), there are many which are

5  far more vague and ambiguous (such as those that describe internal meetings or calls to discuss the

6  case, or OMM attorneys drafting internal emails to each other).  The Court, upon reviewing the

7  records, conclude that 10% of the requested attorneys' fees should be removed for being incurred for

8  activities which are not demonstrably reasonably necessary to the government investigation and

9  prosecution.

10        In addition, there are other time entries which clearly should not be included as restitution.

11  These include fees related to attorney review of filings, orders, and press coverage should be

12  excluded.  For example, on October 10, 2013, S. Bunzel billed $988.65, in part, for having "analyze

13  press coverage of proceedings and confer with M. Robertson regarding same."  While such charges

14  may arguably qualify as "participation" in the investigation and prosecution insofar as it allowed

15  KFI to stay abreast of the developments in the proceedings, the Court finds in the circumstances of

16  this case these charges were not reasonably necessary to the government's prosecution.  Having

17  closely reviewed OMM's billing reports and the government's spreadsheets detailing the same, the

18  Court concludes that $31,446.99 of the requested attorneys' fees fall into this category and are

19  properly excluded.

20        Furthermore, the Court agrees with Defendant that the requested attorneys' fees should be

21  adjusted to reflect staffing-related inefficiencies.  For example, multiple attorneys have billed for

22  participating in the same conference or for reviewing the same submission.  Similarly, internal

23  conferences between attorneys are frequently billed even if they concern the same matter.  For

24  example, in March 2007, OMM billed a total of $10,384.20 to KFI.  However, it appears this

25  amount contains instances of two attorneys billing for the same activity.  For example:

26     •  On March 1, 2007, F. Virjee billed 1.00 hour (or $697.50) for
         "Telephone conference with Ausa regarding next steps."  On
27       the same day, M. Robertson billed 0.50 hour (or $247.50) for
         "Conference with K. Waldinger and F. Virjee regarding status
28       of criminal investigation."

- • Also on March 1, 2007, F. Virjee billed 0.80 hour (or $558.00) for "Conference with M. Robertson regarding Ausa issues and regarding co-conspirator cooperation." On the same day, M. Robertson billed 0.20 hour (or $99.00) for "Conference with F. Virjee regarding follow-up based on conference with K. Waldinger."

- • On March 2, 2007, J. Merzon billed 0.30 hour (or $141.75) for "Communicate with M. Robertson regarding submission to US attorney." On the same day, M. Robertson billed 0.30 hour (or $148.50) for "Conference with J. Merzon regarding preparation of materials for the US attorney's office."

- • On March 15, 2007, M. Roberston billed 0.30 hour (or $148.50) for "Conferences with F. Virjee regarding potential stay." The following day, F. Virjee billed 1.00 hour (or $697.50) for "Conference and correspondence regarding motion from AUSA regarding motion from Ausa to stay hearing."

- • On March 20, 2007, J. Merzon billed 0.20 hour (or $94.50) for "Confer with M. Robertson regarding submission to US attorney." The same day, M. Robertson billed 0.20 hour (or $99.00) for the same activity.

- • On March 22, 2007, J. Merzon billed 0.30 hour (or $141.75) for "Confer with M. Robertson regarding US attorney project." That same day, M. Robertson billed 0.30 hour (or $148.50) for "Conference with J. Merzon regarding preparation of submission to US attorney's office."

Combining the more expensive of these arguably duplicative entries yields $2349.00. Subtracting this from the $10,384.20 total for the month yields an approximately 23% reduction. Other months, however, did not contain as high a percentage of arguably duplicative billing. Nonetheless, to arrive at a conservative figure so as to ensure Defendant is not being asked to pay for tasks that were not reasonably necessary, the Court will apply an additional 25% reduction to OMM's attorneys fees. This reduction will account for a variety of staffing-related inefficiencies revealed by the billing entries.

Finally, the Court must address Defendant's argument that the restitution award must be proportional to the Court's determination of "actual loss" for purposes of the Guideline. In the usual case, a restitution award and the determination of loss for purposes of the Sentencing Guidelines will be similar, if not identical. *See, e.g.*, *United States v. Dokich*, 614 F.3d 314 (7th Cir. 2010) ("Strictly speaking (by which we mean considering the guidelines before 18 U.S.C. § 3553(a) enters the

**United States District Court**
For the Northern District of California

1   picture), the opposite is impossible: because courts must rely on the greater of intended or actual

2   loss to calculate a guidelines sentence, a restitution order should never exceed the loss used to

3   calculate a sentence." ).  However, there are instances where the plain text of the MVRA and

4   Guidelines demonstrate restitution may exceed losses calculated under the Guidelines.  U.S.S.G. §

5   2B1.1 expressly excludes from the loss calculation "[c]osts to the government of, and costs incurred

6   by victims primarily to aid the government in, the prosecution and criminal investigation of an

7   offense." U.S.S.G. § 2B1.1, App. Note 3(D).  By contrast, the MVRA *requires* a restitution award

8   to reimburse a victim for the "expenses incurred during participation in the investigation or

9   prosecution of the offense or attendance at proceedings related to the offense."  18 U.S.C. §

10  3663A(b)(4).  Hence, there will be cases, such as this one, where the restitution award exceeds the

11  loss calculation.

12          For the foregoing reasons, the Court finds that $595,758.25 in attorneys' fees (the

13  $964,929.65 total, less 10% for attorney time entries not demonstrably reasonably necessary to the

14  government's investigation and prosecution, and 25% for staffing inefficiencies, and less the time

15  spent on "press" and file/order reviewing charges) shall be included in the restitution award.

### IV.   CONCLUSION

17          For the foregoing reasons, the Court finds that, based on the record before the Court, KFI is

18  entitled to a restitution award of $827,983.25, representing $27,400 in response costs, $204,825 for

19  the value of KFI's employee's time, and $595,758.25 in KFI's incurred attorneys' fees.

21          IT IS SO ORDERED.

23  Dated:  May 20, 2014

25  _____
    EDWARD M. CHEN
    United States District Judge