STEVEN F. GRUEL, ESQ.
California Bar No. 213148
315 Montgomery Street, 10th Floor
San Francisco, CA 94104
Telephone: 415-989-1253
Facsimile: 415-449-3622
Email: attystevengruel@sbcglobal.net

Attorney for Petitioner **David Nosal**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. CR 08-0237 EMC |
| Plaintiff, | |
| v. | **PETITION FOR WRIT OF ERROR** ***CORAM NOBIS*** **TO REOPEN SENTENCING AND VACATE CUSTODIAL SENTENCE PURSUANT TO 28 U.S.C. §1651** |
| DAVID NOSAL, | Hon. Edward M. Chen |
| Petitioner. | Date: February 7, 2018 Time: 2:30 p.m. |

# TABLE OF CONTENTS

*United States v. David Nosal*

Page

I. INTRODUCTION .................................................................................................. 1

II. JURISDICTION ................................................................................................. 1

III. SUMMARY OF ARGUMENT .......................................................................... 2

IV. STATEMENT OF FACTS ................................................................................. 5

V. ARGUMENT ...................................................................................................... 7

    A. Writ relief is appropriate in this case; no other remedy is presently available to right the injustice at the heart of the current sentence ............................................................. 7

    B. Korn-Ferry engaged with impunity in conduct that was substantially similar—though decidedly more egregious—as that for which Nosal stands convicted; Korn-Ferry's unclean hands should necessitate a reconsideration of the sentence in this case, especially given that the principal consideration at sentencing—for both the Court and the Government—was general deterrence ................................................................................. 10

        1. KFI and its employees, Truc and Paquet, committed the very same offenses for which Nosal was convicted and, yet, they have suffered no criminal consequences ........................ 11

        2. Because the Court and the Government both agreed that Nosal was highly unlikely to commit crimes in the future, the Court's stated purpose behind imposing a custodial sentence was general deterrence; KFI's subsequent actions necessitate a reexamination of that decision ............................................................................... 13

i

3. The Court selected one year and one day, at least in part, based upon the Government's reference to a 2004 case decided by Judge Hamilton, but in light of KFI's actions with respect to SSI and the factual basis of that 2004 case, a one year sentence in the present case is unreasonable ................................................................................................. 17

4. It is fundamentally unjust to permit a multinational corporation and its employees to flagrantly violate the law with impunity while holding Mr. Nosal personally accountable ... 19

5. KFI's activities in this case and with respect to SSI are anti-competitive and antithetical to the basic economic principles underlying the laws of this country ........................................ 21

VI. CONCLUSION ............................................................................................ 23

# TABLE OF AUTHORITIES

*United States v. David Nosal*

*Hirabayashi v. United States,*
    828 F.2d 591 (9th Cir. 1987) ..................................................................7, 8

*Telink, Inc. v. United States*
    24 F.3d 42 (9th Cir. 1994) ..........................................................................7

*United States v. McKimmey,*
    Case No. 04-cr-00118-PJH ................................................................. 17-19

*United States v. Nosal,*
    844 F.3d 1024 (9th Cir. 2016) ...................................................................6

*United States v. Riedl,*
    496 F.3d 1003 (9th Cir. 2007) ...................................................................7

## STATUTES AND RULES

Federal Rules of Civil Procedure
    Rule 60(b) ....................................................................................................7

Federal Rules of Criminal Procedure
    Rule 33(b)(1)................................................................................................8

Title 18, United States Code
    §3231..............................................................................................................1
    §3553............................................................................................................16

Title 28, United States Code
    §1651..............................................................................................................1
    §2255.....................................................................................................7, 8, 9

# I.

## INTRODUCTION

With this Petition for Writ of Error *Coram Nobis*, Mr. Nosal is not seeking to overturn his conviction, avoid the imposed community service, ask to be reimbursed for the fine, or escape a reasonable amount of restitution, if any applies. Rather, as detailed below, Mr. Nosal petitions this Court to correct a fundamental breakdown of fairness in imposing a custodial sentence, in light of recent conduct by Korn Ferry. Simply put, the Court sentenced Mr. Nosal to prison, at the government's urging, to send a message for general deterrence: The stealing of trade secrets would not be tolerated and would be fully prosecuted. Yet, Korn Ferry, obviously aware of the Court's clear message, nonetheless ignored this warning and was subsequently caught stealing trade secrets from an executive search competitor, Spencer Stuart, Inc. While Mr. Nosal was criminally prosecuted and sentenced to prison, Korn Ferry's theft was, by contrast, quickly resolved by way of civil lawsuit. Apparently, no criminal investigation or prosecution of Korn Ferry ever took place.

Therefore, the facts and law outlined below support granting this Petition to eliminate or reduce the disproportionate custodial portion of the sentence. Alternatively, this Court may choose to replace it with home detention and/or additional community service, such that the sentence imposed comports with the basic concept of fundamental fairness.

## II.

## JURISDICTION

This Court has subject matter jurisdiction pursuant to the All Writs Act, *28 U.S.C. §1651* and *18 U.S.C. §3231*.

**PETITION FOR WRIT OF ERROR *CORAM NOBIS* TO REOPEN SENTENCING AND VACATE CUSTODIAL SENTENCE PURSUANT TO 28 U.S.C. §1651**
CASE NO. CR 08-0237 EMC

1

# III.

## SUMMARY OF ARGUMENT

In fashioning an appropriate sentence, considerations of fairness and proportionality are intrinsic components of the analysis. It is fundamentally unjust to sentence an individual to prison for committing a crime when the alleged victim in the same case commits the exact same offenses on an even grander scale, especially with that victim is a multinational corporation.

