# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | Case No. 08-cr-00237-EMC-1 |
|---|---|
| Plaintiff, | |
| v. | **ORDER RE RESTITUTION** |
| DAVID NOSAL, | Docket Nos. 628, 634, 639 |
| Defendant. | |

Defendant David Nosal was found guilty of, *inter alia*, violating the Computer Fraud and Abuse Act ("CFAA"). This Court originally sentenced Mr. Nosal to one year and one day in prison, three years of supervised release, a $60,000 fine, a $600 special assessment, and approximately $828,000 in restitution to Korn/Ferry International ("KFI"), the victim of the crimes. The restitution award had three components: (1) $27,400 represented KFI's costs incurred in attempting to ascertain the nature and scope of Mr. Nosal's misconduct; (2) approximately $247,700 represented the value of KFI's employee time spent participating in and assisting the government's investigation and prosecution; and (3) approximately $595,800 represented the attorney's fees incurred by KFI in aid of the investigation or prosecution of the offense. With respect to (3), the government had asked for a significantly higher amount – approximately $964,900 – but the Court reduced the fee component "for invoices 'not demonstrably reasonably necessary to the government's investigation and prosecution,' for 'staffing inefficiencies,' and for 'time spent on "press" and file/order reviewing charges.'" *United States v. Nosal*, 844 F.3d 1024, 1046 (9th Cir. 2016).

Mr. Nosal appealed the conviction and sentence to the Ninth Circuit. In December 2016, the Ninth Circuit largely affirmed this Court's rulings but remanded with respect to the restitution

award – more specifically, component (3) above related to attorney's fees. On remand, the government reduced its request to approximately $458,000 while Mr. Nosal argued that restitution for fees should be $0 but, at the very least, no more than approximately $55,000. The Court held a hearing but did not decide the issue at that time, instead giving the parties additional guidance and then directing them to meet and confer. The parties have now met and conferred and their dispute has narrowed. The government now asks for an award of approximately $183,000 (covering an eight-year period, from July 2005 to January 2014); Mr. Nosal asks that the award be limited to approximately $60,000. The parties have provided a spreadsheet which shows, *inter alia*, the attorney time entries, where the government seeks compensation, and where Mr. Nosal objects.

Having considered the Ninth Circuit's remand order, the parties' post-remand briefs, the spreadsheet, the oral argument of counsel, and all other evidence of record, the Court hereby finds that the proper amount for restitutionary attorney's fees is $163,766.18.

## I. <u>DISCUSSION</u>

A. <u>Ninth Circuit Remand Order</u>

Restitution in the instant case is governed by the Mandatory Victim Restitution Act ("MVRA"). *See* 18 U.S.C. § 3663A. The Act provides in relevant part that a "court shall order, in addition to . . . any other penalty authorized by law, that the defendant make restitution to the victim of the offense." *Id.* § 3663A(a)(1). Victim is defined as one "directly and proximately harmed as a result of the commission of [the] offense." *Id.* § 3663A(a)(2). "The order of restitution shall require that [the] defendant . . . reimburse the victim for lost income and necessary child care, transportation, and other expenses incurred during participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense." *Id.* § 3663A(b)(4). "Any dispute as to the proper amount or type of restitution shall be resolved by the court by the preponderance of the evidence." *Id.* § 3664(e).

In its remand order, the Ninth Circuit noted that "other expenses" for purposes of § 3663A(b)(4) can include attorney's fees. However, there are certain parameters:

- "[T]he fees must be the direct and foreseeable result of the defendant's conduct." *Nosal*, 844 F.3d at 1047.

- It must have been "'reasonably necessary for [the victim] to incur attorneys' . . . fees to participate in the investigation or prosecution of the offense.'" *Id.*
- The fees must be reasonable – *e.g.*, there should be no award for "duplicate effort" or "time that is disproportionate to the task." *Id.* at 1048.
- The fees must reflect participation in the investigation or prosecution of the offense – thus, the attorneys' work is not a substitute for the work of the prosecutor and it does not duplicate the work of the prosecutor. *See id.* (regarding the latter, referring to a "shadow prosecutor").

