STEVEN F. GRUEL, ESQ.
California Bar No. 213148
315 Montgomery Street, 10th Floor
San Francisco, CA 94104
Telephone: 415-989-1253
Facsimile: 415-449-3622
Email: attystevengruel@sbcglobal.net

Attorney for Petitioner **David Nosal**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br>v.<br><br>DAVID NOSAL,<br><br>　　　　Defendant. | Case No. CR 08-0237 EMC<br><br>**MOTION FOR EARLY TERMINATION OF SUPERVISED RELEASE**<br><br>Hon. Edward M. Chen<br><br>Date: TBD[1]<br>Time: TBD |

## INTRODUCTION

David Nosal completed the custodial portion of his sentence on January 25, 2019, when he was released from USP Atwater. Since then, Mr. Nosal has tried to restore his life and business to the condition they were in before he self-surrendered to the Bureau of Prisons. Since his release

---

[1] Due to the Covid-19 pandemic, counsel is unaware when this Court will be available to hear this motion. According to General Order 72-3, issued on May 21, 2020, "For the month of June, in-court proceedings are permitted only for 1) guilty pleas, 2) sentencings, and 3) evidentiary hearings requiring witness testimony (such as motions to suppress or supervised release evidentiary hearings)." As this motion does not fall within the scope of those proceedings permitted under General Order 72-3, Mr. Nosal simply asks that this Court set the present motion for the earliest available date consistent with the current government orders concerning the safe operation of the courts.

MOTION FOR EARLY TERMINATION OF SUPERVISED RELEASE
*United States v. Nosal*;
Case No. 08-cr-00237-EMC

1

from prison, Mr. Nosal also managed to pay his $395,991.18 restitution debt in full, as well as the $60,000 fine imposed by the Court. He completed 200 of the 400 community service hours the Court ordered him to perform, and he would have completed more but for the onset of the Covid-19 crisis causing the closure of the food bank where Mr. Nosal had been working.

For nearly 16 months, Mr. Nosal has adhered to every restriction placed upon him as a result of his offense. He has abided by all conditions of release. On multiple occasions, he has sought and received permission from the Court to travel for business purposes. Aside from the acts that precipitated the present case, Mr. Nosal has led a thoroughly law-abiding life. At the time of sentencing, even the prosecutor recognized that Mr. Nosal would not commit any future offenses. "I have no doubt," the prosecutor remarked at the sentencing hearing, "that Mr. Nosal is not going to commit any more federal crimes in his life." Tr. 1/8/14 at 49:4-6.

Mr. Nosal has worked hard over the last 16 months to get back on his feet, but the recent financial calamity brought on by the Covid-19 pandemic has set him back, as it has nearly everyone. The impact of this crisis on Mr. Nosal has been exacerbated by his supervised release status. Among other things, the fact that he is on supervised release makes him ineligible for government financial assistance that he could otherwise use to keep his business afloat and pay his employees.

Because he has already successfully completed one year of supervised release, under 18 U.S.C. §3583(e)(1), this Court has the authority to terminate supervised release for Mr. Nosal. As described below, the statutory factors that this Court must consider when making such a determination uniformly weigh in favor of this Court exercising its discretion to grant the requested relief.

# ARGUMENT

**A. Relevant legal standard**

Pursuant to 18 U.S.C. § 3583(e)(1), a court may "terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation, if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice." 18 U.S.C. § 3583(e)(1). In making this determination, the statute directs the Court to consider the following subset of factors identified in 18 U.S.C. § 3553:

    (a)(1): the nature and circumstances of the offense and the history and characteristics of the defendant;

    (a)(2): the need for the sentence imposed—
        (B) to afford adequate deterrence to criminal conduct;
        (C) to protect the public from further crimes of the defendant; and
        (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

    (a)(4): the kinds of sentence and the sentencing range established for—
        (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—
            (i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and
            (ii) that, except as provided in section 3742(g) [18 USCS § 3742(g)], are in effect on the date the defendant is sentenced; or
        (B) in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28);

    (a)(5): any pertinent policy statement—
        (A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by

   the Sentencing Commission into amendments issued under section 994(p) of title 28); and

   (B) that, except as provided in section 3742(g) [18 USCS § 3742(g)], is in effect on the date the defendant is sentenced.[;]

(a)(6): the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(a)(7): the need to provide restitution to any victims of the offense.

18 U.S.C. §3553. Although the Court may, and should, consider the hardship suffered by the defendant, the Court may not categorically impose an "undue hardship" requirement. *United States v. Emmet*, 749 F.3d 817, 819 (9th Cir. 2014).

  **B. The application of the factors identified in §3583(e)(1) strongly supports the early termination supervised release for Mr. Nosal.**

Although this Court has "broad discretion in determining whether to grant a motion to terminate supervised release," *id.* at 819, applying the relevant factors in this case weighs in favor of early termination for Mr. Nosal.

  1. <u>The nature and circumstances of the offense and the history and characteristics of the defendant</u>.

