DAVID L. ANDERSON (CABN 149604)
United States Attorney

HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

KYLE F. WALDINGER (CABN 298752)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-6830
    Fax: (415) 436-7234
    E-mail: Kyle.Waldinger@usdoj.gov

Attorneys for the United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. CR 08-0237 EMC |
| Plaintiff, | **UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION FOR EARLY TERMINATION OF SUPERVISED RELEASE** |
| v. | |
| DAVID NOSAL, | |
| Defendant. | |

    The defendant David Nosal has moved for early termination of his supervised release. *See* doc. 679. He puts forward several justifications in support of his motion, including the contentions that (1) he has "completed 200 of the 400 community service hours the Court ordered him to perform"; (2) he "has adhered to every restriction placed upon him" and "has abided by all conditions of release"; and (3) his supervised release status "makes him ineligible for government financial assistance that he could otherwise use to keep his business afloat and pay his employees." *Id.* at 2:2-17. As set forth in more detail below, these contentions are either incorrect or insufficient to justify early termination.

## BACKGROUND

    In April 2013, a jury convicted the defendant David Nosal of Counts One through Six of the Indictment. Those counts charged him with conspiracy (Count One), unauthorized access to a protected

computer with the intent to defraud and obtaining something of value (Counts Two through Four), and unauthorized downloading and copying and receipt and possession of stolen trade secrets (Counts Five and Six).  The offenses related to intrusions into the computer system of the defendant's former employer Korn/Ferry International, Inc., an executive search firm.  The evidence at trial showed that, as part of the conspiracy, Nosal's co-conspirators obtained information from Korn/Ferry's computer system on at least three occasions in 2015, and that their access to Korn/Ferry's computer system was without authorization and with the intent to defraud.  The jury found that some of the information that was obtained as part of the conspiracy constituted a trade secret under federal law.

This Court sentenced Nosal to 366 days' imprisonment in January 2014.  The terms of Nosal's supervised release included the requirement that he "complete 400 hours of community service work as directed by the probation officer."  Doc. 669, at 6 (2d Amended Judgment); *see also id.* (also providing that "defendant shall work with a disadvantaged population so that he can use his skills and knowledge in executive search and recruiting").  After lengthy appellate and post-appeal proceedings, the defendant began serving the custodial sentence imposed by this Court in or about March 2018.  He was released from custody in January 2019 and began serving his term of supervised release at that time.

As the defendant states in his motion, he has paid the $60,000 fine and $395,000 restitution judgment imposed by this Court.[1]

### DISCUSSION

A court may "terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervised release."  18 U.S.C. § 3583(e)(1).  A court may do so "'if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice.'"  *United States v. Emmett*, 749 F.3d 817, 819 (9th Cir. 2014) (citing § 3583(e)(1)).

This standard is open-ended, and grants district courts the "discretion to consider a wide range of circumstances when determining whether to grant early termination."  *Id.*  Among those factors district courts are directed to consider are those enumerated for sentencing in 18 U.S.C. § 3553(a).  18 U.S.C.

---

[1] According to the records available to the government, Nosal paid his fine and special assessment in February 2014.  He made payments toward his restitution obligation on various dates; the most significant were payments of $350,000 and $39,793.18 on June 26 and July 31, 2019, respectively.

§ 3583(e)(1); *Emmett*, 749 F.3d at 819. Those factors include the nature and circumstances of the offense and the need for deterrence. *See* 18 U.S.C. § 3553(a).[2]

A defendant seeking early termination is not required to demonstrate that being on supervised release represents an "undue hardship." *Emmett*, 749 F.3d at 819. However, a court may consider the lack of undue hardship along with other factors to support its conclusion that early termination would not be in the "interest of justice." *Id.* at 820. A court must explain its reasons in granting or denying a request for early termination. *Id.* at 820-21. This explanation need not be "elaborate," but "[t]he record as a whole must . . . contain an explanation that would permit meaningful appellate review and justify the court's conclusion in light of the parties' nonfrivolous arguments and the legal standard." *Id.* at 821-22 (citation omitted).

As set forth below, the specific provisions of 18 U.S.C. § 3583(e)(1), the facts of this case, and the interests of justice favor maintaining the defendant's status on supervised release at this time.

*First*, despite his counsel's contentions, the defendant has not complied with all of the terms of his supervised release. Nor has he completed as many of the community service hours as his counsel contends. As set forth in the email from the Probation Office attached hereto as Exhibit 1, according to the Probation Office's records, the defendant has completed only about 103 hours of his community-service obligation, not the 200 hours that he told his counsel he had performed. In short, although he was more than one-third of the way through his supervised release term at the time the Bay Area shelter-in-place orders went into effect, the defendant had completed only slightly more than one-quarter of his

---

[2] The subset of Section 3553(a) factors that courts must consider are the following:
- the nature and circumstances of the offense and the history and characteristics of the defendant;
- the need for the sentence imposed to afford adequate deterrence to criminal conduct, protect the public from further crimes by the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
- the available kinds of sentence and the sentencing range;
- any pertinent policy statement;
- the need to avoid unwarranted sentence disparities; and
- the need to provide restitution.