When deciding whether to impose a custodial sentence against David Nosal, this Court believed, and the Government agreed, that Nosal was extremely unlikely to commit any offense in the future. The Court was impressed by Nosal's history of hard work, his resourcefulness, and his generosity to those around him. There were no individual victims in this case; unlike many white-collar crimes, this had no demonstrable impact on consumers or the public at large. The only alleged victim here was Nosal's former employer, Korn Ferry International (KFI), a powerful multinational corporation. Other than the costs associated with responding to the perceived theft of three source lists compiled from KFI's Searcher database, there were no other quantifiable losses suffered by KFI. A civil suit or restitution order would have been sufficient to make KFI whole again.[1]

---

[1] Interestingly enough, the Nosal case was solely in the civil courts for three years before the government decided to charge the case. In fact, as seen in the Declaration of Steven Gruel and as attached as Exhibit L, on May 15, 2008, Defendant David Nosal's First Status Memorandum was filed before the Honorable Marilyn Hall Patel. The Status Memorandum described in some detail the dispute between Korn Ferry and Mr. Nosal that had been in the civil courts. It further mentioned that the newly filed criminal case essentially mirrored the matters already presented or pending in civil court and in an arbitration proceeding. Counsel recalls that during this first status hearing, Judge Patel asked why this criminal case wasn't simply handled as a civil

**PETITION FOR WRIT OF ERROR *CORAM NOBIS* TO REOPEN SENTENCING AND VACATE CUSTODIAL SENTENCE PURSUANT TO 28 U.S.C. §1651**
CASE NO. CR 08-0237 EMC

2

So, if there was no unrecoverable loss and no need for retribution or incapacitation, why was it necessary to impose a custodial sentence? The Court indicated that it felt compelled to send Nosal to prison to achieve the goal of general deterrence—to send a message to the industry that this sort of behavior would not be tolerated.

One would be tempted to believe that the victim in this case, KFI, being the most closely related party, would be the first to feel the deterrent effect. As it turns out, shortly after the present case went up on appeal, KFI recruited two employees from one of its competitors, Spencer Stuart, Inc (SSI), to surreptitiously defect from that company and to bring with them a large volume of sensitive documents and trade secrets. The congruency of the behavior at issue in the present case compared with KFI's actions toward SSI is manifest, but the outcomes of the two situations are worlds apart.

Citing the need for general deterrence, this Court sentenced Nosal to one year and one day in prison. Meanwhile, KFI, after orchestrating an even greater intrusion into SSI's computer system, stealing a significant amount of current and proprietary information which was then deleted from SSI's database, and secretly arranging for multiple employees to defect to KFI, suffered no criminal penalty whatsoever. Compounding this injustice is the fact that Nosal is an individual, a "self-made man" who worked his way up from nothing to being among the most highly regarded in his field. KFI, by contrast, is a highly successful multinational corporation, and the two men from SSI who participated in KFI's scheme continue to be employed by KFI, enjoying all the executive benefits attendant to their positions.

matter.  In sharp contrast, the recent KFI, Truc, and Paquet thefts from Spencer Stuart, it seems, were quietly handled as civil cases.

**PETITION FOR WRIT OF ERROR *CORAM NOBIS* TO REOPEN SENTENCING AND VACATE CUSTODIAL SENTENCE PURSUANT TO 28 U.S.C. §1651**
CASE NO. CR 08-0237 EMC

3

1   These are like alternate realities in which, for one, criminal activity is rewarded with success

2   and luxury, and, in the other, a man is condemned to prison for much lesser allegations. The

3   massive disproportionality of the outcomes in these two situations undermines all of the

4   considerations that informed this Court's decision to impose a custodial sentence in the present

5   case.

6           The Ninth Circuit's remand, though directing the Court to consider only the restitution

7   portion of the sentence, has nevertheless given this Court jurisdiction over the matter once

8   more, and this petition for a writ of error *coram nobis* is the only means by which Nosal can

9   obtain a just result. This Court spent a considerable amount of time and exerted a great deal of

10  effort to arrive at a sentence that it perceived as fair; however, KFI's subsequent criminal

11  actions spoil the impact of the Court's sentence and render it unjust. For the reasons detailed

12  below, this Court should grant this petition and reopen the sentencing in this case. If necessary,

13  this Court should order an evidentiary hearing related to KFI's action—and, perhaps, the

14  Justice Department's inaction—and how they affect the setting of a sentence for Nosal. Finally,

15  Nosal believes that, after taking all of the evidence into consideration and applying it to the

16  present case, this Court will also recognize the tremendous injustice of sentencing Nosal to

17  prison while KFI continues to cross the line ethically and prosper while trampling on the backs

18  of its competitors.

19

20

21

22

23

**PETITION FOR WRIT OF ERROR *CORAM NOBIS* TO REOPEN SENTENCING AND VACATE
CUSTODIAL SENTENCE PURSUANT TO 28 U.S.C. §1651**
CASE NO. CR 08-0237 EMC

4

# IV.

## STATEMENT OF FACTS[2]

1. On April 24, 2013, Petitioner David Nosal was convicted by a jury on six counts based on three occasions of unauthorized access by one individual to three source lists containing in total approximately 200 names of executives (along with their titles, company names and in some cases a phone number) maintained in databases by Korn Ferry International (KFI), Petitioner's former employer. Three of charges arose out of alleged violations of the Computer Fraud and Abuse Act (CFAA), two alleged trade secret violations, and the last count was a conspiracy charge.

2. According to the Government's case, Petitioner David Nosal, a former employee of Korn/Ferry International (KFI), resigned from his position at the company, but agreed to stay on for another year as an independent contractor. Nosal was to receive $25,000 per month in addition to commissions earned for completing 15 searches begun prior to his resignation and collecting more than $3 million in fee revenue for KFI. Based on the terms of his separation agreement, Nosal was supposed to receive $1.2 million in commissions for completing this work. Although Nosal fulfilled the terms of his agreement, KFI reneged on its obligation to pay Nosal the commissions it owed him. He signed an agreement not to compete with KFI during that period.