With regard to Mr. Nosal's case specifically, the Ninth Circuit stated that,

> [e]ven after reduction [*i.e.*, by this Court], the total amount of fees awarded is striking, particularly given that the trial ultimately involved only three discrete incidents of criminal behavior. Although resulting in multiple counts, at bottom the events were temporally circumscribed and limited in scope. We note that a highly disproportionate percentage of the fees arose from responding to requests and inquiries related to sentencing, damages, and restitution. The reasonableness of the fees needs to be reexamined to consider (i) whether the sizeable fee related to restitution matters was reasonable; (ii) whether there was unnecessary duplication of tasks between [KFI] staff and its attorneys since the [district] court awarded a substantial sum [almost $250,000] for the time of [KFI] employees; and (iii) whether the outside attorneys were substituting or duplicating the work of the prosecutors, rather than serving in a participatory capacity.

*Id.*

B. Categories of Disputes

As indicated above, the parties have significantly narrowed their dispute regarding restitutionary attorney fees, with the governing now asking for an award of approximately $183,000 and Mr. Nosal asking that the award be limited to approximately $60,000. The Court has reviewed the spreadsheet submitted by the parties, which reflects each time entry in dispute. Based on the Court's review of the spreadsheet, the subject matters of the disputes largely fall into one of the following categories

(1) Time spent on responding to government subpoenas.

(2) Time spent following up on issues identified by the USAO or FBI.

(3) Time spent in conferences with Ms. Briski (a KFI employee).

3

(4) Time spent attending trial.

(5) Time spent on post-trial matters such as loss and restitution.

Below the Court addresses each category. The Court then addresses some disputed time entries that do not fall into any of the above categories.

C.  Time Spent on Responding to Government Subpoenas

Mr. Nosal challenges attorney time spent on responding to government subpoenas on multiple grounds: (1) the formality of a subpoena was unnecessary; (2) KFI did not need the assistance of the O'Melveny law firm ("OMM") to respond to the subpoenas; (3) the time spent was excessive; and (4) at least some of the time was not spent on advancing or aiding the investigation/prosecution but rather was spent on protecting KFI's interests.

Most of these arguments have little or no merit. For example, whether the formality of a subpoena was necessary was not a matter within KFI or its attorneys' control. Even if KFI was willing to cooperate with the government, it was the government's decision as to whether a subpoena was necessary, and the government reasonably issued subpoenas if only to establish a formal record of what information was being requested from KFI.[1]

As for the contention that KFI did not need attorney assistance in responding to the government's requests, the question is whether attorney assistance was *reasonably* necessary. Given that KFI was being asked by the government to assist with a criminal matter, it was reasonably necessary for KFI to hire an attorney. Indeed, the Ninth Circuit has indicated that hiring an attorney to help respond to a government subpoena is reasonably necessary. *See United States v. Gordon,* 393 F.3d 1044, 1057 (9th Cir. 2014) (holding that "[t]he record demonstrates that Cisco's investigation costs were incurred in response to five grand jury subpoenas and a number of government requests requiring Cisco to analyze vast amounts of documentation and electronic information"; adding that "[defendant] purposefully covered his tracks as he concealed his numerous acts of wrongdoing from Cisco over a period of years" and, "[a]s the victim, Cisco cannot be faulted for making a concerted effort to pick up his trail and identify all the assets he

---

[1] Of course, even if no subpoenas were issued and the government simply made informal requests for information, KFI would still have had to spend time looking for the information requested.

4

took amid everything he worked on").

Mr. Nosal's assertion that the time spent on responding to subpoenas was excessive fares no better. Mr. Nosal seems to be complaining with respect to two subpoenas that were issued – one issued in or about late 2009 and the other in or about April 2013.

For the 2009 subpoena, it appears that OMM spent time on responding during the period November 2009-January 2010. *See* Spreadsheet, pp. 17-22. Mr. Nosal claims that the fees incurred during this time were about $34,000, but the Court calculates a slightly smaller amount – around $30,000 (taking into account the fact that not all of the time entries had to do with the subpoena). More important, the Court calculates the hours spent on the subpoena as about 45 hours total. As a facial matter, it is not clear why this number of hours is excessive. Moreover, Mr. Nosal has not provided any evidence indicating that the subpoena was very narrow in scope, which might suggest that the job could have been done in fewer than 45 hours.