Although serious, the non-violent offense for which Mr. Nosal was convicted is on the low end of the criminality spectrum. Even when compared with other instances of trade-secret theft, the present case was less serious than many, if not most. Mr. Nosal's actions, which led to the acquisition of information from Korn-Ferry's ("KFI") proprietary database, did not cause damage to KFI's computer system or render the data inaccessible to KFI. The intrusion also resulted in no discernible loss of income or business for KFI. Indeed, even on direct appeal, there was a genuine debate as to whether Mr. Nosal's acts even amounted to a federal crime, with Judge Reinhardt offering a strong dissent in which he argued that "Nosal may have incurred substantial civil liability, and may even be subject to criminal prosecution, but I do not believe he has violated the

CFAA, properly construed." *United States v. Nosal*, 828 F.3d 865, 898 (9th Cir. 2016) (Reinhardt, J., dissenting).

As for characteristics of Mr. Nosal himself, with the exception of this case, he has been a model citizen, leading a completely law-abiding life. At the time of sentencing, the defense presented numerous letters of support, uniformly describing Mr. Nosal's generosity and spirited work ethic. At sentencing, the Court recognized Mr. Nosal's "generosity towards his employees and towards others." Tr. 1-8-14 at 42:9-10. It was through his diligence, perseverance and keen business acumen that Mr. Nosal has earned all of the success he has obtained. This incident reflects a serious, but discrete and isolated lapse in an otherwise admirable life.

Furthermore, to the extent possible, Mr. Nosal has complied with all of the other aspects of his sentence. He was released from custody on January 25, 2019. Over the next nine months, Mr. Nosal paid his restitution in full, which, at $395,991.18 (plus a $60,000 fine), was a substantial amount of money given that Mr. Nosal had been incarcerated, making it difficult to operate his business. He has also completed approximately 200 hours of community service—half of the 400 hours ordered by the Court. At this time, however, Mr. Nosal is unable to continue his community service because the Alameda Food Bank is closed due to the Covid-19 crisis.

For Mr. Nosal, the collateral effects of his conviction are unduly burdensome during the current crisis in which we find ourselves. The stigma associated with a felony conviction had already made it difficult for Mr. Nosal to bring clients to his business, but with the economy seemingly teetering on the brink, Mr. Nosal's ability to keep his business alive is being threatened. Moreover, he has learned that his supervised release status makes him potentially ineligible for government benefits, like the Paycheck Protection Program. Without access to some additional funding, not only will Mr. Nosal and his business suffer, so too will those employees who depend on his company for their own livelihoods.

There is nothing about Mr. Nosal or the circumstances of his offense that would require him to remain on supervised release. He has completed his custodial sentence, paid his restitution debt, and completed as many of the community service hours as he could. For Mr. Nosal, continued supervision serves no penological function and, in fact, only serves to inhibit his ability to navigate these uncertain times and maintain his responsibility to his employees and family members.

> 2. <u>The need for the sentence imposed to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner</u>

There can be no real argument that supervised release is necessary to deter Mr. Nosal from committing more crimes. Mr. Nosal has no prior criminal history. Nor has he engaged in any criminal activity during the many years since these charges were brought against him. In essence, Mr. Nosal was on probation during the pendency of his case, which lasted approximately ten years, from the date he was charged (April 10, 2008) until the day he turned himself into the U.S. Marshal to serve his sentence in March of 2018. Mr. Nosal is not a danger or threat to the community in any way. The government acknowledged this point at the sentencing hearing, saying, "I have no doubt that Mr. Nosal is not going to commit any more federal crimes in his life." Tr. 1/8/14 at 49:4-6.

In Mr. Nosal's case, supervised release is wholly unnecessary to protect the public, and any general deterrent effect was accomplished by the prison sentence and the hefty fine and restitution amount. Keeping Mr. Nosal on supervised release would add nothing to the general deterrent value of the sentence, and certainly does not serve to provide Mr. Nosal with any necessary medical care or vocational opportunities.

3. <u>The kinds of sentences and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines issued by the Sentencing Commission</u>

At the time of sentencing, the Court pondered over the proper sentence to impose, with general deterrence and retribution as the driving penological considerations. No special attention was given to the length of Mr. Nosal's supervised released because, as the parties recognized, specific deterrence was a negligible concern. Therefore, when considering whether to grant this motion early termination of supervised release, consideration of the kinds of sentences and the sentencing range for the offense is largely irrelevant to the determination.

4. <u>Any pertinent policy statement</u>

The defense is unaware of any specific policy statements addressing the early termination of supervised release for defendants like Mr. Nosal.

5. <u>The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct</u>

The Court imposed a standard three-year term of supervised release. Mr. Nosal completed his custodial sentence on January 25, 2019, and, therefore, has completed nearly half of the total period of supervised release. Were it not for the extenuating circumstances of the current health and financial crises, Mr. Nosal would not necessarily be making this motion at this time. However, in order to maintain his businesses through these difficult times, he needs to have his period of supervised release terminated early so that he can focus on his business without additional encumbrances. Doing so will not result in unwarranted sentencing disparities.

6. <u>The need to provide restitution to any victims of the offense</u>

Mr. Nosal has already paid the restitution amount in full. Keeping him on supervised release is unnecessary for restitution purposes.

## **CONCLUSION**

For the foregoing reasons, this Court should grant the motion to terminate Mr. Nosal's period of supervised release.

Respectfully submitted,

Dated: May 26, 2020                    By: _____
                                       STEVEN F. GRUEL, ESQ.
                                       Attorney for **DAVID NOSAL**

*United States v. Nosal*;
Case No. 08-cr-00237-EMC

8