18 U.S.C. § 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7).

USA'S OPP. TO MTN. FOR EARLY TERM. OF
SUPERVISED RELEASE [CR 08-0237 EMC]     3

community-service obligation.[3]  What is more concerning, however, is the Probation Office's report that the defendant has "refused" to complete the financial packet that was requested of him.  Ex. 1.  One of the special conditions of Nosal's term of supervised release is that he "shall provide the probation officer with access to any financial information, including tax returns, and shall authorize the probation officer to conduct credit checks and obtain copies of income tax returns."  Doc. 669, at 6 (2d Amended Judgment).  Not only has the defendant *failed* to comply with this requirement, he has "*refused*" to do so.  *See* Ex. 1.  The Probation Office's request for financial information is entirely appropriate under any circumstance, but particularly so under the circumstances highlighted in the Probation Office's email attached as Exhibit 1.  In other words, given that Mr. Nosal reported earning only an $80,000 salary, the Probation Office was justified in asking for more information in light of his lifestyle, which consisted of living in a multi-million-dollar home and driving a car valued at twice his annual income.

*Second*, the defendant has identified no concrete hardship.  His counsel simply states, without citation or facts, that the defendant may be "*potentially* ineligible for government benefits, like the Paycheck Protection Program [PPP]."  Doc. 679, at 5:21-22 (emphasis added).  The Paycheck Protection Program is intended to provide loans to small businesses, defined as those operating in a certain industry with 500 or fewer employees whose principal place of business is in the United States.  Based on the government's research, it appears that businesses with an "Associate" who is currently "incarcerated, on probation, on parole, or has been indicted for a felony or a crime of moral turpitude" are ineligible for loans under the PPP.  *See* 13 C.F.R. § 120.110.  An "Associate" is defined as "[a]n officer, director, owner of more than 20 percent of the equity, or key employee of the small business."  13 C.F.R. § 120.10.  But while the government's research suggests that Nosal and his business NGS Global *might* be ineligible for a PPP loan, there is no proof that his company – the ownership of which he apparently shares with others, *see* https://www.ngs-global.com/index.php/about-us/ngs-team (listing several "partners" and "managing partners") – otherwise intends to apply for a such a loan and that the company

---

[3] In a supplemental filing, the defendant states that he recently contacted the food bank where he volunteers, that he will has resumed performing community service there, and that will do so five days a week from 7:30 a.m. to 2:00 p.m. for the next five weeks.  *See* doc. 680.  This is commendable behavior during this period of heightened anxiety pertaining to the COVID-19 pandemic and the recent civil unrest.  The government notes, however, that even that pace of volunteerism will still not get Mr. Nosal to the 400-hour requirement imposed by this Court, assuming the accuracy of Probation's records.

has no ability to obtain funds elsewhere.  In short, the defendant has offered no convincing reasons supported by tangible facts for why supervised release poses a particular burden to him that justifies early termination.  Indeed, the Court should look with circumspection on the defendant's current claims that his business is threatened merely because he is on supervised release.  The defendant previously has made similar dire predictions that have not come to fruition.  Specifically, at the time of his sentencing, the defendant claimed that "[i]f I go to jail for even a day, 50 or 60 people in the US, not to mention international and global, the business will not survive that." Doc. 522, at 57:12-14 (Jan. 8, 2014 sentencing transcript).

*Third*, the nature of the offense was serious, and the defendant has never admitted his guilt of participating in the scheme to take trade secrets and other things of value from Korn/Ferry's computer system.  For these reasons, it is appropriate to have the defendant serve his full term of supervised release. *See, e.g.*, 18 U.S.C. § 3553(e) (directing courts to consider factors in 18 U.S.C. § 3553(a)(1) (nature and circumstances of offense) and (a)(2)(B) (adequate deterrence), among other subsections).  Indeed, the defendant has posted information and video testimonials about his case on a website.  *See* https://www.thetruthbehindthenosalcase.com.  Setting aside the misinformation on the site, one is hard-pressed to find an expression of Mr. Nosal's recognition that any of his own conduct was even wrongful (let alone criminal), or to find any reference or discussion of the evidence that was actually presented at trial.  Mr. Nosal continues to maintain that he "did not participate in, and had no knowledge of any activity that resulted in any taking of information from" Korn/Ferry.  *See* https://www.thetruthbehindthenosalcase.com/frequently-asked-questions/#Conclusion.

*Finally*, the defendant has offered no other convincing reasons for why supervised release should be terminated.  To the extent that the defendant has paid his monetary obligations under the Judgment and has otherwise committed no new crimes, he has done only what he is required to do under the terms of this Court's Judgment.  As one out-of-Circuit court opined, "[e]arly termination of probation is not warranted as a matter of course.  Rather, the defendant must show that there is a new or unforeseen circumstance, such as exceptionally good behavior.  Early termination is not warranted where a defendant did nothing more than that which he was required to do by law." *United States v. Rusin*, 105 F. Supp.2d 291, 292 (S.D.N.Y. 2015) (internal quotation marks and citations omitted); *cf. also United*

USA'S OPP. TO MTN. FOR EARLY TERM. OF
SUPERVISED RELEASE [CR 08-0237 EMC]                                                                           5

*States v. Paterno*, 2002 WL 1065682, at *3 (D.N.J. Apr. 30, 2002) ("Merely complying with the terms of his probation and abiding by the law are not in and of themselves sufficient to warrant early termination of probation; rather, this is simply what is expected of Defendant.").

## CONCLUSION

For the foregoing reasons, the defendant David Nosal's motion for early termination of his supervised release should be denied at this time. On the contrary, this Court should order the defendant to comply with the terms of his supervised release by responding appropriately and truthfully to the request of the Probation Office for financial information.

DATED: June 3, 2020                                   Respectfully submitted,

                                                      DAVID L. ANDERSON
                                                      United States Attorney

                                                               /s/
                                                      _____
                                                      KYLE F. WALDINGER
                                                      Assistant United States Attorney