3. A number of individuals who were going to join Nosal either already had their own executive search firms or established executive search firms through which to execute search assignments until joining his company. One of these individuals (not Nosal) used another

---

[2] The facts presented in this Petition derive from the trial and appellate records as well as the declaration of Steven F. Gruel, Esq. filed contemporaneously with this Petition.

**PETITION FOR WRIT OF ERROR *CORAM NOBIS* TO REOPEN SENTENCING AND VACATE CUSTODIAL SENTENCE PURSUANT TO 28 U.S.C. §1651**
CASE NO. CR 08-0237 EMC

5

employee who was still working at KFI to obtain access to the KFI database called Searcher. That database is, according to KFI, a proprietary asset containing information (i.e., employment history, salaries, resumes, contact information, etc.) about more than one million executives. The acquisition of "source lists" using the Searcher program on three occasions was the basis for the charges against Nosal. *See United States v. Nosal*, 844 F.3d 1024, 1030-1031 (9th Cir. 2016).

4. On January 8, 2014, this Court sentenced Petitioner to one year and one day in custody, three years of supervised release, a fine of $60,000, and community service. The Court granted Petitioner's motion for release pending appeal. *See* Dkt. 523. Following additional briefing from the parties, the Court ordered restitution in the amount of $827,983.25. *See* Dkt. 547.

5. On Appeal, a panel of the Ninth Circuit rejected the legal claims Petitioner raised in attacking the convictions notwithstanding Judge Reinhardt's thorough and reasoned dissenting opinion. The court did, however, remand the case for reconsideration of the restitution order.

6. In March 2017, while Nosal's case remained pending on appeal, one of KFI's major competitors, Spencer-Stuart, Inc. (SSI) filed a civil complaint in the Circuit Court of Cook County, Illinois and another in the Federal District Court for the Eastern District of Illinois. In these complaints, SSI alleged that two of its former employees, Francois Truc and Pierre-Edouard Paquet, acting at the direction of KFI, defected from SSI and took with them a substantial amount of confidential and proprietary information.[3] *See* Gruel Decl., Exh. A (Truc Complaint); *See also* Gruel Decl., Exh. C (Paquet Complaint).

---

[3] Because Paquet resides outside of the United States, SSI filed separate lawsuits. It filed the Truc complaint in Illinois state court and identified Paquet as a "relevant non-party." The federal complaint referred to Paquet as a citizen of France and focused on Paquet's activities.

**PETITION FOR WRIT OF ERROR *CORAM NOBIS* TO REOPEN SENTENCING AND VACATE CUSTODIAL SENTENCE PURSUANT TO 28 U.S.C. §1651**
CASE NO. CR 08-0237 EMC

6

**7.** KFI and SSI settled both cases subject to a non-disclosure agreement, and to Petitioner's knowledge, no criminal charges were ever filed against Truc, Paquet, or KFI. *See* Gruel Decl., Exh. B (dismissal of Truc Complaint).

## V.

## ARGUMENT

**A.** **Writ relief is appropriate in this case; no other remedy is presently available to right the injustice at the heart of the current sentence.**

The Supreme Court and the Ninth Circuit "have long made clear that the writ of error *coram nobis* is a highly unusual remedy, available only to correct grave injustices in a narrow range of cases where no more conventional remedy is applicable." *United States v. Riedl*, 496 F.3d 1003, 1005 (9th Cir. 2007). Petitions for writs of error *coram nobis* are frequently used "to attack an unconstitutional or unlawful conviction in cases when the petitioner already has fully served a sentence." *Telink, Inc. v. United States*, 24 F.3d 42, 45-46 (9th Cir. 1994). The idea is that, once a defendant is confined in custody, he or she may file a traditional petition for writ of *habeas corpus* pursuant to *28 U.S.C. §2255*; however, after the defendant has been released from custody, a habeas petition is no longer permitted. Thus, the petition for writ of *coram nobis* "fills a very precise gap in federal criminal procedure." *Id*. Despite this common usage of it, the writ of error *coram nobis* is not expressly limited to situations in which an individual has served his or her sentence; its purpose is for use in situations for which there is no other available remedy. "Although Federal Rule of Civil Procedure 60(b) expressly abolishes the writ of *coram nobis* in civil cases, the extraordinary writ still provides a remedy in criminal proceedings where no other relief is available and sound reasons exist for failure to seek appropriate earlier relief." *Hirabayashi v. United States*, 828 F.2d 591, 604 (9th Cir. 1987).

**PETITION FOR WRIT OF ERROR *CORAM NOBIS* TO REOPEN SENTENCING AND VACATE CUSTODIAL SENTENCE PURSUANT TO 28 U.S.C. §1651**
CASE NO. CR 08-0237 EMC

7

Petitioner's case presents a procedurally analogous situation for which the petition for writ of error *coram nobis* should also be recognized as the appropriate mechanism by which to address the issues discussed below. As in the case of a petitioner who has already completed his or her sentence, Nosal, who is not yet in custody, has no other means by which to raise issues relating to the sentence imposed by the Court.[4] Just like those individuals who have already served their sentence and use the writ to challenge collateral consequences of their conviction, Nosal is out of custody, and, therefore, cannot presently file a §2255 motion. He faces an imminent order to serve one year and one day in prison. If he waits and files a §2255 petition after going into custody, he risks having to serve a substantial portion, or perhaps all, of his sentence before this Court could fully adjudicate the petition.

The Ninth Circuit has established four criteria for assessing the propriety of a petition for writ of error *coram nobis*: "(1) a more usual remedy is not available; (2) valid reasons exist for not attacking the conviction earlier; (3) adverse consequences exist from the conviction sufficient to satisfy the case or controversy requirement of Article III; and (4) the error is of the most fundamental character." *Hirabayashi*, *supra*, 828 F.2d at 604. These requirements are all met with respect to the present case.