For the April 2013 subpoena, *see* Spreadsheet, pp. 35-36, there is likewise no indication that the time spent in responding was excessive. OMM incurred about $5,000 in fees, representing approximately 7 hours of work.

While the Court does not find most of Mr. Nosal's arguments persuasive, there is one that has some merit. More specifically, Mr. Nosal points out that the predicate for restitution under the MVRA is generally characterized as that which aids or advances the investigation/prosecution – as opposed to, *e.g.*, protecting the victim's self-interest. *Compare United States v. Cuti*, 778 F.3d 83, 93 (2d Cir. 2014) (stating that "victim expenses that are recoverable as restitution . . . are expenses the victim was required to incur to advance the investigation or prosecution of the offense") (internal quotation marks and emphasis omitted); *United States v. Waknine*, 543 F.3d 546, 559 (9th Cir. 2008) (stating that, "[o]n remand, the district court may only award restitution of travel expenses and investigation costs, including attorneys' fees, if the government provides sufficiently detailed evidence to demonstrate by a preponderance of the evidence that these costs were incurred by Hadad and Keyulian in aid of Waknine's investigation or prosecution, and that such expenses and costs were reasonably necessary"),*with id.* (noting that "there are differences between the investigation costs incurred by Cisco in *Gordon* and the investigation costs incurred

5

by the victims here" in that, "[u]nlike the attorneys' fees in *Gordon*, which were incurred exclusively from the document review required to track the fraud, the attorneys' fees incurred by Hadad and Keyulian were in part, if not entirely, incurred to protect themselves from prosecution"); *see also Carpenter*, 2017 U.S. Dist. LEXIS 100969, at *12 (stating that, "[w]hile Bunge had the right to act to protect its own interests, the U.S. Attorney has not shown that Thompson Coburn's efforts were necessary expenses incurred to advance the investigation or prosecution or were not largely duplicative of the U.S. Attorney's efforts"). According to Mr. Nosal, here, the time spent on responding to the subpoenas reflected not just work that aided or advanced the investigation/prosecution but also work that was done to protect KFI's self-interest.

Acknowledging this argument, the government has reduced some of the time spent specifically on responding to subpoenas – *e.g.*, for any time entry that reflects time was spent on preparing objections to the subpoenas, the government took a discount. *See, e.g.*, Spreadsheet, p. 21 (time entry dated 01/10/2010) ("[r]educed by one-half to account for 'objections' to subpoena"). But Mr. Nosal argues that this discount was not enough. He maintains that, even if a time entry related to a subpoena does not *explicitly* refer to objections, there is still *implicitly* an objection component to that time entry. For example, for a given document review, part of that document review will be informed by the objections made to the subpoena. At the hearing, the government essentially conceded that this argument has some validity, and the Court agrees. Accordingly, the Court shall apply a further discount to the time spent on responding to the subpoenas. Considering that the government has already discounted the explicit time spent on objections, the Court finds that a 20% overall discount to the remaining time is appropriate. The discount should be larger than a "haircut" because, as Mr. Nosal argues, there is an objection component to all work done in relation to a subpoena. However, a larger discount is not warranted because there is nothing to indicate that the objections made were broad in scope or that many documents were withheld based on objections. Applying a 20% to the approximately $30,000 spent on responding to subpoenas, the Court shall reduce the restitutionary fee award by **$6,000**.

D. <u>Time Spent Following Up on Issues Identified by the USAO or FBI</u>

There are many time entries in the spreadsheet similar to the following:

- 10/24/2006: Review and analyze documents in response to issues raised by C. Sadlowski [FBI]; prepare summary of same.
- 01/09/2007: Conference with K. Waldinger [AUSA] and C. Sadlowski [FBI] . . . ; Follow up on issues raised by K. Waldinger and C. Sadlowski including review of documents.
- 03/07/2007: . . . Review/analyze documents in conjunction with requests for information from C. Sadlowski [FBI]; . . . Multiple conferences with C. Sadlowski regarding investigation and additional information needed by FBI from Korn/Ferry.
- 03/08/2007: Review/analyze documents in response to request from C. Sadlowski [FBI]; Review/analyze and revise documents from M. Briski [KFI] for C. Sadlowski.
- 04/02/2007: . . . Review/analyze documents and emails as a follow-up to conference with C. Sadlowski [FBI].
- 07/18/2007: Review/analyze documents to respond to questions raised by C. Sadlowski [FBI].