First, as noted above, there is no "more usual remedy" available to Petitioner. He has been convicted and sentenced to one year and one day imprisonment, but has not yet served that sentence due to this Court's agreement that he should remain out on bail during the

_____

[4] Although the motion is arguably based on "newly discovered evidence," *Rule 33* of the *Federal Rules of Criminal Procedure* requires that motions for new trial based on such evidence be presented within three years "after the verdict or finding of guilty." *Fed. R. Crim. Pro. 33(b)(1)*. Thus, Nosal apparently cannot rely on a *Rule 33* motion to raise these issues.

**PETITION FOR WRIT OF ERROR *CORAM NOBIS* TO REOPEN SENTENCING AND VACATE CUSTODIAL SENTENCE PURSUANT TO 28 U.S.C. §1651**
CASE NO. CR 08-0237 EMC

8

appellate proceedings. He, therefore, cannot file a *section 2255* motion, and because more than three years elapsed since the verdict, a motion for new trial pursuant to *Rule 33* is also disallowed. Therefore, no other remedy is available to Nosal at this time.

Nosal could not have raised this issue any earlier. First, SSI filed the complaint against KFI at the end of March 2017. Nosal and his attorneys had no way of knowing before then that KFI was actively engaging in the same sorts of conduct that caused Mr. Nosal to resign in 2004 and for which Nosal was convicted. Moreover, by August 2017, the case was settled and SSI signed a non-disclosure agreement, making it even more difficult to acquire information about KFI's wrongdoing.

Because Nosal must still serve the custodial portion of his sentence, there is no question that there still exists a case or controversy within the meaning of Article III. Furthermore, the error for which Nosal seeks redress is clearly fundamental. As discussed in greater depth below, this Court imposed the sentence upon Petitioner specifically for its general deterrence value. Indeed, the Court and the Government agreed that Nosal was personally unlikely to ever reoffend and, therefore, that personal deterrence was not a consideration in the sentencing. The primary function of the sentence, the Court explained, was to deter other individuals and corporations from engaging in identical criminal conduct *after* this Court sentenced Nosal in 2013.

The error, therefore, is of the "most fundamental character" because it is manifestly improper to punish an individual for criminal activity and then permit the supposed victim, a multinational corporation, to turn around and engage in the same activity but in a more egregious manner. This is especially true when the Government argued, and the Court agreed,

**PETITION FOR WRIT OF ERROR *CORAM NOBIS* TO REOPEN SENTENCING AND VACATE CUSTODIAL SENTENCE PURSUANT TO 28 U.S.C. §1651**
CASE NO. CR 08-0237 EMC

9

that general deterrence was the only penological interest served by the imposition of a custodial sentence.

The four prerequisites for consideration of a petition for writ of error *coram nobis* are all met in this case. Petitioner has no other available remedy, could not have raised this issue previously, and will be unjustly imprisoned if this Court orders him to serve his sentence without considering KFI's own subsequent and substantially similar criminal behavior.

**B. Korn-Ferry engaged with impunity in conduct that was substantially similar— though decidedly more egregious—as that for which Nosal stands convicted; Korn-Ferry's unclean hands should necessitate a reconsideration of the sentence in this case, especially given that the principal consideration at sentencing—for both the Court and the Government—was general deterrence.**

At the time of sentencing, when the Court was considering whether to depart downward from the guidelines range of 15 to 21 months, the Court thoughtfully considered what would be an appropriate custodial sentence. Citing the need for general deterrence, the Court sentenced Nosal—an individual, not a corporate entity—to one year and one day for his leadership role in the conspiracy, which involved leaving KFI, encouraging other employees to leave KFI, setting up a new company, and using a remaining KFI employee to access the KFI Searcher database on three occasions to obtain "source lists."

As it turns out, KFI—the multinational corporation "victim" of Nosal's scheme— masterminded a nearly identical scheme just a few years later against one of KFI's leading competitors, SSI. KFI facilitated the defection of two SSI employees, who both left under fraudulent pretenses, taking with them valuable trade secrets, reports and other proprietary and confidential information that KFI then used in its own business. The only distinction between

**PETITION FOR WRIT OF ERROR *CORAM NOBIS* TO REOPEN SENTENCING AND VACATE CUSTODIAL SENTENCE PURSUANT TO 28 U.S.C. §1651**
CASE NO. CR 08-0237 EMC

10

Nosal's alleged conduct and that of KFI and its employees is that KFI's actions were more egregious.

1. **KFI and its employees, Truc and Paquet, committed the very same offenses for which Nosal was convicted and, yet, they have suffered no criminal consequences.**

The complaints SSI filed in 2017 describe criminal activity by KFI and its employees that is strikingly similar to the crimes for which Nosal was convicted. SSI is a well-established competitor of KFI within the automotive industry. *See* Truc Complaint, ¶ 48.[5] Two SSI employees, Truc and Paquet, left SSI to work for KFI, but before leaving, both stole numerous documents and highly sensitive and confidential materials to use at their new positions with KFI. *See* Truc Complaint, ¶¶ 52-72, 91-104.

Truc began working with SSI in 2008, overseeing the global search origination and execution for SSI's Global Automotive Practice. *See* Truc Complaint, ¶¶ 36-37. In that capacity, Truc was privy to substantial amounts of confidential and proprietary information that was integral to SSI's business. *See* Truc Complaint, ¶¶ 38-40. A couple years later, in 2010, Paquet started working in the Global Automotive Practice division of SSI. *See* Truc Complaint, ¶ 42. In his role at SSI, Paquet was also exposed to sensitive, confidential, and proprietary information. *See* Truc Complaint, ¶¶ 45-46. Both Truc and Paquet signed confidentiality agreements. *See* Truc Complaint, ¶¶ 23-31, 44.

---

[5] The facts presented herein related to KFI's theft of trade secrets and proprietary materials from SSI are drawn from the Complaint filed by SSI against Truc and KFI, a true and correct copy of which is attached as Exhibit A to the Declaration of Steven F. Gruel. The complaint SSI filed against Paquet and KFI corroborates the narrative detailed in the Truc Complaint. *See* Gruel Decl., Exh. C.