All of the above entries reflect that OMM spent time doing work in response to issues raised by the USAO or FBI.[2] Mr. Nosal argues that these entries should not count toward the restitutionary award for two main reasons: the entries are vague and thus it is not clear that (1) the time spent was necessary for the investigation/prosecution and/or (2) the time was not substitute prosecutorial work.

While the Court is not entirely unsympathetic to Mr. Nosal's arguments, it rejects them. It is more likely than not that the time spent was necessary given that KFI/OMM was doing work in response to the government's prompting. Thus, even though the precise subject matters of the "issues raised" by the USAO or FBI were not identified in the time entries, they may still fairly be deemed necessary to the investigation since that work was initiated by the government. At the hearing, Mr. Nosal suggested that the Court should give little weight to the fact of government prompting. But the government is in the best position to determine what is needed for the

---

[2] In this respect, the time entries are like the subpoena time entries.

7

investigation/prosecution. Moreover, contrary to what Mr. Nosal argues, the Ninth Circuit remand order does not support him on this point. In its remand order, the Ninth Circuit simply expressed a concern that "a highly disproportionate percentage of the fees arose from responding to requests and inquiries related to sentencing, damages, and restitution." *Nosal*, 844 F.3d at 1048. This was merely a concern about the size of the fee, *i.e.*, whether it was excessive in context. *See id.* (directing this Court to consider "whether the sizeable fee related to restitution matters was reasonable"). This was not a commentary about whether work was necessary for the investigation/prosecution. To the extent Mr. Nosal further argues that it was not reasonably necessary for KFI to incur fees to participate in the investigation/prosecution in this way, the Court does not agree. As stated above, it was reasonably necessary for KFI to seek attorney assistance given that it was being asked by the government to help with a criminal matter.

Second, it is a fair inference that the work being done by OMM was not substitute prosecutorial work in that, more likely than not, OMM had a "value added" role here. For example, it was reasonable that the initial collection, review, and analysis of documents was performed by OMM because OMM had access to, knowledge of, and/or experience with its client that the prosecutors did not. Ultimately, the work done by OMM here was no different from the work OMM was doing to help respond to the subpoenas.[3]

E. <u>Time Spent in Conferences with Ms. Briski</u>

A number of time entries are similar to those below:

- 10/24/2006: . . . conferences with M. Briski [KFI] regarding same [*i.e.*, in response to issues raised by C. Sadlowski (FBI)].
- 03/05/2008: Conference with M. Briski [KFI] regarding issues raised by K. Waldinger [ASUA].
- 06/24/2008: . . . Conference with M. Briski [KFI] regarding United States attorney's office subpoena.

---

[3] The Court also notes that, if the prosecutors had worked directly with KFI employees, that would more than likely have added on to the time the KFI employees spent on participation in the investigation/prosecution.

8

Mr. Nosal challenges these time entries on two main grounds: (1) OMM was doing substitute prosecutorial work here (*i.e.*, the prosecutor could have worked with Ms. Briski directly) and (2) KFI has already been compensated for time spent by Ms. Briski (*i.e.*, as suggested by the Ninth Circuit's remand order, this was an unnecessary duplication of tasks between KFI staff and its attorneys).

As above, the Court is not unsympathetic to Mr. Nosal's arguments but nevertheless rejects them. While the prosecution theoretically could have worked with Ms. Briski directly, it is more likely than not that the prosecution had OMM work with Ms. Briski because of OMM's added value – *i.e.*, its access to, knowledge of, and experience with KFI. Moreover, there is nothing to suggest that there was any unnecessary duplication of tasks here. Notably, the conferences with Ms. Briski seem to be necessitated by issues raised by the USAO or FBI. Thus, as above, this is basically like a subpoena situation – *i.e.*, the government makes a request for information and the response to the request for information is facilitated by the work of an attorney.