PETITION FOR WRIT OF ERROR *CORAM NOBIS* TO REOPEN SENTENCING AND VACATE CUSTODIAL SENTENCE PURSUANT TO 28 U.S.C. §1651
CASE NO. CR 08-0237 EMC

11

Truc, while still employed by SSI but with the intention to defect to KFI, actively encouraged Paquet to leave the company and work for KFI in their Global Automotive Practice. *See* Truc Complaint, ¶ 47. Before resigning, "Paquet began secretly and without authorization to copy and to remove various confidential materials and information from Spencer Stuart's computer systems and to appropriate such materials for use in his employment with Korn Ferry." *See* Truc Complaint, ¶ 52. In anticipation of his new role at KFI, Paquet emailed a number of confidential SSI documents to his personal email account in the days leading up to his departure. *See* Truc Complaint, ¶¶ 52-72. He also took steps to conceal his theft, such as deleting emails and files from his work-issued computer and the use of a personal USB device to obtain other documents. *See* Truc Complaint, ¶¶ 64-67. After he left SSI, Paquet personally emailed (while cc'ing Truc) a "candidate involved in an ongoing Spencer Stuart search for The Automotive Client." *See* Truc Complaint, ¶ 71.

Working directly with KFI, Truc arranged a scheme to leave SSI in such a way as to circumvent the non-solicitation obligations in his employment agreement. *See* Truc Complaint, ¶ 78. After orchestrating Paquet's defection to KFI, Truc submitted his resignation the day after Paquet. *See* Truc Complaint, ¶ 76. Truc indicated to the CEO of SSI that he intended to work for "The Automotive Client," but, in fact, Truc admitted this was just a ruse so he could "run out Spencer Stuart's non-competition election period." *See* Truc Complaint, ¶¶ 78-79. In fact, it was Truc's intention all along to join KFI, and KFI coordinated with Truc and Paquet to effectuate their defections from SSI. *See* Truc Complaint, ¶ 79. Truc officially joined KFI in March 2017, just two months after leaving SSI. *See* Truc Complaint, ¶ 83. After learning this,

**PETITION FOR WRIT OF ERROR *CORAM NOBIS* TO REOPEN SENTENCING AND VACATE CUSTODIAL SENTENCE PURSUANT TO 28 U.S.C. §1651**
CASE NO. CR 08-0237 EMC

12

SSI attempted to enforce the remainder of Truc's non-competition restriction, but Truc and KFI disregarded SSI's orders. *See* Truc Complaint, ¶¶ 83-85.

Like Paquet, Truc, knowing he was leaving SSI for KFI, began sending confidential documents to his own personal email address in an effort to appropriate them for use at KFI. *See* Truc Complaint, ¶ 91. Truc sent numerous confidential and proprietary reports containing information about potential candidates and search prospects to his personal email account. *See* Truc Complaint, ¶¶ 92-100. Truc then used and disclosed this information to KFI during the course of his employment. *See* Truc Complaint, ¶¶ 100-104. Truc's and Paquet's usage of stolen confidential knowledge of SSI's clients and contacts put "SSI's legitimate protectable interests at grave risk, including confidential information; trade secrets; goodwill; and customer relationships, particularly in its Global Automotive Practice." *See* Truc Complaint, ¶¶ 86-88. Furthermore, KFI subsequently worked with Truc to persuade other SSI employees to resign and work for KFI instead. *See* Truc Complaint, ¶¶ 105-114.

There are many obvious similarities between KFI's active underhanded recruitment of Truc and Paquet and the crimes for which Nosal and his three codefendants were convicted. There are many factors that make KFI's actions with respect to SSI far more serious and yet, notwithstanding the egregiousness of KFI's behavior, the Government neither investigated nor brought any charges against KFI as a corporation or Truc and Paquet as individuals.

**2. Because the Court and the Government both agreed that Nosal was highly unlikely to commit crimes in the future, the Court's stated purpose behind imposing a custodial sentence was general deterrence; KFI's subsequent actions necessitate a reexamination of that decision.**

The reason this revelation about KFI's subsequent conduct is relevant is because at Nosal's sentencing hearing, the Government and the Court focused ***only on general deterrence***

**PETITION FOR WRIT OF ERROR *CORAM NOBIS* TO REOPEN SENTENCING AND VACATE CUSTODIAL SENTENCE PURSUANT TO 28 U.S.C. §1651**
CASE NO. CR 08-0237 EMC

13

as the rationale for imposing a custodial sentence. The crimes at issue in this case were corporate in nature, but unlike many other "white collar" crimes, the victims were not consumers; there was no direct harm to the public that arose from Nosal's conduct. The only harm that was contemplated was to KFI, primarily with respect to the amount of time some KFI employees spent at work investigating the unauthorized use of Searcher and identifying those likely responsible for it. There was no quantifiable theft or loss. Indeed, throughout the protracted sentencing proceedings, Nosal's attorney argued strenuously that there was no quantifiable loss and that, even if there was, the Court should refrain from imposing a custodial sentence. *See* Dkt. 499; RT 1/8/14 at 43-47. The Government, on the other hand, asserted that, based on its loss calculations, the sentencing range should have been upwards of 33 months, but asked for 27 months instead[6]. *See* Dkt. 476, p. 15-16.