F. <u>Time Spent Attending Trial</u>

Mr. Nosal argues that all time spent by an OMM attorney (Ms. Bunzel) attending trial should not be included in the restitutionary fee award. In evaluating this challenge, the Court begins with the language of the MVRA. The relevant statute provides: "The order of restitution shall require that [the] defendant . . . reimburse the victim for *lost income* and necessary child care, transportation, and other expenses *incurred during* participation in the investigation or prosecution of the offense or *attendance at proceedings related to the offense*." 18 U.S.C. § 3663A(b)(4) (emphasis added). The italicized language above reflects that a victim has the right to attend trial and be compensated for the time attending trial (*i.e.*, as lost income).

In the spreadsheet, the government indicates that, when a KFI employee attended trial on the company's behalf, it did *not* ask for any attorney's fees, *i.e.*, even if an OMM attorney was also present attending trial. Rather, the only time the government asked for attorney's fees was where an OMM attorney (Ms. Bunzel) "stood in" as the KFI representative because there was no other KFI employee attending trial that day.

The Court agrees with the government that KFI had the right to have Ms. Bunzel stand in

9

for KFI at trial. Contrary to what Mr. Nosal argues, Ms. Bunzel's presence did not have to be "useful" to the prosecution at the trial. Rather, under the statute, KFI as the victim had the right to attend trial – or rather, given its corporate status, to have a representative attend trial on its behalf.

That being said, it is not clear that the lost income to KFI as a result of attendance at trial should be based on Ms. Bunzel's hourly rate. Indeed, at the hearing, the government recognized this problem and proposed that the lost income to KFI be based on the hourly rate of Mr. Dunn (KFI's general counsel) instead – *i.e.*, Mr. Dunn's hourly rate would be a proxy for the hourly rate if a KFI employee had attended trial instead of Ms. Bunzel. The Court finds this proposal reasonable and therefore adopts it.[4]

Mr. Dunn's hourly rate was approximately $444. *See United States v. Nosal*, No. CR-08-0237 EMC, 2014 U.S. Dist. LEXIS 69358, at *14 (N.D. Cal. May 20, 2014) (reflecting that "Mr. Dunn's 355 hours is worth $157,810" which amounts to an hourly rate of approximately $444). This is significantly less than Ms. Bunzel's hourly rate, which was approximately $760.50. *See, e.g.*, Spreadsheet, p. 36 (time entry dated 4/8/2013) (reflecting $3,650.40 for 4.80 hours of Ms. Bunzel's time).

Ms. Bunzel's time attending trial was about 15.95 hours at an hourly rate of $760.50. *See* Spreadsheet, p. 36 (time entries dated 4/8/2013; 4/15/2013; 4/16/2013; and 4/17/2013). This amounted to $12,129.99. If Mr. Dunn had attended trial instead, the total would be $7,081.80 (*i.e.*, 15.95 hours at an hourly rate of $444). Thus, if Mr. Dunn had attended trial instead of Ms. Bunzel, the total fees for April 2013 (as reflected in the spreadsheet) would not be $18,933.99, *see* Spreadsheet, p. 37, but rather $13,885.80.[5] The difference is $5,048.19. The Court therefore reduces the restitutionary fee award by **$5,048.19**.

G.  Time Spent on Post-Trial Matters Such as Loss and Restitution

When the restitution issue was first before this Court in 2013 and 2014, the total attorney's

---

[4] The Court acknowledges that Mr. Dunn's hourly rate represents *his* lost wages; nevertheless, it is an adequate proxy for KFI's lost income.

[5] The total OMM fees for April 2013 were $18,933.99. Subtracting Ms. Bunzel's attendance ($12,129.99) would leave $6,804. Adding Mr. Dunn's attendance (as a proxy) would yield $13,885.80 (*i.e.*, $6,804 + $7,081.80).

10

fees that were requested as restitution was $964,929.65. *See Nosal*, 2014 U.S. Dist. LEXIS 69358, at *15; Docket No. 541 (Spreadsheet, p. 42). Of that total, approximately $171,000 was incurred post-verdict (*i.e.*, from the end of April 2013 through January 2014), representing approximately 290 hours of time. These were the circumstances that led the Ninth Circuit to "note that a highly disproportionate percentage of the fees arose from responding to requests and inquiries related to sentencing, damages, and restitution. The reasonableness of the fees needs to be reexamined to consider (i) whether the sizeable fee related to restitution matters was reasonable." *Nosal*, 844 F.3d at 1048.