The Court took a middle path, concluding that the recommended sentence under the guidelines was 15 to 21 months; however, the Court then inquired from the parties whether it should impose a lower sentence based on the specific considerations of the case. RT 1/8/14 at 41-42. The Court specifically noted Nosal's lack of a criminal history, his generosity toward his employees and other people around him, his background and work ethic, and other positive attributes. RT 1/8/14 at 42. But the Court balanced these myriad favorable facts against the need for general deterrence. During defense counsel's argument, the Court interjected with the question, "On the other hand, what message does it send if there's no prison time for a

---

[6] The loss calculation for purposes of the guidelines drove the setting of a sentencing range in this case. It was a subject of intense debate between the parties. The immense variability in the sentencing range based upon different interpretations of the amount of loss vividly illustrates the ambiguity in the guidelines governing this sort of offense, leading to an unsettling degree of malleability in the sentencing analysis.

**PETITION FOR WRIT OF ERROR *CORAM NOBIS* TO REOPEN SENTENCING AND VACATE CUSTODIAL SENTENCE PURSUANT TO 28 U.S.C. §1651**
CASE NO. CR 08-0237 EMC

14

deliberate act of theft?" RT 1/8/14 at 46. The theme of general deterrence ran through the entire sentencing colloquy and was the core focus of the Court and the Government.

AUSA Waldinger, speaking on the Government's behalf, agreed with the defense and the Court that it was highly unlikely that Nosal would offend in the future: "I have no doubt that Mr. Nosal is not going to commit any more federal crimes in his life." RT 1/8/14 at 49:4-6. Nevertheless, he argued for a custodial sentence of more than one year *because of the need for general deterrence.* RT 1/8/14 at 48-50. Using strong language, the Government repeatedly emphasized the need for general deterrence in setting the sentence: "Cases involving white collar defendants present a special opportunity for this Court to achieve the goal of general deterrence. A prison sentence for the conduct in this case will serve as a powerful deterrent against the commission of such crimes by others." RT 1/8/14 at 49:11-15. AUSA Matthew Parella, who supervises the computer hacking intellectual property unit, also addressed the Court at the hearing and he, too, focused on general deterrence, stating, "The issue of general deterrence that Mr. Waldinger mentioned is tremendously important." RT 1/8/14 at 51:15-17. Parella emphasized this point, describing the effect he believed the sentence would have on other corporations, particularly those in Silicon Valley: "[T]the sentence that you give today will go through Silicon Valley like a bell. It will be known throughout the valley. And it is a unique opportunity for the Court to send a message, which a legitimate purpose of sentencing is general deterrence." RT 1/8/14 at 51:20-24.

As AUSA Waldinger put it, "At the end of the day, ***stealing is stealing***, whether you used a computer or a crowbar and whether you steal documents or data or dollars. It's stealing." RT 1/8/14 at 48:22-24 (emphasis added). Unless, that is, you are a multinational corporation

**PETITION FOR WRIT OF ERROR *CORAM NOBIS* TO REOPEN SENTENCING AND VACATE CUSTODIAL SENTENCE PURSUANT TO 28 U.S.C. §1651**
CASE NO. CR 08-0237 EMC

15

called Korn Ferry, in which case, the Government doesn't even bother investigating, much less bringing charges.[7]

When the Court announced the custodial sentence, it did so after giving the guidelines recommendation "serious consideration" and applying the factors from *18 U.S.C. §3553*. RT 1/8/14 at 59. The Court recognized the "extraordinary level of support" that Nosal had from friends and family, the lack of any criminal history, the generosity he is known to exhibit toward those around him, and the fact that he worked his way up from nothing to become very successful. RT 1/8/14 at 59:20-60:6. The Court reiterated that personal deterrence was not an issue in the case: "I don't think there is a need, and the Government concedes that they are convinced that Mr. Nosal will not commit a further crime. So in terms of the need for personal deterrence, that is not here. I am convinced that Mr. Nosal has learned a lesson and will not commit this or any other crime of any serious nature." RT 1/8/14 at 61:3-8. Instead, the Court exclusively focused on "deterrence to others, not just deterrence to this particular – or disablement of this particular defendant." RT 1/8/14 at 61:10-12. With that lone objective in mind, the Court sentenced Nosal to one year and one day to be followed by three years of supervised release, a $60,000 fine, and 400 hours of community service, which the Court acknowledged was more "meaningful" than time in custody in terms of the rehabilitation and retribution value: "I would rather see Mr. Nosal use his talents to help those who are disadvantaged." RT 1/8/14 at 61-62, 64.

---

[7] The Nosal defense filed a *Brady* motion herewith.  Contrary to the government's belief, its *Brady* obligation does not end with a conviction; *Brady* equally applies and continues onto the sentencing phase.

**PETITION FOR WRIT OF ERROR *CORAM NOBIS* TO REOPEN SENTENCING AND VACATE CUSTODIAL SENTENCE PURSUANT TO 28 U.S.C. §1651**
CASE NO. CR 08-0237 EMC

16

Given that general deterrence was the only factor weighing in favor of the imposition of a custodial sentence, it is significant that the victim in this case, KFI committed the same sorts of offenses shortly after this Court sentenced Nosal. Such illegal action by KFI, given the emphasis placed on the need for general deterrence, is beyond hypocritical. In light of that fact that it was KFI that initiated the prosecution of David Nosal, assisted with its execution, and was essentially driving these proceedings, it would be outrageous to send Nosal to prison while KFI's own criminal behavior goes completely unchecked.[8]

3. **The Court selected one year and one day, at least in part, based upon the Government's reference to a 2004 case decided by Judge Hamilton, but in light of KFI's actions with respect to SSI and the factual basis of that 2004 case, a one year sentence in the present case is unreasonable.**

After concluding that some custodial sentence was necessary to effectuate the goal of general deterrence, the Court balanced that goal against the well-established principle that it should impose "the least restrictive imprisonment that accomplishes the objectives." RT 1/8/14 at 50:5-6. The Court sought input from the Government as to what it believed would be the least restrictive sentence to effectuate the goal of general deterrence. Responding to the Court, AUSA Waldinger to establish a benchmark cited a case in which the Honorable Judge Hamilton (*United States v. McKimmey*, Case No. 04-cr-00118-PJH) sentenced a defendant to

---

[8] Amazingly, this is not KFI's first attempt to poach of employees and steal proprietary information from SSI. At trial, on April 16, 2013, two former KFI employees testified on cross-examination (conducted by undersigned counsel) that they witnessed former SSI executives, Bob Damon and Joe Griesedieck, possess SSI materials with them at KFI. Mark Jacobson further testified that he saw them with SSI "Board Bible" (a blueprint on how to get and keep executive search clients). Michael Louie testified that Barbara Fletcher, Mr. Damon and Mr. Griesedieck's administrative assistant, showed him a CD entitled "Spencer Stuart Data Base." RT; Volume 6; 1216-1218; 1259 - 1260.