The government has now significantly reduced its request for post-verdict fees. For the period from the end of April 2013 through January 2014, the government seeks as restitution approximately $36,000 in fees, representing about 54 hours of time. The government has largely reduced its request by cutting out time spent on "restitution" and instead asking only for fees spent on "loss." By "loss," the government appears to be referring to the amount of KFI's loss for purposes of calculating the Sentencing Guidelines. *See* Docket No. 476 (Br. at 1, 15) (making a distinction between "loss" as the term is defined in the Sentencing Guidelines and "restitution" as provided for under the MVRA; arguing that "the loss amount for purposes of calculating the Guidelines in this case is $592,295, which falls within the range set out at U.S.S.G. § 2B1.1(b)(1)(H) and which calls for a 14-point adjustment to the base offense level"); Docket No. 503 (Order at 1) (calculating loss for purposes of the Guidelines as $46,907.88, "thus warranting a six level increase in Defendant's offense level"; noting that loss "includes (1) the costs incurred by [KFI] in responding to defendant's actions and (2) the development costs of the source lists stolen from KFI in furtherance of the conspiracy").

In spite of the government's significant reduction, Mr. Nosal still objects to the post-verdict fees requested by the government. His main objections are that it was not reasonably necessary for KFI to incur the fees and that OMM's work was substitute prosecutorial work. The Court does not agree. It was reasonably necessary for KFI to hire an attorney to assist it because the government was requesting KFI's assistance in calculating loss for purposes of sentencing; the calculus was informed in part by legal judgment. Also, OMM was not a substitute prosecutor but

11

rather added value because it had access to, knowledge of, and/or experience with its client. The Court's only concern here – similar to the Ninth Circuit's in its remand order – is whether the time spent was excessive. As the government argued at the hearing, OMM was not just summarizing what evidence had been adduced at trial but also assisted its client in providing new evidence for sentencing purposes (*i.e.*, the costs incurred by KFI in responding to defendant's actions and the development costs of the source lists stolen from KFI in furtherance of the conspiracy). The Court concludes that, at most, only a 10% "haircut" is warranted. *Cf. Moreno v. City of Sacramento*, 534 F.3d 1106, 1112-13 (9th Cir. 2008) (stating that "the district court can impose a small reduction, no greater than 10 percent – a 'haircut' – based on its exercise of discretion and without a more specific explanation"; when a reduction "passes well beyond the safety zone of a haircut, . . . the district court's justification for the cuts must be weightier and more specific"). Accordingly, the Court deducts **$3,600** from the restitutionary fee award.

H. <u>Miscellany</u>

Finally, the Court takes another deduction of **$5,000** as there are a few instances in which fees are not appropriate for reasons independent of the deductions already taken. For example:

- 3/4/2008: Review/analyze document and emails in preparation for conference call with K. Waldinger [ASUA] and C. Sadlowski [FBI]; draft emails regarding same; and call to C. Sadlowski regarding same . . . ; Conference with K. Waldinger regarding issues related to criminal matter. Here, it is not clear that the conference was taking place at the request of the government, which would indicate "value added."
- 11/16/2009: Conference with K. Waldinger [AUSA] and his assistant regarding requested meetings with Korn/Ferry witness . . . ; Conference with K. Waldinger and C. Sadlowski [FBI] regarding scheduling of witness interviews. Here, this seems like a ministerial task that does not really advance the prosecution (even if the actual meetings or interviews do).
- 02/07/2013: . . . Conference with K. Waldinger [AUSA] and M. Briski [KFI] regarding certain data thefts. Here, it is not clear what "value added" OMM had.

## II. CONCLUSION

The government's new request for restitutionary fee awards is $183,414.37. The Court makes four deductions as discussed above ($6,000; $5,048.19; $3,600; and $5,000), and thus the total restitutionary fee awarded is $163,766.18.

The Court previously awarded other restitution that the Ninth Circuit upheld on appeal ($27,400 in response costs and $204,825 for the value of KFI's employee's time). Thus, taking into account all components of restitution, including this new fee award, the total restitution awarded KFI is $395,991.18.

The Clerk of the Court is ordered to file an amended judgment, reflecting the new total restitution of $395,991.18.

**IT IS SO ORDERED**.

Dated: May 3, 2018

_____
EDWARD M. CHEN
United States District Judge