**PETITION FOR WRIT OF ERROR *CORAM NOBIS* TO REOPEN SENTENCING AND VACATE CUSTODIAL SENTENCE PURSUANT TO 28 U.S.C. §1651**
CASE NO. CR 08-0237 EMC

17

1  12 months in custody. RT 1/8/14 at 50:13-25. Defense counsel countered, explaining that the

2  loss in that case was far more significant.

3      In actuality, based on two news articles that the Government cited in its sentencing

4  memorandum (*see* Dkt. 461 at 9:5-12), the cases are worlds apart. According to those news

5  articles[9], the defendants' criminal actions in the *McKimmey* case were more widespread, caused

6  a much greater intrusion, and led to the theft of far more valuable information:

7      Court documents from a related 2002 civil case against Business Engine brought
       by Niku, now owned by Computer Associates International, reveal the extent of
8      the crime and how it was perpetrated. According to that complaint, Business
       Engine illegally obtained confidential account names and passwords that
9      enabled broad administrative access to Niku's computers over the Internet. Both
       companies sell Web-based project management software.
10
       From October 2001 until July 2002, Business Engine used the passwords to gain
11     unauthorized access to Niku's systems more than 6,000 times and downloaded
       over 1,000 confidential documents containing trade secrets, the complaint
12     alleged. The stolen documents included technical specifications, product
       designs, prospective customers, customer proposals, client account information
13     and pricing.

14  *See* Gruel Decl, Exh. H. This was a secret plot to *steal* passwords to the company's entire

15  computer system, including ones that authorized administrative access. Unlike the present case,

16  which involved a current employee accessing (on three occasions) KFI's database just to obtain

17  particular source lists, McKimmey and his co-conspirators stole passwords and used them to

18  hack into and obtain external access into Business Engine's entire computer system, a far more

19  pernicious act. And McKimmey and his confederates did so on *more than 6,000 occasions*,

20  while Nosal only accessed the Searcher database three times. Finally, the scope of the items

21

22  [9] Counsel attempted to access the case on PACER, and although the case is accessible, the particular
    filings are not. AUSA Waldinger could provide the plea agreement and other documents, if this Court
23  wishes to review the factual bases for the convictions.

**PETITION FOR WRIT OF ERROR *CORAM NOBIS* TO REOPEN SENTENCING AND VACATE
CUSTODIAL SENTENCE PURSUANT TO 28 U.S.C. §1651**
CASE NO. CR 08-0237 EMC

stolen by McKinney is far more damaging to the victim because it included items such as technical specifications and product designs. The Government was able to assess the value of the stolen information at more than $200,000, which is far more than the present case. *See* Gruel Decl, Exh. H. In fact, the Government was unable to actually quantify the actual value of the source lists in this case, a problem that led to a great deal of litigation surrounding the amount of loss needed to determine the appropriate Guideline range.

Significantly, while the criminal acts at issue in *McKimmey* were undeniably more culpable and damaging than Nosal's, the Court imposed an identical custodial sentence because the Government cited the *McKimmey* case and the need for general deterrence. The fine assessed against McKimmey, however, was dramatically lower than the one leveled against Nosal: McKimmey only had to pay $3,000, as opposed to $60,000.

Taking into consideration that the Government cited the *McKimmey* case as being a relevant benchmark to assess the deterrent value of a one year sentence, it is very significant that, in addition to the clear points of distinction between that case and the present one, the alleged victim in the present case, KFI, has engaged in undeterred criminal activity, as shown by the SSI complaint. This further supports the need to reevaluate the underlying basis for the custodial portion of the imposed sentence following the revelation of KFI's unprosecuted illegal misconduct.

### 4. It is fundamentally unjust to permit a multinational corporation and its employees to flagrantly violate the law with impunity while holding Mr. Nosal personally accountable.

One contrasting characteristic of the present case when compared against the SSI lawsuits is the fact that, here, the defendant was an individual and the victim, a multinational

**PETITION FOR WRIT OF ERROR *CORAM NOBIS* TO REOPEN SENTENCING AND VACATE CUSTODIAL SENTENCE PURSUANT TO 28 U.S.C. §1651**
CASE NO. CR 08-0237 EMC

19

corporation. The SSI lawsuits describe corporate subterfuge in which one multinational corporation, KFI, persuaded multiple high level SSI employees to leave SSI and come to work for KFI, bringing with them a wealth of confidential and proprietary information. Unlike the present case, those lawsuits were quietly settled, civilly, between the two major corporations, with no apparent adverse consequences for any of the individuals involved. Indeed, both of the primary individuals described in the Truc Complaint seem to be thriving in their new roles with KFI.[10]

That case was settled the way most corporate disputes are settled: with a monetary payment. KFI tried to weasel some employees and trade secrets away from SSI but got caught and had to pay some additional money to SSI. In the end, the impact on KFI and SSI was likely negligible. As they say, litigation is simply part of the cost of doing business.

Basic principles of fairness and justice mandate the question: Why should Nosal be treated any differently? After all, Nosal was an individual from extremely modest beginnings who worked his way up the Korn Ferry ladder before setting out to start his own company to compete with giants like SSI and KFI—a move that should be lauded for its boldness, not punished. It is profoundly unjust that David Nosal, the proverbial "little guy," would suffer such a harsh penalty while this massive corporation at the top of the industry committed the very same crimes with impunity. It would be like sentencing a street level drug dealer to prison

---

[10] Francois P. Truc is featured on Korn Ferry's website, identified as a "Senior Client Partner for the Automotive Practice" in Korn Ferry's Chicago office. *See* https://www.kornferry.com/consultants/francoistruc; *see also* Gruel Decl., Exh. D. Paquet was not a named defendant in the *Spencer Stuart v. Truc* case; however, SSI filed a separate federal complaint naming Paquet as defendant and alleging that Paquet is a citizen of France and working for Korn Ferry in its Global Automotive Practice. *See* Complaint, ¶ 9. According to his LinkedIn page, Paquet remains employed by KFI. *See* Gruel Decl., Exh. D.

**PETITION FOR WRIT OF ERROR *CORAM NOBIS* TO REOPEN SENTENCING AND VACATE CUSTODIAL SENTENCE PURSUANT TO 28 U.S.C. §1651**
CASE NO. CR 08-0237 EMC

while capturing the head of a powerful cartel, but allowing him to go free instead of prosecuting him.

Significantly, the Government brought these charges against Nosal, as an individual, not against his company. This decision underscores the injustice at issue. As an individual, Nosal is far less capable of weathering these charges. Indeed, the billing records indicate that KFI enlisted the assistance of a highly regarded law firm and purportedly spent nearly $1 million on legal fees related to this case. Nosal has had to withstand these charges as an individual, without the benefit of a corporate legal war chest at his disposal.

Furthermore, incarcerating Nosal will have collateral consequences for his company and his employees. KFI, Truc, and Paquet endured no meaningful consequences for their actions, which were more nefarious than Nosal's. If this Court proceeds to send Nosal to prison, even for a year, it will have repercussions that will affect totally innocent people who work for Nosal's company, which is a far more modest operation than KFI's. Again, this is something that KFI and its employees did not have to suffer. If anything, KFI's actions benefitted the company by bringing in new high level employees who had access to their competitor's confidential information and trade secrets.

**5. KFI's activities in this case and with respect to SSI are anti-competitive and antithetical to the basic economic principles underlying the laws of this country.**

In this case, KFI essentially harnessed the power of the United States Attorney's Office to suffocate newly emerging competition. This was a situation that should have been settled civilly. The set of circumstances in this case was unique inasmuch as, despite the acknowledgement that this sort of activity is commonplace, the Court elected to use Nosal as an

PETITION FOR WRIT OF ERROR *CORAM NOBIS* TO REOPEN SENTENCING AND VACATE CUSTODIAL SENTENCE PURSUANT TO 28 U.S.C. §1651
CASE NO. CR 08-0237 EMC

21

example to others: " . . . although one might argue that this is done commonly, it's done all the time in his field, it is a violation." RT 1/8/14 at 60:9-11. During the sentencing proceedings, the Government was unable to provide any case completely analogous to the current one, and, in fact, the Honorable Judge Stephen Reinhardt agreed with Nosal that his actions did not violate the CFAA. *See Nosal*, *supra*, 844 F.3d at 1058 ("Nosal may have incurred substantial civil liability, and may even be subject to criminal prosecution, but I do not believe he has violated the CFAA, properly construed.")

KFI's clear intention was to stifle Nosal's efforts to establish a company with which KFI would ultimately have to compete. KFI initially sought to show only that Nosal was acting in violation of the non-compete clause in his contract; it was later that KFI suspected that Nosal and his confederates might be accessing KFI's data. Make no mistake, KFI wanted to bring Nosal down, to prevent him from starting a company that might interfere with KFI's business. It was the same anti-competitive impulse that caused KFI to steal employees and confidential information from SSI. To be clear, this prosecution isn't about the three source lists or the vindication of KFI's rights; it is about KFI's desire to rid the marketplace of its competitors. As such, it undermines the core fundamentals of capitalism upon which our economy is based.

Moreover, Nosal's rise through the ranks of the industry is a tangible manifestation of the American Dream. He grew up in Sheboygan, Wisconsin, where he lived with his adoptive parents in a decidedly working class environment. He put himself through college and then entered the executive search industry, working his way up until he became one of the most prominent consultants in the field. After decades of working for some of the companies in the field, including KFI, Nosal decided to strike out on his own. RT 1/8/14 at 53-57. This is

**PETITION FOR WRIT OF ERROR *CORAM NOBIS* TO REOPEN SENTENCING AND VACATE CUSTODIAL SENTENCE PURSUANT TO 28 U.S.C. §1651**
CASE NO. CR 08-0237 EMC

22

precisely the sort of competitive drive that should be fostered in our economy. Of course, as

with KFI's actions toward SSI, monetary compensation for wrongdoing is appropriate. In this

case, Nosal suffered more than merely a monetary setback; he received six felony convictions.

But he should not be sentenced to prison when the very corporation named as the victim in this

case turned around and committed the same acts toward another competitor and suffered no

significant consequences whatsoever.

## VI.

## CONCLUSION

Fairness is the basic goal of American jurisprudence. In light of the recently uncovered

illegal actions by global corporate giant KFI against its competitor SSI, granting the writ of

error *coram nobis* it the only legal vehicle available to achieve fairness and justice in this case.

This Court should grant Nosal's petition and resentence him, striking the term of imprisonment

the Court previously imposed.

DATED:   January 17, 2018                                  Respectfully submitted,


                                                     /s/   Steven F. Gruel
                                                    STEVEN F. GRUEL
                                                    Attorney for Petitioner
                                                    DAVID NOSAL

**PETITION FOR WRIT OF ERROR *CORAM NOBIS* TO REOPEN SENTENCING AND VACATE
CUSTODIAL SENTENCE PURSUANT TO 28 U.S.C. §1651**
CASE NO. CR 08-0237 EMC

23